**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: ZIMMER NEXGEN KNEE** | ) | |
| **IMPLANT PRODUCTS LIABILITY** | ) | **MDL NO.    2272** |
| **LITIGATION** | ) | |
| | ) | **Master Docket Case No.: 1:11-cv-05468** |
| | ) | **ALL CASES** |
| This Document Relates to All Cases | ) | |
| | ) | **JUDGE REBECCA PALMEYER** |

**THE APPLICATION OF PLAINTIFFS' COUNSEL FOR LEAD COUNSEL
AND PLAINTIFFS' STEERING COMMITTEE**

## I.    INTRODUCTION

The instant MDL concerns allegations that the Zimmer defendants designed, manufactured, promoted and sold a knee replacement system, components of which failed in many patients as a result of product design defects and inadequate warnings. It is alleged that these "high-flex" femoral components and/or the MIS Tibial components are prone to premature loosening, causing affected individuals pain and loss of movement, and which often forces these individuals to undergo revision surgery, resulting in economic and non-economic losses. Given the importance of these issues to the current and future plaintiffs within this MDL, a diverse group of Plaintiffs' counsel, representing a substantial majority of injured Plaintiffs, have coalesced around the leadership structure proposed herein.

On August 8, 2011, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the twenty eight initially filed cases to this Court for coordinated and consolidated pre-trial proceedings. The Movants – consisting of the counsel for nearly all of these cases—respectfully request that this Court appoint a leadership structure as described below: the three Co-Lead counsel, the liaison counsel and the Plaintiffs' Steering Committee ("PSC") that have already worked closely to shepherd the early stages of this litigation. Doing so will ensure that the

interests of the hundreds, if not thousands, of Plaintiffs to litigate in the MDL are protected by experienced counsel with the greatest knowledge and understanding of this product liability litigation – the same lawyers who have been on the front lines of these cases from their very inception.

These Movants represent a diverse group of Plaintiffs' counsel (the "Joint Prosecution Group" or JP Group). Because of the broad-based support for the Joint Prosecution Group's proposed leadership structure and because of their vast experience, demonstrated skill and litigation resources, their application for approval of their proposed leadership structure should be granted in its entirety.[1]

The Joint Prosecution Group exceeds the selection criteria set forth in both the *Manual for Complex Litigation* (Fourth) (the *"Manual"*) and Rule 23(g) of the Federal Rules of Civil Procedure which are designed to ensure that the appointed leadership will facilitate the orderly and efficient prosecution of the action. Their proposed leadership structure possesses the necessary knowledge, skill and proven track record to prosecute and lead this litigation efficiently and effectively on behalf of all Plaintiff's counsel.

## II.    ARGUMENT

The *Manual* provides significant guidance regarding the organization of complex MDL litigation such as this one, including the responsibilities and duties of counsel appointed to lead such actions, the importance of the appointment of "designated" counsel and the various organizational structures of Plaintiff's counsel. *See Manual* at §§ 10.2, 10.21, 10.22, 10.221 and

---

[1]      In order to facilitate a collective reference for this group of lawyers applying for leadership, the group is referenced as the Joint Prosecution Group.  As described herein, this group represents the vast majority of currently filed cases.  This group is aware of no other competing interested lawyers or groups seeking a separate slate of leadership or proposed model for leadership.

10.224.The Joint Prosecution Group's proposed leadership squarely aligns with the teachings of the *Manual*.

### A.    Background

Members of this proposed leadership have been at the forefront of this litigation since the first nationwide filings. Shortly after the filing of the first cases related to this MDL in November 2010, Plaintiffs' counsel from all over the country currently representing nearly 80% of the NexGen Flex Knee actions currently pending final transfer to this MDL began meeting and working cooperatively to further investigate and organize the prosecution of cases related to the Zimmer NexGen High-Flex knee System including the MIS Tibial component. Since late 2010, there have been at least six meetings and twelve conference calls in that time. When it was clear that many cases would be filed in federal court and that MDL coordination would be sought, the Joint Prosecution Group met repeatedly to jointly prepare the motion requesting MDL centralization and all supporting documents. As a further sign of coordination and unanimity, all members of the group were in attendance at the JPML hearing in San Francisco and, by agreement, four members of the group spoke on behalf of all Plaintiffs in support of MDL coordination.

Since the transfer order was issued by the JPML panel, the Joint Prosecution Group has discussed organizational issues related to the formation of a Plaintiffs' Steering Committee. Sixteen law firms were involved in the discussions. Each of these firms was represented by lawyers with numerous years of experience in mass tort MDLs and coordinated litigations that span both pharmaceutical and medical device litigations: from Phen-Fen, Baycol, Vioxx, Prempro, Levaquin and Avandia to Guidant Heart Device, Medtronic Pacemaker and DePuy ASR and Pinnacle Hip Implant. Every participant was given an opportunity to speak and express

views on the most efficient and effective method to litigate this expansive product liability MDL. The result was a unanimous agreement to a simple structure of a Plaintiff's Steering Committee consisting of three co-lead counsel, one liaison counsel and twelve other PSC committee members. Based on this agreement, the Joint Prosecution Group is asking the Court to allow the group that has been working cooperatively for several months on the common issues in this litigation to continue to work on behalf of all Plaintiffs on the now coordinated issues. The Joint Prosecution Group believes that no one has developed more information that will be useful to the litigation as a whole than the group that has worked together since the very beginning of the litigation. This is a model that has worked well in several MDL litigations. By way of one recent example, this model of leadership was used effectively in the *In re Trasylol Product Liability Litigation*,[2] within which some of the proposed current leadership worked. In less than three years, since its inception in May 2008, this model of leadership resolved more than 60% of a Trasylol docket of 2000 cases, with a minimum amount of court involvement. The proposed leadership organization, as described below, includes lawyers who are accustomed to this model and have at various times worked together over the span of many mass tort litigations to produce success for the litigants and the supervising courts.

The Joint Prosecution Group now agrees to submit a joint application on behalf of its members. The proposed Plaintiffs' Steering Committee contains many nationally recognized counsel in this field who have been at the forefront of the NexGen knee litigation since its inception.

**B.     The Proposed Leadership Organization.**

The proposed leadership group was recommended, in large part, because of their ability

---

[2]     MDL 1928, S.D. Fl, Hon. Donald Middlebrooks.

to work together. The proposal recommended by and unanimously supported by the Joint Prosecution Group includes:

Co-Lead Counsel- James R. Ronca, Anapol Schwartz P.C. Philadelphia, PA

Co-Lead Counsel – Timothy Becker, Johnson Becker, Minneapolis, MN

Co-Lead Counsel – Tobias Millrood, Pogust, Braslow and Millrood, Conshohocken, PA

Liaison Counsel  - Peter Flowers, Foote Meyers Mielke & Flowers, P.C., Chicago, IL

**Plaintiffs' Steering Committee:**

1.  Richard Arsenault, Neblett, Beard & Arsenault, Alexandria, LA
2.  Doug Monsour, Monsour Law Firm, Longview,TX
3.  Joseph Osborne, Babbit, Johnson, Osborne and LeClainche, West Palm Beach, FL
4.  Sheila Bossier ,  Bossier and Associates,  Jackson, MS
5.  Daniel Lapinski, Wilentz, Goldman and Spitzer, Woodbridge, NJ
6.  Ronald Goldser, Zimmerman Reed, Minneapolis, MN
7.  Neil D. Overholtz, Aylstock, Witkin, Kreis & Overholtz, Pensacola, FL
8.  Hunter J. Shkolnik,  Napoli Bern Ripka Shkolnick, LLP. New York, NY
9.  Randi Kassan , Sanders Viener Grossman, LLP, Mineola, NY
10. Alyson Oliver, Kresch Oliver, Southfield, MI
11. Michael London, Douglas and London, New York, NY
12. Robert Gordon, Weitz and Luxenberg, New York, NY

The Joint Prosecution Group is a coalition of Plaintiffs' counsel well-suited to represent the Plaintiffs in this consolidated action, and to coordinate those efforts. The Joint Prosecution Group consists of counsel with substantial experience and extraordinary success in representing the interests of Plaintiffs in other similar, complex litigations. For example, of the sixteen law firms,  at least   eight have acted as lead counsel or co-lead counsel in at least one mass tort MDL or coordinated mass tort litigation. As a result of their collective expertise and national reputations, these lawyers have successfully represented thousands of injured claimants from around the United States in mass tort lawsuits.

The criteria guiding the Court's evaluation of leadership applications such as this one

strongly militates in favor of appointing the Joint Prosecution Group. For example, the attorneys in the Joint Prosecution Group:

(a)     Represent a majority of the Plaintiffs in these cases;

(b)     Individually and collectively possess specific expertise with respect to litigation such as this one;

(c)     Have been recognized as national leaders in the mass litigation field, and possess substantial MDL litigation experience in medical drug and device litigation;

(d)     Have shown their ability to effectively and conscientiously handle this genre of litigation for many years and in numerous challenging cases;

(e)     Are supported by a majority of the firms that have filed appearances in these cases on behalf of the various Plaintiffs; and

(f)     Have performed substantial work identifying and investigating the claims in this litigation, endowing them with a significant base of case specific knowledge.

No one else and no other group can offer the collective support, the collective experience, the collective resources or the collective skill possessed by the Joint Prosecution Group. The proposed leadership structure is streamlined and efficient. This litigation involves already nearly 100 cases, with potentially hundreds, if not thousands, more to be filed. The volume of documents at issue and the number of potential depositions are significant and will require the mobilization and coordination of efforts and the resources of multiple firms. Accordingly, the Movants herein  recommend this proposed leadership structure so as to maximize the effectiveness of the representation of injured Plaintiffs, especially against a sizable opposing party like Zimmer. The proposed Plaintiffs' Steering Committee, led by Lead Counsel as its spokespersons to the Court and the Defendants, will be responsible for major strategic decisions and controlling and coordinating workflow among all plaintiffs' counsel and will ensure the efficient use of resources while minimizing the duplication of efforts. *See* MCL 4th § 10.22.

### C.    Applying the Applicable Legal Standards

The *Manual* suggests a variety of factors for the Court to consider in its decision regarding the appointment of designated counsel. These factors are similar to the criteria in the Federal Rules of Civil Procedure regarding the appointment of class counsel in class action lawsuits. Rule 23(g)(1) directs the Court to appoint class counsel who will "fairly and adequately represent the interests of the class" after consideration of the following factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Where there are competing applications for appointment, a court must appoint counsel "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

As explained below, the attorneys in the Joint Prosecution Group individually and collectively satisfy each of the factors enumerated in Rule 23(g)(1) and the *Manual,* and comprise a group well qualified to lead this case. The success of these attorneys and firms in leading these types of cases is attributable to their experience and qualifications, their ability to manage large-scale litigation such as this, and their willingness to devote the necessary resources to prosecute these types of actions to successful conclusion. Likewise, the proposed PSC, is of optimal size to advance the interests of the Plaintiffs in this litigation and protect the Plaintiffs interests against a well resourced defendant.

In short, the Joint Prosecution Group has proceeded with significant efforts to advance the interests of the Plaintiffs in this litigation.

> 1.     The Firms Comprising the Joint Prosecution Group Have Performed Substantial Work Identifying and Investigating Claims and Potential Claims in This Action

In considering a motion for appointment of lead counsel or interim class counsel, a court must consider the work undertaken by that counsel in the case. *E.g., Harrington* v. *City of Albuquerque,* 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case").

The Joint Prosecution Group has already invested substantial time and resources to this litigation. Among other things, the Joint Prosecution Group has been researching and identifying the claims at issue; arranging multiple informational group meetings; speaking with hundreds of Plaintiffs; working closely with experts in the early development of theories of liability and causation; contacting counsel for Zimmer for the purpose of trying to resolve preliminary issues raised in this litigation; corresponding with and coordinating with other Plaintiffs' counsel; drafting and discussing appropriate document preservation orders; and engaging in discussions with key consultants and experts. Among the attorney work product tasks completed by the Joint Prosecution is a) the creation of a data bank of scientific studies regarding the Zimmer NexGen Flex Knee Replacement System and arthroplasty in general, b) creation of a database of Plaintiffs, cross referencing the various types of component parts and the adverse events leading to revision surgery, c) acquisition and review of the FDA database on adverse events related to this product and d) contribution to numerous educational seminars throughout the country regarding the litigation.  In short, the Joint Prosecution Group has proceeded with significant efforts to advance the interests of the Plaintiffs in this litigation.

2.      The Joint Prosecution Group Will Commit the Resources Necessary to Coordinate the Efforts and Progress of all Actions in this MDL Proceeding.

The Joint Prosecution Group indisputably has the resources necessary to adequately represent the Plaintiffs in these cases and to foster this important litigation to a successful conclusion. As explained below, each of the firms comprising the Joint Prosecution Group possesses significant financial resources, most are substantial in size, and all have pledged legal and support personnel as well as the necessary resources to aggressively and ably litigate these cases. The members of the Joint Prosecution Group have already contributed substantially financially into a fund for common benefit expenses well before the JPML hearing and the centralization of this litigation. The Joint Prosecution Group will be able to effectively and efficiently prosecute the claims in this action and coordinate all other actions that are part of this MDL proceeding.

3.      The Firms Comprising the Joint Prosecution Group Have Substantial Experience in Successfully Litigating These Types of Actions

The attorneys and law firms comprising the Joint Prosecution Group have substantial experience in litigating claims similar to those here and possess knowledge of the applicable law. As demonstrated herein, each of the firms comprising the Joint Prosecution Group has experience and expertise in handling complex litigation actions and complex litigation, as well as, in particular, medical device cases. In this District alone, nearly every firm that seeks approval of this slate participated recently in the very successful Medtronic and/or Guidant MDL litigation. See Affidavit of Peter Flowers, Esq. attached as Exhibit A (attaching the Individual Application and/or Individual or Firm Summary Biography or Curriculum Vitae for each member of the proposed leadership).

### III.     CONCLUSION

The Court should select, intact, the Joint Prosecution group as the Plaintiffs' Steering Committee for this litigation. As demonstrated herein, the Joint Prosecution Group unquestionably satisfies all the suggested requisites articulated in the *Manual for Complex Litigation* as well as Rule 23(g) of the Federal Rules of Civil Procedure and is clearly qualified, using any or all of the applicable criteria traditionally employed in this selection process.

Dated: August 18, 2011

Respectfully submitted,

_/s/ Peter Flowers_____

Peter Flowers
Foote Meyers Mielke & Flowers, P.C.
3 North 2nd Street, Suite 300
Saint Charles, IL 60174
Tel. (630) 232-6333
Email: pjf@foote-meyers.com
**Proposed Liasion Counsel**

_____

James Ronca, Esq. (SBN 25631)
ANAPOL, SCHWARTZ, WEISS, COHAN,
FELDMAN & SMALLEY, PC
1710 Spruce Street
Philadelphia, PA 19103
Tel: (215) 735-1130
Fax: (866) 735-2792
Email: Jronca@anapolschwartz.com

**Proposed Co-Lead Counsel**

James R. Ronca
Anapol Schwartz P.C.

Timothy Becker
Johnson Becker

Tobias Millrood
Pogust, Braslow and Millrood

**Proposed Plaintiffs' Steering Committee**

Richard Arsenault, Neblett, Beard & Arsenault
Doug Monsour, Monsour Law Firm

Joseph Osborne, Babbit, Johnson, Osborne and LeClainche
Sheila Bossier ,  Bossier and Associates
Daniel Lapinski, Wilentz, Goldman and Spitzer
Ronald Goldser, Zimmerman Reed
Neil D. Overholtz, Aylstock, Witkin, Kreis & Overholtz
Hunter J. Shkolnik,  Napoli Bern Ripka Shkolnik
Randi Kassan, Sanders Viener Grossman, LLP
Alyson Oliver, Kresch Oliver
Michael London, Douglas and London
Robert Gordon, Weitz and Luxenberg