IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE | ) | |
| IMPLANT PRODUCTS LIABILITY | ) MDL NO. 2272 | |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to All Cases | ) Master Docket Case No. 1:11-cv-05468 | |
| | ) | |
| | ) Hon. Rebecca Pallmeyer | |

**PLAINTIFFS REPLY TO DEFENDANTS RESPONSE TO PLAINTIFFS'
APPLICATIONS FOR LEAD COUNSEL AND PLAINTIFFS STEERING COMMITTEE**

Defendants' opposition to the steering committee proposed by Plaintiffs is virtually

unprecedented. A cohesive group of lawyers with sufficient resources to appropriately represent

the Plaintiffs' interest is essential to this litigation to meet the requirements of the *Manual of

Complex Litigation* and counsel's ethical obligations to adequately and zealously represent their

clients. In short, Defendants have no real standing to determine the ordering of Plaintiffs

organization, which the *Manual of Complex Litigation* encourages. Instead, Defendants'

opposition is a pretext for their unstated goal: to hamper Plaintiffs' workforce and financial

resources which are the hallmarks of a Plaintiff Steering Committee (PSC) in a mass tort MDL.

Historically, courts have appointed PSCs of similar size in other products liability MDLs.

A sixteen member appointment is the norm rather than the exception in cases like this. Most

PSCs in these types of MDLs consist of more than sixteen members. Defendants' reliance on the

current number of filed cases is misguided. The more important factor to take into consideration

is the potential size of the litigation and the extent of discovery and other pretrial work.

Plaintiffs' counsel have taken an inventory and believe that ultimately this litigation wil have

more than 1,000 cases. Moreover, when there is already a unified working group in place the

court should strongly consider and encourage the continuation of such a group so long as its members are qualified.

The issue of the organization of Plaintiffs' counsel in products liability MDLs is one that is traditionally reserved for the combination of internal decision making by Plaintiffs' counsel and consideration from the court. Defendants' interference in that process is unjustified.

## A. A Sixteen Member Leadership Committee is Reasonable in Size in a Products Liability Action Against one of the World's Largest Device Manufacturers

There are many factors to be taken into consideration when appointing a leadership committee; however, the most important of them is "achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litigation (Fourth) § 10.221.*

Unlike defense counsel, who will draw from long-standing and cohesive organization, plaintiffs' counsel must quickly merge to create a new strategic alliance to litigate against one of the largest and best financed law firms in the world; truly an amazing process filled with the potential for inequity. The PSC needs to be structured to compete on a level playing field with its colleagues on the other side of the "V". This process, at least in part, needs to be guided by considering the stature of opposing counsel. Plaintiffs' counsel are faced with a "David and Goliath" dynamic on a variety of levels. On the "David" side of the equation, primarily small plaintiff firms that often compete against each must group together to litigate against a powerful international corporate entity. It's akin to starting a 100 yard dash against a world class athlete that has a 50 yard head start.

A steering committee of reasonable size is necessary in order to pull together Plaintiff resources to effectively and efficiently litigate this MDL. Unlike an international defense firm and a multi-billion dollar company, the law firms in the proposed leadership committee are plaintiffs firms who do not have unlimited resources. Appointments to the PSC confirm court

ordered responsibility and commitment to time, money and resources. Without such appointments, firms are typically not willing to invest their resources because they have no influence as to the direction of the litigation. The investment is substantial. Zimmer uses *In re: Trasylol Product Liability Litigation*, MDL 1928 as an example. In that litigation over 23 million pages of documents were produced, requiring an expenditure of over $1,000,000.00 to store the documents in an electronically searchable fashion. This storage and retrieval system was just one of the many costs incurred by the Plaintiffs steering committee and was essential to the successful prosecution of the case. A three member PSC as proposed by Defendants would be insufficient to support a litigation of this magnitude.

The proposed PSC is by no means unwieldy or too large for this type of MDL. In fact, a sixteen lawyer appointment is average for a products liability MDL. In one of the most recently created MDLs involving a medical device, *In re: DePuy Orthopedics, Inc. ASR Hip Implant Products* the court appointed a leadership committee consisting of twenty-one attorneys, with an additional fourteen attorneys making up sub-committees such as discovery, state liaison and science. See MDL 2197, Case Management Order No. 3 attached as exhibit A. Similarly, the court in *In re: Medtronic, Inc. Implant Defibrillators Litigation* appointed fourteen lawyers to the leadership committee, see MDL 1726, Pretrial Order No. 2 attached as exhibit B, and twenty lawyers were appointed in *In re: Medtronic, Inc, Sprint Fidelis Leads Product Liability Litigation*. See MDL 1905, Order No. 3 attached as exhibit C.[1]

Defendants' are not able to cite to any authoritative case law to support their position. Their reliance on *Vincelli v Natl'l Home Health Care Corp.*, 112 F.Supp. 2d 1309 (M.D. Fla.

---

[1] Other MDLs have appointed leadership committees of similar size; *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL 1708, appointment of 23 lawyers; and *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*, MDL 2151, appointment of 18 lawyers.

2000), is misplaced and does not apply to a products liability MDL. *Vincelli* involved a securities class action case governed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C.S. § 78u-4. The appointment of an executive committee in that case was for a class action suit only; it did not involve hundreds of individual cases as in a products liability MDL. Moreover, the court's reasoning for denying the appointment is not applicable in an MDL. The court reasoned that an executive committee would burden the plaintiff class with additional counsel fees, delay or confusion and that such appointment would make trying the case cumbersome. *Id*. at 1319. PSC appointments in a products liability MDL assist in keeping the litigation moving along at a good pace. It provides more hands on deck to assist with what can often be overwhelming document production, various depositions across the country, and increased expenses associated with discovery over a prolonged period of time.

An MDL is a unique situation and the appointment of a leadership committee is not only for the purpose of providing an efficient streamlined mechanism for representing hundreds of plaintiffs' but also to assist in leveling the playing field so the resolution of the litigation is based on its merits.

**B. The Number of Cases Filed at the Time of Appointment of the Leadership Committee Does not have any Bearing on the Size of the Leadership Committee**

Defendants illogically suggest that there is a correlation between the number of cases filed at the time of the appointment of the PSC and the number of PSC members. If there is to be any consideration to this correlation, the size of the PSC should take into consideration the *eventual* size of the litigation and the potential magnitude of discovery and other pretrial. Otherwise, the court would be forced to continually update and add to the PSC as the litigation grew. Defendants' suggestion to only consider the number of cases filed at the time of the PSC appointment, which is always done in the beginning of an MDL, is naive.

This litigation has the potential to grow to thousands of filed cases. The Defendants sold over 68,000 recalled MIS implants and hundreds of thousands of flex implants. As defendants have acknowledged, there are already 100 cases filed in the MDL, which was appointed just one month ago. Moreover, Plaintiffs' counsel have been retained in hundreds more cases that have not yet been file.[2]

Defendants refer to the twelve person PSC appointed in *In re: Trasylol Product Liability Litigation*, which ultimately ended up with close to 2,000 lawsuits. However, when the PSC was appointed in *Trasylol*, which was May 22, 2008, there were only 63 cases filed in the MDL. See Exhibit A attached to Case Management Order No. 3, MDL 1928 attached as exhibit D. This MDL already has 100 cases and continues to grow with no definitive end date – a sixteen person leadership committee is far from unreasonable.

Another MDL that provides a near identical comparison for this court is *In re: Gadolinium-Based Contrast Agents Products Liability Litigation* (*Gadolinium*). At the time of the PSC appointment in *Gadolinium* there were less than 100 cases filed – fewer than in the instant litigation. See *Gadolinium*, MDL 1909, 5/13/2008 Transcript of Teleconference Conference Call at p.3-4 attached as exhibit E. The eventual size of the litigation was anticipated by the parties to be around only 700 cases. *Id*. The court in *Gadolinium* appointed a sixteen member PSC[3] – the same size as the proposed PSC before this Court. See Case Management

---

[2] As routinely seen in other MDLs there are many cases waiting in the wings to be filed after the court enters a direct file order.

[3] Three additional members were appointed as Federal-State Court Liaison Counsel in the *Gadolinium* MDL.

Order No. 2, MDL 1909, attached as exhibit F. As of July 14, 2011, the *Gadolinium* MDL had 691 filed cases according to MDL statistic reports.[4]

This MDL already has 100 filed cases pending and may potentially grow to thousands of cases over time. Historically, MDLs of this magnitude have appointed PSCs of more than sixteen members. The proposed PSC is not only reasonable but is conservative in light of the eventual size of the litigation.

**C. This Court Should Give Deference to the Plaintiffs' Proposed PSC**

Recognizing that it is the courts obligation to appoint the PSC, it nevertheless seems prudent that some deference be given to the organizational structure suggested by plaintiffs' counsel. In circumstances, such as here, where plaintiffs' counsel have been able to generally organize themselves, the court's role in the appointment of a PSC is hopefully assisted, and perhaps, to some extent, guided by that development. The *Manual for Complex Litigation* recognizes that courts should not overlook the importance of this kind of "private ordering" and it should be encouraged. See *Manual for Complex Litigation (Fourth)* § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged."). Because it is the product of private ordering, general consideration of the proposed structure promises to avoid the potentially awkward and inefficient leadership that can result from a piecemeal structure cobbled together from competing petitions or slates.

The proposed PSC has been informally working together on this litigation for several months. The group has remained unified and developed a cohesive approach to the litigation.

---

[4] Judge Dan Polster's management of the *Gadolinium* MDL was clearly viewed as effective efficient. Before it has even been concluded, the JPML also assigned Judge Polster MDL 2066, *In re: Oral Sodium Phosphate Solution-Based Product Liability Litigation.*

Thus far, the group has spoken with one voice and displayed unanimity on common benefit issues with no reason to believe that this would change in the future.

Defendants' concerns about not being able to develop "consistent working relationships" when dealing with a sixteen member PSC are unfounded. Defendants' claim that they would have to deal with different counsel on various issues such as the protective order, discovery, depositions, etc., is baseless and unsupported by the facts. Defendants' communication will be and has been with the three co-leads who are supported by the PSC and will act as the spokespersons for the group. There has already been several calls and correspondence with Defense counsel where Plaintiffs have expressed one unified position on several different issues. For defendants to state otherwise is pure speculation without any factual support.

Defendants proposed structure of three co-leads and one liaison counsel with no supporting PSC would place Plaintiffs at an unfair disadvantage from the outset of the litigation. Baker Daniels is an international law firm with more than 370 lawyers and legal professionals at its disposal. For them to suggest that Plaintiffs PSC should be limited to four members is offensive to say the least. Moreover, Defendants cite to no legal authority that allows them to have control over the organization of Plaintiffs' counsel. Likewise, Plaintiffs do not have a say in the number of attorneys and law firms employed to represent and defend Defendants' interests. A four member PSC is wholly inadequate to represent the injured Plaintiffs in this litigation which will undoubtedly produce several millions of pages of documents in document production alone and be very expensive.

### D. Conclusion

Defendants' opposition to Plaintiffs proposed PSC is (1) baseless, (2) relies on assumptions that are not supported legally or factually and (3) is part of Defendant's continued

efforts to prevail in this litigation utilizing their divide and conquer tactics as opposed to relying on the merits of the case. There is no basis under the law or the present facts that support Defendants' position that a sixteen member PSC is too large.

It is in the best interests of the individual plaintiffs and for the effective and efficient management of this MDL, as mandated by the *Manual*, for the court to appoint Plaintiffs' proposed PSC.

Dated: September 9, 2011

Respectfully Submitted,

   /s/ James Ronca
Peter Flowers                              James Ronca, Esq. (SBN 25631)
Foote Meyers Mielke & Flowers, PC          ANAPOL, SCHWARTZ, WEISS, COHAN,
3 North 2nd Street, Suite 300              FELDMAN & SMALLEY, PC
Saint Charles, IL 60174                    1710 Spruce Street
Tel. (630) 232-6333                        Philadelphia, PA 19103
Email: pjf@foote-meyers.com                Tel: (215)735-1130
                                           Fax: (866)735-2792
***Proposed Plaintiffs' Liaison Counsel*** Email: Jronca@anapolschwartz.com

                                           Timothy Becker
                                           Johnson Becker PLLC
                                           33 South Sixth Street, Suite 4530
                                           Minneapolis, MN 55402
                                           Phone: (612) 333-4662
                                           Fax: (612) 339-8168
                                           Email: tbecker@johnsonbecker.com

                                           Tobias Milrood
                                           Pogust, Braslow and Millrood
                                           Eight Tower Bridge, Suite 1520
                                           161 Washington Street
                                           Conshohocken, PA 19428
                                           Phone: (610) 941-4204
                                           Fax: (610) 941-4245
                                           Email: tmillrood@pbmattorneys.com

                                           ***Proposed Co-Leads for Plaintiffs' Counsel***

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

IN RE: DePUY ORTHOPAEDICS, INC
ASR HIP IMPLANT PRODUCTS

MDL Docket No. 1:10 md 2197

This Document Relates To:

**CASE MANAGEMENT ORDER NO. 3**

ALL CASES.

The Court hereby designates the following counsel to act on behalf of the parties

in the DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation.

**Plaintiffs' Executive Committee**

Ben W. Gordon, Jr. Levin, Papantonio, Thomas, Mitchell, Eishner, Rafferty & Proctor PA

R. Eric Kennedy, Weisman, Kennedy, Berris

Ellen Relkin, Weitz & Luxenberg (Co-Lead Counsel)

Mark P. Robinson, Robinson, Calcagnie & Robinson

Christopher A. Seeger, Seeger Weiss LLP

Steven J. Skikos, Skikos, Crawford, Skikos, Joseph & Millican (Co-Lead Counsel)

**Plaintiffs' Steering Committee**

Andres F. Alonso, Parker Waichman Alonso

Esther Berezofsky, Williams Cuker Berezofsky

Ed Blizzard, Blizzard, McCarthy & Nabers

Jane Conroy, Hanley Conroy

Leonard A. Davis, Herman Herman Katz & Cotlar

Wendy Fleishman, Lief Cabraser

Lawrence J. Gornick, Levin, Simes, Kaiser & Gornick

Seth Katz, Burg, Simpson, Eldredge, Hersh & Jardine

Mark Lanier, Lanier Law Firm

Michael London, Douglas & London

Donald A. Migliori, Motley Rice

Peter J. Polos, Panish, Shea & Boyle

Navan Ward, Jr., Beasley Allen


**Plaintiffs' Liasion Counsel**

Michelle L. Kranz, Zoll Kranz & Borgess

**Plaintiffs' State Liasion Counsel**

California:        Amy Solomon, Girardi, Keese

New Jersey:    Christopher M. Placitella, Cohen Placitella & Roth


**Science Committee**

Steven Baron, Baron & Budd

Annesley DeGaris, Cory Watson

John Restaino, Restaino Law Firm

Ken Seeger, Seeger Salvas


**Discovery Committee**

Thomas R. Anapol, Anapol Schwartz

Richard Arsenault, Neblett Beard & Arsenault

Turner Branch, Branch Law Firm

Philip Bohrer, Bohrer Law Firm

Hezekiah Sistrunk, Jr., Cochran Law Firm

Trent Miracle, Simmons Browder

**Law & Motions Committee**

Timothy J. Becker, Zimmerman Reed

Tara Sutton, Robins Kaplan Miller & Ceresi


Chairs of the Committees will be appointed by the Plaintiff Executive Committee
It is anticipated that further appointments to the existing Plaintiff Committees or the
addition of further subcommittees will be approved, as necessary, as the litigation
progresses.


**Defendants' Co-Lead Counsel**

Robert C. Tucker, Tucker Ellis & West LLP

Susan M. Sharko, Drinker Biddle & Reath LLP

**Defendants' Liasion Counsel**

Kristen Mayer, Tucker Ellis & West LLP


IT IS SO ORDERED.

       _S/ David A. Katz_
DAVID A. KATZ
U. S. DISTRICT JUDGE

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MDL No. 05-1726 (JMR/AJB)

In Re: Medtronic, Inc.          )
Implantable Defibrillators      )    **PRETRIAL ORDER NO. 2**
Litigation                      )    **Designation of Lead**
                                )    **Counsel**
                                )

    This matter has come before the Court for designation of Lead Counsel.  The Court has received numerous communications in this regard, and is aware of concerns and criticisms raised by counsel for some of the plaintiffs.  Having considered these differing views, and being advised in the premises, IT IS HEREBY ORDERED:

**I.**    **Organization and Responsibilities of Plaintiffs' Counsel.**

The Court designates the following counsel to act on behalf of Plaintiffs:

    **A.**    **Plaintiffs' Co-Lead Counsel:**  The Court designates the following counsel as Plaintiffs' Co-Lead Counsel:

Daniel E. Gustafson        Charles S. Zimmerman
Gustafson Gluek PLLC       Zimmerman Reed, P.L.L.P
650 Northstar East         651 Nicollet Mall,
608 Second Ave S           Suite 501
Minneapolis, MN  55402     Minneapolis, MN 55402
[dgustafson@gustafsongluek.com](mailto:dgustafson@gustafsongluek.com)    [csz@zimmreed.com](mailto:csz@zimmreed.com)
Phn:  (612) 333-8844       Phn: (612) 342-0400
Fax:  (612) 339-6622       Fax:  (612) 341-0844

    **B.**    **Plaintiffs' Steering Committee.**  The following counsel are appointed to serve on Plaintiffs' Steering Committee:

Richard J. Arsenault
Neblett Beard & Arsenault
2220 Bonaventure Court
P.O. Box 1190

Alexandria, LA 71309

Daniel E. Becnel, Jr.
Law Offices of Daniel E. Becnel, Jr.
106 West Seventh Street, P.O. Drawer H
Reserve, LA 70084

Mitchell M. Breit
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119

Virginia Buchanan
Levin Papantonio Thomas Mitchell Echsner &
Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502

Cynthia B. Chapman
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010

Dianne M. Nast
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, NY 10004

Hunter J. Shkolnik
Rheingold, Valet, Rheingold, Shkolnik & McCartney
LLP
113 E. 37th Street
New York, NY 10016

Bernie Smalley
Anapol Schwartz Weiss Cohan Feldman & Smalley
1900 Delancey Place
Philadelphia, PA 19103

Thomas M. Sobol
Hagens Berman Sobol Shapiro
One Main Street
4th Floor
Cambridge, MA 02142

> Teresa Toriseva
> Hill Toriseva & Williams, PLLC
> 89 Twelfth St.
> Wheeling, WV 26003

The Court understands that a number of the members of the Plaintiffs' Steering Committee are among those who have not traditionally been appointed to such a task. The Court advises counsel that it expects these members will bear the full share of their responsibility to their respective clients and to the Court, and that they will serve their clients and the Court in the spirit set forth at the initial pretrial conference.

**C.** **Plaintiffs' Liaison Counsel**. The Court designates the following counsel to serve as Plaintiffs' Liaison Counsel:

> Richard A. Lockridge
> Lockridge Grindal Nauen, PLLP
> 100 Washington Avenue South
> Suite 2200
> Minneapolis, MN 55401
> Phn: (612) 339-6900
> Fax: (612) 339-0981

**II. Organization of Defendants' Counsel.** The Court designates the following counsel to act on behalf of Defendants:

**A.** **Defendants' Co-Lead Counsel:** The Court designates the following counsel as Defendants' Co-Lead Counsel:

> Lori G. Cohen
> Greenberg Traurig, LLP
> The Forum – Suite 400
> 3290 Northside Parkway
> Atlanta, GA 30327
> Phn: (678) 553-2100
> Fax: (678) 553-2212

> Stephen J. Immelt
> Hogan & Hartson, LLP
> 111 South Calvert Street

```
                    Baltimore, MD  21202
                    Phn.  (410) 659-2700
                    Fax   (410) 539-3981
```

**B.    Defendants' Liaison Counsel.**   The Court designates the

following counsel to serve as Defendants' Liaison Counsel:

```
                    Donald M. Lewis
                    Halleland Lewis Nilan & Johnson, P.A.
                    600 U.S. Bank Plaza South
                    220 South Sixth Street
                    Minneapolis, MN 55402-4501
                    Phn:  (612) 338-1838
                    Fax:  (612) 338-7858
```

Dated: January <u>24</u>, 2006


<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States Chief District Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


In Re:                                            MDL NO. 08-1905 (RHK/JSM)
MEDTRONIC, INC.
SPRINT FIDELIS LEADS
PRODUCT LIABILITY LITIGATION          ORDER NO. 3

THIS DOCUMENT RELATES TO:
ALL CASES


The above matter came on before the undersigned on May 28, 2008 regarding

the designation of Plaintiffs' Lead Counsel, Plaintiffs' Steering Committee, and Liaison

Counsel.

The Court, being duly advised in the premises, upon all of the files, records and

proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED:

1.      To act on behalf of plaintiffs, the Court hereby designates the following as

lead counsel:

Daniel E. Gustafson, Esq.
Gustafson Gluek PLLC
725 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
(612) 333-8844

Plaintiffs' lead counsel shall be a member of and direct the work of the Plaintiffs'

Steering Committee.   In this regard, plaintiffs' lead counsel shall be responsible for

coordinating the activities of plaintiffs during pretrial proceedings and in consultation and

with the assistance of Plaintiff's Steering Committee, shall:

A.      Determine and present (after consultation with other members of

Plaintiffs' Steering Committee), briefs, oral argument, or such other fashion as may be

appropriate, personally or by a designee, to the Court and opposing parties the position of the plaintiffs on all matters arising during pretrial proceedings;

B.      Coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure relating to discovery or any other subsequent Order of this Court;

C.      Conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;

D.      Delegate specific tasks to other counsel in a manner to ensure that pretrial preparation for the plaintiffs is conducted effectively, efficiently and economically;

E.      Enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

F.      Prepare and distribute to the parties periodic status reports;

G.      Maintain adequate time and disbursement records covering services of designated counsel and establish guidelines for approval by the Court as to the keeping of time records and expenses;

H.      Monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

I.      Perform such other duties as may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further Order of the Court; and

J.      Submit, if appropriate, additional committees and counsel for designation by the Court.

2

2.      To act on behalf of plaintiffs, the Court hereby designates the following as

Liaison Counsel:

> Robert K. Shelquist, Esq.
> Lockridge Grindal Nauen PLLP
> 100 Washington Avenue South
> Suite 2200
> Minneapolis, MN 55401
> (612) 339-6900

Plaintiffs' liaison counsel shall:

A.      Maintain and distribute to all other plaintiffs' counsel and to

defendants' counsel an up-to-date service list;

B.      On behalf of all counsel for all plaintiffs, receive from defendants,

the Court, and third parties, and as appropriate, distribute to all other plaintiffs' counsel

the following: written and electronic communications from the Court, defendants and

third parties; pleadings; Orders from the Court; and discovery and documents from

defendants and third parties.

C.      Maintain and make available to all other plaintiffs' counsel at

reasonable hours a complete file of all documents served by or upon each party, and

establish and maintain an electronically accessible document depository.

3.      To act on behalf of plaintiffs, the Court hereby designates the following as

the Plaintiffs' Steering Committee:

> Chair of Plaintiffs' Steering Committee
> Charles S. Zimmerman, Esq.,
> Zimmerman Reed PLLP
> 651 Nicollet Mall, Suite 501
> Minneapolis, MN 55402
> (612) 341-0400

Richard J. Arsenault, Esq.
Neblett, Beard & Arsenault
2220 Bonaventure Court
P. O. Box 1190
Alexandria, LA 71309-1190
(800) 256-1050

C. Brooks Cutter, Esq.
Kershaw, Cutter & Ratinoff, LLP
980 Ninth Street
19th Floor
Sacramento, CA 95814
(916) 448-9800

Jim Doyle, Esq.
Williams, Kherkher, Hart & Boundas LLP
8441 Gulf Freeway
Suite 600
Houston, TX 77017
(713) 230-2200

R. Jackson Drake, Esq.
Whatley Drake & Kallas
1000 Park Place Tower
2001 Park Place North
Birmingham, AL 35202
(205) 328-9576

Nicholas J. Drakulich, Esq.
The Drakulich Firm
2727 Camino Del Rio South
Suite 322
San Diego, CA 92108
(858) 755-5887

Wendy R. Fleishman, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
780 Third Avenue
48th Floor
New York, NY 10017
(212) 355-9500

Michael K. Johnson, Esq.
Goldenberg & Johnson, PLLC
33 South Sixth Street
Suite 4530
Minneapolis, MN 55402
(612) 333-4662

4

Dianne M. Nast, Esq.
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000

Tina B. Nieves, Esq.
Gancedo & Nieves LLP
418 North Fair Oaks Avenue
Suite 202
Passadena, CA 91103
(626) 685-9800

Neil D. Overholtz, Esq.
Aylstock, Witkin, Kreis & Overholtz
803 North Palafox Street
Pensacola, FL 32501
(850) 916-7450

Eric M. Quetglas-Jordan, Esq.
Quetglas Law Offices
P. O. Box 16606
San Juan, PR 00908
(787) 722-0635

Mark P. Robinson, Jr., Esq.
Robinson, Calcagnie & Robinson
620 Newport Center Drive
Seventh Floor
Newport Beach, CA 92660
(949) 720-1288

Camilo K. Salas, III, Esq.
Salas & Co., L.C.
650 Poydras Street
Suite 1660
New Orleans, LA 70130
(504) 799-3080

Hunter J. Shkolnik, Esq.
Rheingold, Valet, Rheingold, Shkolnik & Mccartney LLP
113 East 37th Street
New York, NY 10016
(212) 684-1880

Marcus L. Stevenson, Esq.
Sanford, Stevenson Riff LLP
2016 Bissonnet Street
Houston, TX 77005
(800) 240-2460

Fred Thompson, III, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
P. O. Box 1792
Mt. Pleasant, SC 29464
(843) 216-9000

Teresa Toriseva, Esq.
Wexler, Toriseva Wallace LLP
1446 National Road
Wheeling, WV 26003
(304) 238-0066

Leila H. Watson, Esq.
Corey, Watson, Crowder & DeGaris, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205
(205) 328-2200

4.     To act on behalf of defendants, the Court hereby designates the following

as Liaison Counsel for defendants:

George W. Soule, Esq.
Jennifer K. Huelskoetter, Esq.
Melissa R. Stull, Esq.
Bowman & Brooke LLP
150 South Fifth Street
Suite 3000
Minneapolis, MN 55402
(612) 339-8682

Defendants' liaison counsel shall

A.     Maintain and distribute to all other plaintiffs' counsel and to

defendants' counsel an up-to-date service list;

B.     On behalf of all counsel for all defendants, receive from plaintiffs,

the Court and third parties, and as appropriate, distribute to all other defendants'

6

counsel the following: written and electronic communications from the Court, plaintiffs and third parties; pleadings; Orders from the Court; and discovery and documents from plaintiffs and third parties.

Dated:        May 30, 2008

                                        s/ Richard H. Kyle
                                        RICHARD H. KYLE
                                        United States District Judge


                                        s/ Janie S. Mayeron
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions

**PRETRIAL ORDER NO. 7 RELATING TO CASE-SPECIFIC
DISCOVERY AND PRETRIAL MOTIONS IN ACTIONS NOT
SELECTED FOR INITIAL TRIAL POOL**

**CASE MANAGMENT ORDER NUMBER 3 ("CMO NO. 3")**

The purpose of this Order is to provide further for the sequencing of case-specific

discovery and pretrial motions in the Trasylol Products Liability personal injury actions that

have been filed in, transferred to, or are in the process of being transferred to this Court (i.e., a

notice of tag along has been served). Except as otherwise provided herein, this Order applies to

all Parties as defined in Pretrial Order No. 4 ("PTO No. 4").

I.      **GROUPS OF ACTIONS NOT SELECTED FOR INITIAL TRIAL POOL.**

Exhibit A hereto, which is made a part of this Order, is a list of all Trasylol Products

Liability personal injury actions filed on or before July 15, 2008.[1] The cases identified in

Exhibit A that are not selected for inclusion in the Initial Trial Pool pursuant to separate Order of

this Court shall be assigned to groups, in sequence by date of initial filing, for purposes of the

case-specific expert discovery and pretrial motions schedule. Actions filed on the same date

shall be assigned in sequence alphabetically by last name of the first named plaintiff.

---

[1] This Order does not apply to any putative class actions or any cases not alleging personal injuries.

The actions shall be assigned as follows: Group 1 shall consist of the first six actions. Group 2 shall consist of the next six actions. Group 3 shall consist of the next six actions. Group 4 shall consist of all remaining actions filed on or before July 15, 2008.

If an action initially included in Groups 1 through 3 is later either selected for inclusion in the Initial Trial Pool, transferred, dismissed, or otherwise resolved or disposed of, on or before July 15, 2009, the remaining actions shall be re-allocated among these groups in accordance with this Section.

Group 5 shall consist of all actions filed after July 15, 2008. If additional actions are filed in or transferred to this Court such that completion of discovery in Group 5 becomes unmanageable, the parties may seek a further order from this Court adding additional groups to provide for the prompt disposition of those actions.

## II.  CASE-SPECIFIC DISCOVERY AND PRETRIAL MOTIONS SCHEDULE.

Case-specific discovery and pretrial motions for the personal injury actions shall proceed according to the schedule set forth in Exhibit B to this Order.[2] In addition, Section XI.A of Pretrial Order No. 4 (setting forth the date for completion of fact discovery for actions filed on or before July 15, 2008), is modified as follows:

For actions filed on or before July 15, 2008, and not selected for inclusion in the Initial Trial Pool, the parties shall complete case-specific fact discovery by July 15, 2009, except that, absent agreement of the parties or upon good cause shown, case-specific depositions of fact witnesses shall be limited to one witness from each of the following categories for each patient who allegedly received Trasylol:

(1)    the patient or the patient's representative; and

---

[2] Any date in the schedule falling on a weekend or court holiday shall be adjusted to the next business day.

2

(2)   the patient's primary care physician prior to the time the patient allegedly was administered Trasylol; and

(3)   the patient's cardiologist; and

(4)   the patient's surgeon for the procedure in which Trasylol allegedly was administered; and

(5)   the doctor or other health care professional who allegedly prescribed Trasylol for the patient; and

(6)   the doctor or other health care professional who treated the patient for any alleged Trasylol-related injury.

If the identity of any physician or health care professional described in the foregoing sentence is not specified in the Plaintiff Fact Sheet, the Plaintiff shall promptly identify them upon request from Defendants. Additional depositions of case-specific fact witnesses related to a particular patient (for example, of multiple representative plaintiffs, or of any additional surgeon who performed a "take back" cardiac surgery following the surgery in which Trasylol was administered) may be taken prior to July 15, 2009, upon agreement of the parties or by Court order for good cause shown. Production of documents described in Section VIII.C(9) of Pretrial Order No. 4 (pertaining to sales representatives), disclosures of case-specific fact witnesses, depositions of case-specific fact witnesses not deposed prior to July 15, 2009, case-specific expert discovery, and pretrial motions for the personal injury actions shall proceed according to the schedule set forth in Exhibit B, which is made a part of this Order. If any case-specific fact witness described in categories (1) through (6) above is not deposed before July 15, 2009, such witness may be deposed during the time for completion of fact witnesses set forth in the schedule in Exhibit B.

For actions filed after July 15, 2008, Section XI.A of Pretrial Order No. 4 setting forth the date for completion of case-specific fact discovery for actions filed after July 15, 2008, is modified as follows: The case-specific fact discovery described above relating to categories (1)

3

through (6) of this Section shall be completed within twelve (12) months after the date of initial

service of the complaint. Discovery in actions filed after July 15, 2008, otherwise shall proceed

in accordance with Pretrial Order No. 4 and this Order, including Exhibit B herein, until further

order of the Court.

     DONE AND ORDERED in Chambers at West Palm Beach, Florida, this _16_ day

of September, 2008.

                               DONALD M. MIDDLEBROOKS
                               UNITED STATES DISTRICT JUDGE

EXHIBIT "A"

| | **(LEAD) PLAINTIFF** | **DATE FILED** | **TRANSFEROR COURT** | **MDL NO.** |
|---|---|---|---|---|
| 1 | Morrill, Melissa | Dec. 29, 2006 | M.D. Florida | 08-80424 |
| 2 | Davis, Linda | Jan. 25, 2007 | M.D. Tennessee | 08-80651 |
| 3 | Williams, Ada | Jan. 25, 2007 | M.D. Tennessee | 08-80650 |
| 4 | Bakan, Deborah | Feb. 2, 2007 | M.D. Florida | 08-80423 |
| 5 | O'Connor, Michael | Apr. 9, 2007 | S.D. California | 08-80435 |
| 6 | Sessums, Jonnie | May 16, 2007 | S.D. Mississippi | 08-80388 |
| 7 | De Leon, Lupe | May 17, 2007 | N.D. California | 08-80395 |
| 8 | Storer, Elena | May 17, 2007 | N.D. California | 08-80394 |
| 9 | Lanham, Kenneth | May 21, 2007 | S.D. Texas | 08-80397 |
| 10 | Fast, Crystal | May 23, 2007 | N.D. West Virginia | 08-80613 |
| 11 | Wease, David | June 15, 2007 | N.D. Georgia | 08-80387 |
| 12 | Pesl, Vance | Sept. 5, 2007 | S.D. Texas | 08-80393 |
| 13 | Reider, Evelyn | Sept. 12, 2007 | W.D. Louisiana | 08-80444 |
| 14 | Ware, Sheila | Oct. 5, 2007 | C.D. California | 08-80428 |
| 15 | Shaw, Sherry | Dec. 1, 2007 | M.D. Georgia | 08-80386 |
| 16 | Durkin, Thomas | Dec. 6, 2007 | N.D. Illinois | 08-80419 |
| * | Rodriguez, Ismael | Dec. 10, 2007 | S.D. Florida | 07-81172 |
| 17 | Burnette, Bobbie | Dec. 12, 2007 | N.D. Alabama | 08-80697 |
| 18 | Collins, Jeanne | Dec. 31, 2007 | N.D. California | 08-80605 |
| 19 | Steptoe, Jerlene | Jan. 14, 2008 | S.D. Georgia | 08-80608 |
| 20 | Caruso, Roseann | Jan. 17, 2008 | D. Connecticut | 08-80639 |
| 21 | Eannarino, Matthew | Jan. 17, 2008 | D. Connecticut | 08-80640 |
| 22 | Mittelman, Melva | Jan. 22, 2008 | N.D. Georgia | 08-80594 |
| 23 | Baker, Marilise | Jan. 24, 2008 | N.D. Georgia | 08-80595 |
| 24 | Reedy, Helen | Jan. 24, 2008 | N.D. Georgia | 08-80588 |
| 25 | Monahan, David | Jan. 25, 2008 | D. Connecticut | 08-80641 |

| | | | | |
|---|---|---|---|---|
| 26 | Booterbaugh, Jodi | Jan. 28, 2008 | S.D. Ohio | 08-80552 |
| 27 | Minard, Carol | Jan. 31, 2008 | N.D. California | 08-80587 |
| 28 | Holman, Delores | Feb. 19, 2008 | S.D. Ohio | 08-80575 |
| 29 | Kahr, Ruth | Feb. 19, 2008 | S.D. Ohio | 08-80551 |
| 30 | Wash, Derek | Mar. 11, 2008 | M.D. Georgia | 08-80607 |
| 31 | Walker, Clarence | Mar. 14, 2008 | D. Connecticut | 08-80642 |
| 32 | Davis, Emma (NJ) | Mar. 20, 2008 | D. New Jersey | 08-80623 |
| * | Recalde, Enrique | Mar. 31, 2008 | C.D. California | |
| * | Saine, Jerry | Apr. 11, 2008 | E.D. North Carolina | 08-80763 |
| 33 | Bryant, Anna | Apr. 16, 2008 | D. Connecticut | |
| 34 | Cook, Alta M. | Apr. 16, 2008 | D. Connecticut | 08-80710 |
| 35 | Perales, Maricela | Apr. 16, 2008 | W.D. Missouri | 08-80687 |
| 36 | Boxrud, Sandra | Apr. 17, 2008 | S.D. Florida | 08-80404 |
| 37 | Clark, Karla | Apr. 17, 2008 | S.D. Florida | 08-80399 |
| 38 | Gallipeau, Shawn | Apr. 17, 2008 | S.D. Florida | 08-80400 |
| 39 | McLendon, Kathy | Apr. 17, 2008 | S.D. Florida | 08-80402 |
| 40 | Nakis, Genevieve | Apr. 17, 2008 | S.D. Florida | 08-80405 |
| * | Roberts, Nina | Apr. 17, 2008 | S.D. Florida | 08-80401 |
| 41 | Sherman, Judy | Apr. 17, 2008 | S.D. Florida | 08-80403 |
| 42 | Moyer, Marcia | Apr. 18, 2008 | S.D. Florida | 08-80406 |
| 43 | Watters, James | Apr. 21, 2008 | E.D. Missouri | |
| 44 | Orapello, Florence | Apr. 22, 2008 | N.D. Florida | |
| 45 | White, Barbara | Apr. 25, 2008 | D. Connecticut | 08-80760 |
| 46 | Carr, Rosalie | May 9, 2008 | D. Connecticut | 08-80834 |
| 47 | Summerlin, Melvin | May 12, 2008 | S.D. Alabama | |
| 48 | Brickman, Patrick | May 13, 2008 | N.D. Alabama | 08-80771 |
| 49 | Dodson, George | May 13, 2008 | N.D. Alabama | 08-80770 |
| 50 | Mordecai, Linda | May 13, 2008 | N.D. Alabama | 08-80781 |

| 51 | Baker, Herman | May 14, 2008 | D. South Carolina | |
| 52 | Chapman, Richard | May 16, 2008 | S.D. Florida | 08-80526 |
| 53 | Moore, Monica | May 16, 2008 | S.D. Florida | 08-80523 |
| 54 | Parks, Steve | May 16, 2008 | S.D. Florida | 08-80524 |
| 55 | Schlaikowski, James | May 16, 2008 | S.D. Florida | 08-80522 |
| 56 | Spanevello, Grace | May 16, 2008 | S.D. Florida | 08-80525 |
| * | S.E. Laborers Health and Welfare Fund | May 16, 2008 | M.D. Tennessee | |
| 57 | McLeod, Diane | May 19, 2008 | D. Connecticut | |
| 58 | Puckett, Conrad | May 22, 2008 | W.D. North Carolina | |
| 59 | Deitz, Helen | June 4, 2008 | D. Connecticut | |
| 60 | McKinney, John | June 4, 2008 | D. Connecticut | |
| 61 | Romero, Edilea | June 16, 2008 | D. Utah | |
| 62 | Coats, Jimmy | June 18, 2008 | N.D. Alabama | |
| 63 | McLain, Jimmie Sue | June 18, 2008 | N.D. Alabama | |
| 64 | Hall, Joyce | June 18, 2008 | S.D. Florida | 08-80659 |
| 65 | Eisenhart, Jeffrey | June 23, 2008 | D. Connecticut | |
| 66 | Consolino, Dominic | June 30, 2008 | S.D. Illinois | |
| 67 | Stieb, James | June 30, 2008 | S.D. Illinois | |
| 68 | Rawson, Dan | July 7, 2008 | W.D. Missouri | |
| 69 | Romain, Charles | July 7, 2008 | E.D. Oklahoma | |
| 70 | Lewandowski, Katherine | July 11, 2008 | S.D. Florida | 08-80750 |
| 71 | Metzger, Gregory | July 11, 2008 | S.D. Florida | 08-80751 |
| 72 | Scott, Frances | July 11, 2008 | S.D. Florida | 08-22003 |
| 73 | George, Varughese | July 14, 2008 | S.D. Florida | 08-80762 |
| 74 | Medlinger, Carol | July 14, 2008 | S.D. Florida | 08-80761 |
| 75 | Bechara, Naguib | July 15, 2008 | S.D. Florida | 08-80776 |

* Case-specific expert discovery to be sequenced separately

# EXHIBIT "B"

| | Initial Trial Pool | Group 1 | Group 2 | Group 3 | Group 4 | Group 5 |
|---|---|---|---|---|---|---|
| **Plaintiffs serve Rule 26(a)(3)(A)(i) disclosures for all case-specific fact witnesses** | May 18, 2009 | July 1, 2009 | Sept. 1, 2009 | Nov. 2, 2009 | Mar. 1, 2010 | Apr. 1, 2010 |
| **Defendants identify case-specific sales representatives and produce documents per Pretrial Order No. 4 § VIII.C(9)** | May 25, 2009 | July 8, 2009 | Sept. 8, 2009 | Nov. 9, 2009 | Mar. 8, 2010 | Apr. 8, 2010 |
| **Plaintiffs serve Rule 26(a)(2) reports for case-specific experts and provide reasonable schedule of deposition dates** | June 29, 2009 | Sept. 1, 2009 | Nov. 2, 2009 | Dec. 31, 2009 | May 3, 2010 | June 3, 2010 |
| **Depositions of case-specific fact witnesses completed; all case-specific fact discovery closed** | July 15, 2009 | Sept. 15, 2009 | Nov. 16, 2009 | Jan. 14, 2010 | May 17, 2010 | June 17, 2010 |
| **Depositions of Plaintiffs' case-specific experts** | July 13, 2009 through Aug. 24, 2009 | Sept. 15, 2009 through Oct. 27, 2009 | Nov. 16, 2009 through Jan. 15, 2010 | Jan. 14, 2010 through Feb. 25, 2010 | May 17, 2010 through June 28, 2010 | June 17, 2010 through July 29, 2010 |
| **Defendants' *Daubert* motions filed and served** | Sept. 21, 2009 | Nov. 24, 2009 | Jan. 25, 2010 | Mar. 25, 2010 | July 26, 2010 | Aug. 26, 2010 |
| **Oppositions to Defendants' *Daubert* motions filed and served** | Oct. 19, 2009 | Dec. 22, 2009 | Feb. 22, 2010 | Apr. 22, 2010 | Aug. 23, 2010 | Sept. 23, 2010 |
| **Replies in support of Defendants' *Daubert* motions filed and served** | Nov. 2, 2009 | Jan. 5, 2010 | Mar. 8, 2010 | May 6, 2010 | Sept. 6, 2010 | Oct. 7, 2010 |
| **Defendants serve Rule 26(a)(2) reports for case-specific experts and provide reasonable schedule of deposition dates** | Sept. 7, 2009 | Nov. 10, 2009 | Jan. 11, 2010 | Mar. 11, 2010 | July 12, 2010 | Aug. 12, 2010 |
| **Depositions of Defendants' case-specific experts** | Sept. 21, 2009 through Nov. 2, 2009 | Nov. 24, 2009 through Jan. 15, 2010 | Jan. 25, 2010 through Mar. 8, 2010 | Mar. 25, 2010 through May 6, 2010 | July 26, 2010 through Sept. 6, 2010 | Aug. 26, 2010 through Oct. 7, 2010 |
| **Dispositive motions and/or Plaintiffs' *Daubert* motions filed and served on or before** | Nov. 13, 2009 | Feb. 2, 2010 | Apr. 5, 2010 | June 3, 2010 | Oct. 4, 2010 | Nov. 4, 2010 |
| **Oppositions to dispositive motions and/or Plaintiffs' *Daubert* motions filed and served + 28 days, no later than** | Dec. 11, 2009 | Mar. 2, 2010 | May 3, 2010 | July 1, 2010 | Nov. 1, 2010 | Dec. 2, 2010 |
| **Replies in support of dispositive motions and/or Plaintiffs' *Daubert* motions filed and served + 14 days, no later than** | Dec. 28, 2009 | Mar. 16, 2010 | May 17, 2010 | July 15, 2010 | Nov. 15, 2010 | Dec. 16, 2010 |

# EXHIBIT E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: GADOLINIUM BASED         .
CONTRAST AGENTS,                . Cleveland, Ohio
Products Liability Litigation.  Case No. 1:08GD500000
                                . MDL 1909
                                . 3:05 p.m
. . . . . . . . . . . . . . .   . May 13, 2008

TRANSCRIPT OF TELEPHONIC CONFERENCE CALL
BEFORE THE HONORABLE DAN AARON POLSTER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs'      Spangenberg Shibley & Liber
Liaison Counsel:         By:  PETER J. BRODHEAD, ESQ.
                              -and-
                              WILLIAM HAWAL, ESQ.




For the Defendant GE     Squire Sanders & Dempsey
and Defendants'          By:  CHARNA E. SHERMAN, ESQ.
Liaison Counsel:


PARTIAL LISTING OF COUNSEL VIA TELEPHONE:
                         Lopez McHugh
                         By:  RAMON LOPEZ, ESQ.

                         Ashcraft & Gerel
                         By:  CHRIS TISI, ESQ.

                         HABIB NASRULLAH, ESQ.
                         TOM STURCHI, ESQ.
                         DEBBIE MOELLER, ESQ.
                         TROY RAFFERTY, ESQ.
                         PETER BURG, ESQ.

Lead Counsel for         DLA Piper
Defendant GE             By:  AMY W. SCHULMAN, ESQ.
HealthCare, Inc.

Lead Counsel for         Bartlit Beck Herman Palenchar
Defendant Bayer:         Scott

Page 2

1
2 PARTIAL LISTING OF COUNSEL VIA TELEPHONE:
3        Burg Simpson Eldredge
         Hersh & Jardine
4 By: SETH KATZ, ESQ.
5        Seeger Weiss
  By: CHRIS SEEGER, ESQ.
6
7
8
9
10
11 Also Present      Greg Jolivette, Law Clerk
   in Chambers'      Mary Hughes, Law Clerk
12 Conference Room:
13
   Court Reporter:    Carol D. Hill, RPR, CPE
14                    Carol D. Hill & Associates
                      55 Public Square, #935
15                    Cleveland, OH 44113
16
17
18
19
20
21
22
23
24
   Proceedings recorded by manual stenography;
25 transcript produced by computer.

Page 3

1        MS. HUGHES:  Judge, I'm going to go ahead
2 and find out who's on.
3        THE COURT:  Well, we don't have to go
4 over a hundred people.  Whoever's on is on.
5        MR. BRODHEAD:  I can make a listing.  I'd
6 be happy to do that.  We'll submit a joint listing.
7        MS. HUGHES:  Afterwards?
8        MR. BRODHEAD:  Yes, or if we'd just ask.
9        MS. SHERMAN:  We can identify who's
10 speaking.
11        THE COURT:  Yes.  We should definitely
12 identify who's speaking, but I don't think we need a
13 roll call.
14        All right.  I had a couple of general
15 things.  In the future, I'm going to need the agenda
16 and any filings, motions, letters, whatever, no less
17 than three business days in advance of the conference
18 or the phone conference, because I got some things in
19 as late as this morning, and, quite frankly, I've not
20 really been able to assimilate them in the way I'd
21 like to.  I'm going to make some decisions, but
22 they're not as informed as I'd like them to be; and
23 that's because of the volume and the lateness.  So I
24 want that in the future.
25        Second, there was a reference in one of the

Page 4

1 letters -- I think it was defendant's letter -- that
2 there will be 700 cases.  And I thought when I asked
3 this in an earlier conference we did not think it
4 would be more than two or 300; so I guess if -- have
5 things changed?  At the moment we have approximately
6 100, 110.  They're still coming in.
7        MR. BRODHEAD:  Judge, I -- Peter
8 Brodhead, plaintiffs' liaison counsel.  I wasn't
9 present when that conversation took place, but I see
10 that it was in the pleadings.  Evidently, there was a
11 conversation between one of plaintiffs' counsel and
12 one of defendants' counsel at which it was suggested
13 that there may be as many as 700 cases.  I can't
14 address that except to say that if we were to take an
15 estimate or try to estimate what is likely to be
16 filed both in state and federal cases throughout the
17 United States, I would say that is a reasonable
18 number, plus or minus.
19        THE COURT:  Okay.
20        MS. SCHULMAN:  Your Honor, this is Amy
21 Schulman.  That is not a number that the defendants
22 subscribe to.  That number of 700, is assumed to be
23 the number that plaintiffs believe.  And defendants
24 believe that the number of claims would be far lower
25 than that.

Page 5

1        THE COURT:  However many there are, there
2 are.  If they keep trickling in the way they're going
3 and we get up to 700, it will be years from now; so
4 we'll just see what happens.
5        I certainly read the parties' scientific
6 memoranda.  I skimmed through the articles.  I
7 haven't read them all.  They were quite informative.
8 I have a good sense of what the key issues are.
9        I was wondering if anyone has any statistics on
10 the total number of patients with renal failure who
11 have received the GBCA.  Does anyone know that
12 number?  We obviously have some subset that have
13 contracted NSF, but does anyone have an idea, how
14 many patients with renal failure have received a
15 GBCA?
16        MR. HAWAL:  Your Honor, this is Bill
17 Hawal -- the best I think anyone can say is that the
18 literature estimates that anywhere from five to seven
19 percent of patients with acute renal failure or
20 severe renal failure who are exposed to GBCA, develop
21 NSF.  So that would have to be calculated perhaps in
22 that way.  That's the best way I can answer.
23        THE COURT:  All right.  Is that
24 literature, you know, sort of acceptable to both
25 sides, that says that roughly five to seven percent?

2 (Pages 2 to 5)

4dcaa55a-6e8a-4bb0-8679-0401671c9139

Page 6

1 I don't -- I'm sure that is in there. I didn't pick
2 that up, Bill.
3     MS. SCHULMAN: Your Honor, it is Amy
4 again. I think the number most people sitting around
5 the table with me here recall is more in the
6 neighborhood of two to three percent. But we will
7 look and ask our scientists and see if we can get you
8 a precise citation; because, while we recollect that
9 number, we don't have the precise citation to give
10 you at the current time.
11     THE COURT: If you can refer me, and if
12 it's already in one of the articles you've provided,
13 I'll go right to it.
14     MS. SCHULMAN: Okay.
15     THE COURT: Okay. Well, it looks like --
16 there were three things on the agenda. The first one
17 is the product identification. I'll get to that.
18 Maybe I'll deal with the other two.
19     Protective order, format of production order.
20 What does that refer to?
21     MR. BRODHEAD? Your Honor, Seth Katz, I
22 think, is prepared to address that.
23     MR. KATZ: Your Honor, Seth Katz from
24 Burg Simpson. Since we were last in Cleveland, we
25 were trying to negotiate both a protective order,

Page 7

1 globally with all five defendants, and also a format
2 of production order.
3     The format of production order, that has been
4 finally agreed to. With regard to the protective
5 order, I think we are probably comfortable in saying
6 we're close but we're definitely not there yet.
7 There is at least one issue we'll need to bring to
8 the Court for resolution. That is the issue of the
9 plaintiffs' ability to show treating physicians,
10 doctors, under a protective order. Certain
11 defendants have opposed that ability. Obviously that
12 is an important issue for the plaintiffs.
13     And then there are one or two other issues that
14 I think we're pretty confident we can work out with
15 some wordsmithing; and we are confident we can kick
16 those provisions out and negotiate them later and
17 submitting the rest to the Court.
18     There is one tangential issue, and that
19 is we haven't received any production since the last
20 time, the last production before we were last in
21 Cleveland, and we tried to work out an attorneys'-
22 eyes-only provision for now, so we can keep the
23 production coming, and the lawyers can review them.
24 And we thought we had an agreement but we have not
25 received any additional productions.

Page 8

1     THE COURT: Well, I guess on this one
2 issue, I think I'll need submissions from both sides,
3 and I'll decide it at our next conference, which is
4 in June.
5     MR. KATZ: Your Honor, this is Seth Katz
6 again. Is there a way we can get an order in a
7 shortened time frame? I'd hate that to hold up
8 production between now and then.
9     THE COURT: File something and I'll
10 decide it.
11     MR. KATZ: Thank you, your Honor.
12     THE COURT: When did you want to file
13 something, and as soon as -- I'll take a couple days
14 and I'll decide it?
15     MR. KATZ: Great. Thank you.
16     THE COURT: I'll put some dates. What do
17 you all want for timing on that?
18     MR. KATZ: We can probably submit
19 something by the end of this week or maybe on Monday
20     THE COURT: Why don't we do this: Both
21 sides can submit something by a week from today, and
22 I'll decide it.
23     So that's on the 20th.
24     That's on this one issue about showing documents
25 which are subject to the protective order to

Page 9

1 plaintiffs' treating physicians.
2     Okay. I'll make a point -- I'm in trial next
3 week, but I will endeavor to make a decision by the
4 end of next week.
5     MR. KATZ: Thank you, your Honor.
6     THE COURT: All right, then federal-
7 state cooperation. I had one conversation with the
8 state judge in New Jersey, and I've been submitting
9 -- I'm providing him copies of all my orders.
10     Anything anyone wants to report on that?
11     MR. SEEGER: Judge --
12     MS. SCHULMAN: Your Honor --
13     MR. SEEGER: Go ahead, Amy.
14     MS. SCHULMAN: No, you go.
15     MR. SEEGER: Your Honor, Chris Seeger.
16 How are you?
17     We had a brief conference with Judge Happas
18 today, just to give her an update on what we're doing
19 in the MDL and, also, on discovery areas and what
20 we're trying to negotiate agreements with the
21 defendants on.
22     Nothing really substantive happened today
23 other than the report, and she appointed my firm,
24 Seeger Weiss, as liaison counsel in New Jersey.
25     THE COURT: Okay. How many cases does

3 (Pages 6 to 9)

4dcaa55a-6e8a-4bb0-8679-0401671c9139

## Page 10

1  she have now?
2      MR. SEEGER:  She has 27, and she asked us
3  for an estimate of what we thought could be filed in
4  Jersey.  I gave her the number of two to 300, only
5  because taking a census like that is a little
6  difficult right now, when people are still working on
7  investigating their cases.  But, I think, that is
8  probably a safe number.  I don't see it going much
9  above that.
10      THE COURT:  Is this two to 300, plus the
11  700 in federal court; so that would be a thousand?
12      MR. KATZ:  I don't know where the number
13  in federal court came from, Judge.  Somebody else, I
14  think sent that to you.  I'm not sure I --
15      THE COURT:  Is it two to 300 plus the two
16  to 300 federal ones?  So, that is four to 600.
17      MR. KATZ:  Yes.
18      THE COURT:  I don't think we quantified
19  which ones could be filed in federal and which ones
20  with state court.  They're all similar cases.
21      MR. KATZ:  Right.
22      THE COURT:  Okay.  Well, I don't know.
23  I'd stay in touch with the state judge as we proceed
24  on this, is about all I can say.
25      MR. LOPEZ:  Your Honor, this is Ramon

## Page 11

1  Lopez from California, with Lopez McHugh.  In
2  addition to New Jersey there are cases filed in
3  California state court as well, and some of those are
4  before the JPML on remands back to the state court.
5  There will probably be somewhere between 20 to 30 or
6  40 state court cases ultimately filed in California;
7  and there is probably only around ten right now.  And
8  those have not been put before one judge, at least as
9  of yet.
10      THE COURT:  Well, there is not much I can
11  do about those cases.  They are what they are, so,
12  anyone -- does anyone have any words of wisdom on
13  that subject?
14      MR. SEEGER:  Judge, it's Chris Seeger
15  again.  I guess I'd like to, because the subject has
16  become important for various reasons; so just to let
17  the Court know that many of us working on the
18  state-federal coordination link.  My partner, Dean
19  Buchanan, who was appointed with Ramon Lopez, and I,
20  we have done this in several litigations, I think
21  successfully.  Many of us are just coming out of
22  Vioxx.  We put together a program on state-federal
23  coordination that we think, and I think the judges
24  would agree, there was very little if any duplication
25  of effort.  And the big thing was, in order to

## Page 12

1  encourage the state court lawyers in California and
2  New Jersey to sort of come along in the MDL and allow
3  things to be scheduled in the MDL and work together
4  as a group, we just had to be protective of certain
5  state court rules that they had in those states that
6  might vary from the federal rules.
7      I think we've done a good job in the past.  I'm
8  sure if we don't do a good job, the defendants will
9  let you know immediately.  But right now I think it's
10  going very smoothly.
11      THE COURT:  The key thing is coordinating
12  discovery, so you don't have the same witnesses
13  deposed repeatedly, particularly experts.
14      Presumably each plaintiff has a separate
15  treating physician, but there is a lot of
16  duplication; so, I will assume it's going okay.  If
17  there is a problem, I should be alerted.  I'll see
18  what I can do.  I can't order a state judge to do
19  anything, but I'm confident if there are some
20  problems that are disrupting things, I'll try to work
21  them out.
22      MR. KATZ:  So -- I'm sorry, Judge.
23      THE COURT:  So I'm not going to do
24  anything other than, you know, making sure my orders
25  get disseminated.  If there are issues that come up,

## Page 13

1  someone should get a telephone conference scheduled
2  and I'll see what we can do.
3      MR. KATZ:  On most of the depositions,
4  Judge, the way we've gotten around any problem, we've
5  been cross-noticing and providing time for state
6  court lawyers in certain jurisdictions to ask their
7  questions.
8      But there are instances, if someone wants to
9  take a trial presentation deposition -- in New
10  Jersey, for example, you're entitled to a discovery
11  deposition.  We've been able to work through those
12  issues.  I don't think you'll get many of them.
13      THE COURT:  Okay.  Good.
14      MS. SHERMAN:  We had also hoped to give
15  you an updated list -- Peter, the last list we gave
16  you?
17      MR. BRODHEAD:  I still have not heard
18  from one party, so why don't you go ahead and submit
19  that list.
20      MS. SHERMAN:  Just to keep you as up to
21  date as you can be.  It may not be one hundred
22  percent perfect, but it's close.
23      THE COURT:  Recognizing there are
24  changes, yes.  I mean, some case that hasn't been
25  filed.

4 (Pages 10 to 13)

4dcaa55a-6e8a-4bb0-8679-0401671c9139

Page 14

1      MR. BRODHEAD: It makes sense, your
2  Honor, if we endeavor to submit a joint list at or
3  about the time of each hearing that the Court has and
4  --
5      THE COURT: That's a good idea.
6      MR. BRODHEAD: We'll do that.
7      THE COURT: Okay. So, this is a list as
8  of May 12th, to the best of the parties' knowledge of
9  the state cases.
10     MR. BRODHEAD: Right. There, through no
11  fault of the defendants, there has been a limited
12  input by the plaintiffs on this, so we will
13  double-check that. If there are any changes, we will
14  apprise the Court.
15     MS. SHERMAN: This is the best of the
16  defendants' ability to know. Obviously, you may have
17  more.
18     THE COURT: Okay. Last is the issue
19  that the parties submitted their letters on, and I'm
20  doing my best to be fair to both sides, all sides;
21  but I want to move this forward. So, in my view this
22  is the fairest and best way to do it.
23     The plaintiffs are to submit their plaintiff
24  profile forms on all plaintiffs. If the plaintiff
25  has established a product I.D. in a given case, then

Page 15

1  the defendant is to submit a defendant profile form
2  for that case.
3      And I think the parties said that that has
4  occurred in roughly 77 out of 118.
5      If the plaintiff has not established product
6  I.D., and that looks like it is about a third of the
7  cases so far, the plaintiff must serve third-party
8  discovery first in an effort to establish a product.
9  And if the third-party discovery does not reveal the
10  product, then GE and Bayer will provide a fact sheet,
11  and hopefully that will trigger -- you know, that
12  will do it.
13     I think that that is the fairest way to do it.
14  It is sort of -- it isn't what the plaintiffs
15  suggested. It isn't what the defendants suggested,
16  but it is sort of a hybrid.
17     There should be an enforcement mechanism for
18  either side's failure to submit their fact sheet, and
19  it should be the same. That will make sure that
20  everyone does what they're supposed to do.
21     I'm not in a position to tell you -- I mean,
22  what medical conditions the plaintiffs need to
23  provide information on. I guess first we had a list
24  of 80 different conditions. Then it was -- the
25  defendants narrowed it down to 26. And then the

Page 16

1  plaintiffs reduced it to ten or four, or something.
2  I don't know what they are. I'm not in a position to
3  decide.
4      If you all can't figure it out, I'll have
5  to ask for briefs and you'll have to tell me what is
6  relevant and what is not. But I have to think that
7  you can agree on what kinds of conditions might
8  conceivably be relevant. So, if you can't, I'll have
9  to decide that.
10     I guess I need this from the plaintiffs: Why is
11  it necessary, at this time, to learn about all the
12  contacts with sales representatives in each
13  individual case?
14     MR. BRODHEAD: Judge, Peter Brodhead. I
15  think Chris Tisi, discovery chair for the PSC, should
16  address that.
17     THE COURT: All right.
18     MR. TISI: Your Honor, Chris Tisi for the
19  plaintiffs' steering committee.
20     The reason why that is very important is because
21  the plaintiffs need to know what kind of information
22  that was provided to the doctors about the benefits
23  and risks associated with the drug. Not just doctors
24  generally, but also doctors involved in a particular
25  case. We have had circumstances where -- well, let

Page 17

1  me back up for a moment.
2      In the last status conference, your Honor made
3  it clear in terms of picking cases for trial and
4  early trial, one of the things to consider is how
5  representative and how -- how representative a case
6  would be.
7      We, in order for us to learn that information,
8  we have to know what kind of information was provided
9  to the doctors and what the relationship the doctors
10  have to any of the defendants in the case.
11     And if a doctor was told to use or not use a
12  GBCA in a certain manner; was told about certain
13  risks; was not told about certain risks, it might
14  make a case more or less typical for purposes of
15  trial selection and purposes of follow-up discovery.
16     One of the main issues the defendants raised is
17  the learned-mediary defense. That is, the doctors
18  already knew and they did not need to warn about
19  certain information. We need to know what
20  information, just like the defendants need to know
21  about our medical and our damage information, in
22  order to make an informed choice about which cases we
23  can submit for trial selection purposes and for
24  discovery selection purposes.
25     One of the key issues that we have is that we

CAROL D. HILL & ASSOCIATES
216-687-0005

4dcaa55a-6e8a-4bb0-8679-0401671c9139

Page 18

1 should be on the same footing as the defendants in
2 terms of evaluating cases. And in our view it is not
3 only not fair, it's inappropriate to have defendants
4 have a database of communications with doctors at
5 their disposal where they can look and see what they
6 told doctors, what they did not tell doctors, what
7 the doctors told them after about their use of GBCAs
8 that would bear upon all these issues, that we not
9 have that. And I think that the Court will be
10 looking to the plaintiffs and the defendants to
11 inform the Court as to which cases are appropriate to
12 set for trial, and we can only do that if we have
13 the same information at our disposal.
14          MR. ISMAIL: Your Honor, this is Terrik
15 Ismail.
16          THE REPORTER: I'm sorry. I can't hear
17 him.
18          MR. ISMAIL: Can you hear me okay, your
19 Honor?
20          THE COURT: Yes. Who's speaking?
21          MR. BRODHEAD: Terrik Ismail.
22          MR. ISMAIL: Terrik Ismail, on behalf of
23 Bayer defendants.
24          THE COURT: Okay.
25          MR. ISMAIL: With respect to Mr. Tisi's

Page 19

1 comments, I understand your Honor wants to have some
2 form of defendants' fact sheets which is case
3 specific, on discovery which proceeds after the
4 product I.D. issue, but the question Mr. Tisi raises
5 is one of -- putting it in the context of needing
6 information for trial selection.
7          There is some information we can provide that
8 would be pertinent to that information, such as "Dear
9 Doctor" letters that went from the manufacturers to
10 the physician or other written communication, medical
11 communications. I know the plaintiffs have raised
12 the question of whether doctors have been retained as
13 speakers on behalf of the manufacturing defendants,
14 but what Mr. Tisi described was a much broader
15 production of documents of sales reps' materials that
16 is not -- would pose an undue burden on the
17 defendants to do so in every single case. There are
18 multiple sales reps' interactions with the
19 physicians. But I think what the plaintiffs are
20 looking for is not information on the typical case
21 but information on the atypical case. They're mining
22 for information or fishing for information, looking
23 for whatever contact they want to allege to be
24 suspicious between sales reps and physicians. That
25 is not going to help them identify a representative

Page 20

1 case. That is going to help them identify cases that
2 they think are more favorable to them.
3          So, the question of putting the parties
4 on equal footing is one that we can address through,
5 in some cases, exchange of information. But looking
6 for full document production of sales reps' materials
7 at this stage is certainly premature and, really, in
8 some respects, frustrates the purpose of the MDL,
9 where we're trying to get coordinated discovery; and
10 to proceed with the full-blown case specific
11 discovery on every case is acting as if we don't have
12 a coordinating proceeding, your Honor.
13          MS. SCHULMAN: Your Honor, if I may --
14          THE COURT: I think I've heard enough.
15 All right. I mean, the defendants have to
16 produce any wide-spread or mass mailings or
17 communications they made to physicians or the medical
18 community about their product; and they certainly
19 have to provide any information that reflects any
20 financial arrangements, consulting, financial,
21 whatever they had with any, I guess, any of
22 plaintiffs' treating doctors, treating physicians.
23 That's for sure.
24          At this point I'm not going direct them to
25 search and find out every little sales call and what

Page 21

1 any sales rep might have made, might have said. Down
2 the road, that may be relevant.
3          MR. TISI: Your Honor, may I ask for a
4 point of clarification? At least in our experience,
5 in most of these cases, the defendants kept a
6 database of calls that they made to doctors,
7 indicating what kind of information, pro and con, not
8 only about their drugs but about reasonable
9 alternatives are in there, but it's not typically --
10 I don't want to leave the Court with the impression
11 that defendants typically have to mine through piles
12 and piles of documents. Typically the stuff is
13 contained in a sales database, tracked by the
14 company. It is not nearly as burdensome as what has
15 been proposed here.
16          I would point out, in many of the cases, in the
17 Vioxx case, for example, there were about 20,000
18 cases. Here there are, depending upon the count, two
19 to 700 cases divided among five different defendants.
20 It seems to me, at the very least, if this stuff is
21 contained in a database, that we should be provided
22 with, and it is easily produceable, and we should
23 know that there is such a database; and secondly, to
24 make a determination as to how burdensome it really
25 is.

6 (Pages 18 to 21)

CAROL D. HILL & ASSOCIATES
216-687-0005

Page 22

1    THE COURT: Find out if there is a common
2    database that each company has of that; so it will be
3    readily retrievable, I'd like to know. Then we'll
4    figure out what to do.
5        MS. SCHULMAN: Your Honor, this is Amy
6    Schulman.
7        I think what I wanted to say before was
8    that from our perspective, one of the things we have
9    focused on here was certain threshold issues; and it
10   seems that what we wanted to explain is that all of
11   this specific discovery, it is viewed in the context
12   of millions of pages of non-case specific discovery
13   that the defendants are already producing, and the
14   burden that we're put under with respect to document
15   production --
16       THE COURT: Well, Amy, I'm mindful of
17   that. If there is a database there, and there's not
18   going to be too hard to say, "Okay, we have a
19   database that shows any contact we made with Dr.
20   Smith by Bayer." So if that's the case, it will be
21   easy to pull it out. If it's not, I'm not likely to
22   order it; so, why don't you advise the Court if there
23   is such a database.
24       And there was some reference in these papers
25   that the plaintiffs had questions about MRI

Page 23

1    equipment, and I don't see how the MRI equipment is
2    an issue in this case, so at this point I'm not going
3    to order any production on that. If someone can show
4    specifically how it might be relevant down the road
5    to produce, we can take it up.
6        MR. HAWAL: Your Honor, Bill Hawal again.
7    Just to address that issue for the Court, I have been
8    going through certain custodial files for the GE
9    Health Care production. And, in fact, there is
10   evidence that they have been bundling their product
11   in terms of marketing both their GBCAs and their
12   scanners together, and that's why we believe that is
13   relevant in terms of using that as, I guess, one way
14   of describing as a course of effort of getting
15   OmniScan to be used together with their individual
16   scanners that are either sold or updated. And so
17   that is the basis upon which we believe there is
18   relevance.
19       THE COURT: Well, I fail to see at this
20   point, Bill, how that's -- if they're doing it,
21   they're doing it. The issue we're focusing on the
22   contrast agents, so, they may be trying the two
23   together. Maybe that is an antitrust problem, but I
24   don't see that is an important issue here.
25       MR. TISI: Your Honor, this is Chris Tisi

Page 24

1    again. If I could explain why that would be relevant
2    to the GBCA issue --
3        MS. SCHULMAN: Can I just --
4        THE COURT: There has not been enough
5    submitted. At this point I don't think it is
6    relevant. If you can make a showing down the road,
7    maybe so.
8        MR. TISI: Okay.
9        THE COURT: That's the problem of my
10   getting this stuff sort of on the fly. It's not in
11   the way I can make the kind of informed decision I'd
12   like to make. So, if I have to call it like a
13   90-mile fast ball, I will do so; and I haven't seen
14   the relevance.
15       All right. I think those are the decisions I'm
16   able to make at this point in time
17       MR. TISI: Your Honor, just one other
18   point. You mentioned some things that the defendants
19   have to provide on the fact sheet. We'll take all of
20   those into consideration. One of the things reported
21   to us, and I just wanted to make the Court aware,
22   particularly in a disease like this, it is often the
23   case that plaintiff's treating doctors will contact
24   the defendant to report an adverse event of the
25   particular plaintiff in a particular case. And in

Page 25

1    the context of those communications, they will
2    provide medical information, will provide opinions,
3    will ask questions; and one of the things that we
4    think we'll be entitled to in evaluating our case is
5    any information that the defendant has in their
6    possession relating to the specific plaintiffs in the
7    case. I assume that the Court would want them to
8    turn that over as well, if they have it.
9        MR. ISMAIL: I don't think we'll have a
10   problem agreeing to that.
11       THE COURT: What specifically is that?
12   I didn't quite follow it.
13       MR. TISI: In many cases, your Honor, a
14   doctor who is diagnosing a plaintiff with NSF, and
15   knows of the connection between NSF and contrast
16   agents will call the company and make a report of an
17   adverse event, and the context of that will provide
18   information, not only written information but verbal
19   information, will be back and forth between the
20   company and the doctor about the plaintiff and about
21   many various issues in the case. And we think we
22   should been entitled to that kind of information, as
23   part of --
24       THE COURT: That I think is covered in
25   what I said before; written or oral communication

7 (Pages 22 to 25)

CAROL D. HILL & ASSOCIATES
216-687-0005

4dcaa55a-6e8a-4bb0-8679-0401671c9139

Page 26

1  from the company to a specific doctor about the drug,
2  or from the doctor back to the company about a
3  specific patient. That's what we're talking about;
4  communication between Dr. Smith and Bayer, about
5  patient Jones and his or her condition. That should
6  be produced.
7          MR. TISI: Thank you very much, your
8  Honor.
9          THE COURT: All right.
10         MR. ISMAIL: Your Honor, there was one
11 other issue that the defendants wanted to raise in
12 the context of product identification. This is
13 Terrik Ismail on behalf of Bayer. One of the
14 concerns we had, your Honor, with respect to product
15 identification is twofold. One, obviously those
16 cases in which the plaintiffs named all manufacturers
17 without any regard to specificity of which product
18 was used. And we heard your guidance on that issue.
19     It is also our experience, because of the
20 generic nomenclature with which these products have
21 been referenced, that there have been mistakes in
22 plaintiffs who have pled a specific agent or
23 defendant in the complaint, but when we get further
24 down the line we realize that, in fact, it was a
25 different agent altogether that was named. And so as

Page 27

1  one of the provisos to your comment about product
2  I.D., even in those situations where a particular
3  product is alleged to have been used, if the
4  plaintiffs can provide the defendants with the basis
5  upon which that product I.D. is made in the
6  complaint, we don't have to go months down the line
7  in case-specific discovery, only to discover that the
8  wrong defendant has been participating in the case.
9      So, if the specific product allegations in the
10 complaint are made on the basis of medical records or
11 documentation, it should be a relatively easy trigger
12 for the plaintiffs to provide that, so we don't waste
13 time.
14         MR. TISI: Your Honor, this is Chris Tisi
15 again. As part of the plaintiffs' fact sheet, we
16 have provided them with all information on product
17 I.D. that we have in our possession. I don't think
18 there's any dispute about that.
19         THE COURT: That should be --
20         MR. TISI: And we certainly are willing
21 to do that.
22     Obviously, in those cases where the defendants
23 have to provide a fact sheet, if they are aware they
24 have, indeed, provided their product to the
25 institution where the plaintiff received their GBCA,

Page 28

1  they should be as forthcoming as well; so that we
2  have removed that issue from the case.
3          MR. ISMAIL: But the point is that the
4  defendants aren't doing case-specific discovery in
5  cases in which they are not properly named. So I am
6  stating what you said correctly, that the plaintiff's
7  fact sheet will have that appropriate product I.D. --
8          MR. TISI: Yes.
9          MR. ISMAIL: -- with materials, that
10 would be the trigger for case-specific information
11 from us? Then I don't think we need --
12         THE COURT: I think it should be in the
13 fact sheet.
14         MR. TISI: It is, your Honor.
15         THE COURT: The basis. Okay.
16         MR. ISMAIL: Then we're fine then.
17         THE COURT: All right. Well, unless
18 anyone else has anything critical, I think we have
19 covered it.
20         MR. TISI: When can we have information
21 about the various sales databases from the
22 defendants, so we can finalize our proposal on the
23 fact sheets? Is there a time frame we can get that
24 information?
25         THE COURT: I guess when can each of the

Page 29

1  -- we have four or five defendants. When can they
2  advise everyone if they have a database? Ten days?
3          MS. SCHULMAN: Your Honor, I thought what
4  you wanted was for us to do was sort out whether we
5  had some, and then we would look at it and reassess
6  the issue, the complexity and given -- you know, at
7  least --
8          THE COURT: Well, if you don't have a
9  database, I'm not going to order it produced now, so
10 that takes care of it.
11         MS. SCHULMAN: And if we -- assume we did
12 do it, I think there is still a discussion to be had
13 about the issue of the requirement of producing it,
14 in light of, at least, our view; that as Bayer's
15 counsel states, this is in part an effort to find
16 extraneous documents related to sales reps and not
17 actually focus on the court issues that are in this
18 litigation.
19         THE COURT: I'm inclined to order it
20 produced, if there is a database. I've already said
21 if there is not, I'm not going to order it produced,
22 at this point.
23     Why don't you, within ten days, advise
24 everyone if there are databases.
25         MR. TISI: Thanks, your Honor, I

8 (Pages 26 to 29)

4dcaa55a-6e8a-4bb0-8679-0401671c9139

Page 30

1   appreciate it.
2          THE COURT: Okay.
3          MS. HUGHES: It appears to me right now
4   we have two different proposed case management
5   orders. They're very different. It appears what the
6   Judge has decided to do was follow basically the
7   plaintiffs' case management order with some changes
8   to it; but should we expect the parties to come up
9   with a joint proposed case management order at this
10  point?
11         MS. SCHULMAN: Yes.
12         THE COURT: Yes. I have given some
13  instructions and guidance; and I will expect
14  something should be submitted, and I'll issue it.
15         MR. TISI: Thank you, your Honor. We
16  will work toward that end, now that we have your
17  guidance --
18         THE COURT: Okay. Well, thank you
19  everyone; and I guess our next meeting is --
20         MR. BRODHEAD: June 4th, your Honor.
21         THE COURT: Right. Thank you, Peter. At
22  9:00 a.m. On Wednesday, June 4th at 9:00 a.m
23         MS. HUGHES: And 9:30 for all the
24  attorneys.
25         MR. TISI: Thank you, your Honor --

Page 31

1          THE COURT: Okay.
2          MR. TISI: -- it was a pleasure working
3   with you.
4          (Telephonic conference concluded at 3:45 p.m.)
5
6
7          C E R T I F I C A T E
8
           I certify that the foregoing is a correct
9
    transcript from the record of proceedings in the
10
    above-entitled matter.
11
12
    s/Carol D. Hill, RPR          5/15/08
13  _____    _____
    Carol D. Hill, R.P.R.          Date
14  Carol D. Hill & Associates
    55 Public Square, Suite 935
15  Cleveland, OH 44113
    216-687-0005
16
17
18
19
20
21
22
23
24
25

CAROL D. HILL & ASSOCIATES
216-687-0005

4dcaa55a-6e8a-4bb0-8679-0401671c9139

# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ) | Case No. 1:08-gd-50000 |
| In re: GADOLINIUM-BASED ) | |
| CONTRAST AGENTS PRODUCTS ) | |
| LIABILITY LITIGATION ) | Judge Dan Aaron Polster |
| (MDL No. 1909) ) | |
| ------------------------------------------------- ) | |
| THIS DOCUMENT IS APPLICABLE TO: ) | |
| ) | |
| ALL CASES ) | |

## CASE MANAGEMENT ORDER NO. 2
### (Establishing Plaintiffs' Steering Committee)

**IT IS HEREBY ORDERED THAT:**

1.       Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the above-captioned actions, and any subsequently filed or transferred actions related to the claims asserted in these cases, are hereby coordinated for all pretrial purposes.  This action shall be captioned "*In re Gadolinium Based Contrast Agents Products Liability Litigation,*" and the file shall be maintained under Master File No. MDL No. 1909.

2.       This Order, and any additional case management orders entered in this litigation, shall govern each case coordinated in MDL No. 1909.

3.       Peter W. Burg of the law firm of Burg Simpson Eldredge Hersh & Jardine and Troy Rafferty of Levin Papantonio Thomas Mitchell Eschner & Proctor shall serve as Co-Chairs of the PSC and Executive Committee.  Peter J. Brodhead of the law firm Spangenberg, Shibley & Liber shall serve as Plaintiffs' Liaison Counsel.

    4.      This Court hereby appoints a Plaintiffs' Executive Committee ("PEC") which

shall consist of the following attorneys:

Peter W.  Burg, Co-Chair
Burg Simpson Eldredge Hersh Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Tel: (303) 792-5595
Fax: (303) 708-0527
pburg@burgsimpson.com

Peter J. Brodhead, Plaintiffs' Liaison Counsel
Spangenberg, Shibley & Liber, LLP
1900 East Ninth Street, Suite 2400
Cleveland, OH 44114
Tel: (216)696-3232
Fax: (216) 696-3924
pbrodhead@spanglaw.com

Steve Skikos
Skikos, Crawford, Skikos, Joseph & Millican
LLP
625 Market Street, 11th Floor
San Francisco, CA  94105
Tel: (415) 956-5257
Fax: (415) 956-4416
sskikos@lopez-hodes.com

Troy Rafferty, Co-Chair
Levin Papantonio Thomas Mitchell Eschner &
Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
trafferty@levinlaw.com

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, New York 10004
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

    5.      This Court hereby appoints a Plaintiffs' Steering Committee ("PSC") which shall

consist of the following attorneys:

Peter W.  Burg, Co-Chair
Burg Simpson Eldredge Hersh Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Tel: (303) 792-5595
Fax: (303) 708-0527
pburg@burgsimpson.com

Troy Rafferty, Co-Chair
Levin Papantonio Thomas Mitchell Eschner &
Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
trafferty@levinlaw.com

Peter J. Brodhead, Plaintiffs' Liaison Counsel
Spangenberg, Shibley & Liber, LLP
1900 East Ninth Street, Suite 2400
Cleveland, OH 44114
Tel: (216)696-3232
Fax: (216) 696-3924
pbrodhead@spanglaw.com

Steve Skikos
Skikos, Crawford, Skikos, Joseph & Millican
625 Market Street, 11th Floor
San Francisco, CA 94105
Tel: (415) 956-5257
Fax: (415) 956-4416
sskikos@lopez-hodes.com

Howard Nations
Law Offices of Howard Nations
4515 Yoakum Blvd.
Houston, TX 77006
Tel: (713) 807-8400
Fax: (713) 807-8423
nations@howardnations.com

Roger Denton
Schlichter Bogart & Denton
100 South 4th Street, Suite 900
St. Louis, MO 63102
Tel: (314) 621-6115
Fax: (314) 621-7151
rdenton@uselaws.com

Mark Robinson, Jr.
Robinson Calcagnie & Robinson Inc.
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Tel: (949) 720-1288
Fax: (949) 720-1292
mrobinson@rcrlaw.net

Jerrold Parker
Parker Waichman Alonso LLP
27399 Riverview Center Blvd., Suite 106
Bonita Springs, FL 34134
Tel: (239) 390-1000
Fax: (239) 390-0055
jparker@yourlawyer.com

Christopher A. Seeger
Seeger Weiss LLP
One William Street
New York, New York 10004
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Michelle Parfitt
Ashcraft & Gerel
2000 L Street, N.W., Suite 400
Washington, D.C.20036
Tel: (202) 783-6400
Fax: (202) 416-6392
mparf@aol.com

Russ Briggs
Fibich, Hampton, Leebron & Garth
Five Houston Center
1401 McKinney, Suite 1800
Houston, TX 77010
Tel: (713) 751-0025
Fax: (713) 751-0030
rbriggs@fhl-law.com

Barry Hill
Hill Williams
89 12th Street,
Wheeling, WV 26003
Tel: (304) 233-4966
Fax: (304) 233-4969
bhill@hwlaw.us

Tobias Milrood
Pogust Braslow & Millrood, LLC
8 Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Tel: (610) 941-4204
Fax: (610) 941-4245
tmillrood@pbmattorneys.com

Jayne Conroy
Hanly Conroy Bierstein Sheridan Fisher &
Hayes LLP
112 Madison Avenue
New York, NY  10016
Tel: (212) 784-6402
Fax: (212) 784-6420
jconroy@hanlyconroy.com

Ramon Rossi Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Tel: (949) 737-1501
Fax: (949) 737-1504
rlopez@lopezmchugh.com

Larry Gornick
Levin Simes Kaiser & Gornick LLP
44 Montgomery Street, 36th floor
San Francisco, CA 94104
Tel: (800) 901-4001
Fax: (415) 981-1270
lgornick@lskg-law.com

6.      This Court hereby appoints the following attorneys as Federal-State Court Liaison
to the PSC:

David R. Buchanan
Seeger Weiss LLP
One William Street
New York, NY  10004
Tel:  (212) 584-0700
Fax:  (212) 584-0799
dbuchanan@seegerweiss.com

Tor Hoermann
Simmons Cooper LLC
707 Berkshire Blvd.
East Alton, IL  62024
Tel:  (618) 259-2222
Fax:  (618) 259-2251
thoerman@simmonscooper.com

Ramon Rossi Lopez
Lopez McHugh LLP
100 Bayview circle, Suite 5600
Newport Beach, CA  92660
Tel:  (949) 737-1501
Fax:  (949) 737-1504
rlopez@lopezmchugh.com

7.      Responsibilities of  the PSC include:

1.      Discovery

(a)      Initiate, coordinate, and conduct all pretrial discovery on behalf of all
Plaintiffs who file civil actions in this Court or that are transferred to this Court pursuant to 28

U.S.C. § 1407, which contain any cause of action relating to a Gadolinium Contrast Dye, whether on an individual or class action basis;

(b) Develop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all Plaintiffs;

(c) Cause to be issued in the name of all Plaintiffs the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation. Similar requests, notices, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims; and

(d) Conduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all Plaintiffs including appointing lawyers to conduct depositions.

2. <u>Hearings and Meetings</u>

(a) Call meetings of counsel for Plaintiffs for any appropriate purpose, including coordinated responses to questions of other parties or of the Court;

(b) Initiate proposals, suggestions, schedules, or joint briefs, and for any other appropriate matter(s) pertaining to pretrial proceedings;

(c) The PSC or lawyers designated by them shall examine witnesses and introduce evidence at hearings on behalf of Plaintiffs; and

(d) The PSC or lawyers designated by the PSC shall act as spokesperson for all Plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any Plaintiffs counsel to present non-repetitive individual or different positions as permitted by the Court.

3.     Miscellaneous

(a)     All communications by Plaintiffs with the Court should be through the Co-Chairs of the PEC or Plaintiffs' Liaison Counsel.  If circumstances require direct correspondence with the Court by any individual counsel, copies of any said communications shall be served using the Court's electronic filing sytem;

(b)     The PSC or lawyers designated by them shall submit and argue any verbal or written motions presented to the Court or on behalf of the PSC and all Plaintiffs as well as oppose when necessary any motions submitted by the Defendant or other parties that involve matters within the sphere of the responsibilities of the PSC (this provision does not apply to motions specifically directed to individual plaintiffs and their counsel);

(c)     The PSC or lawyers designated by them shall negotiate and enter into stipulations with Defendants' Lead and Liaison Counsel  regarding this litigation;

(d)     The PSC or lawyers designated by them are authorized to explore, develop, pursue, and recommend settlement options pertaining to any claim or portion thereof of any case filed in this litigation;

(e)     The PEC and PSC shall establish committees to enable the orderly and efficient prosecution of these actions;

(f)     The PSC or lawyers designated by them shall maintain adequate files of all pretrial matters and have them available, under reasonable terms and conditions, for examination by Plaintiffs or their attorneys;

(g)     The PEC and PSC are authorized to call meetings of plaintiffs' counsel when appropriate and to consult with plaintiffs' counsel on matters of common concern;

(h)     The PSC or lawyers designated by them shall perform any tasks necessary

and proper for the PSC to accomplish its responsibilities as defined by the Court's orders;

(i)     The PSC or lawyers designated by them shall perform such other functions as may be expressly authorized by further orders of this Court; and

(j)     Except as to matters relevant only to a specific case, counsel that represent a plaintiff or plaintiffs who wish to initiate discovery or file motions must first seek authorization from the PEC to initiate such motions or discovery.  If such authorization is granted, counsel that wishes to initiate discovery or file motions must provide written notification of such authorization within said discovery or motion papers. If after reasonable consultation with the PEC and for good cause, such counsel disagrees with the PEC's determination, then counsel may petition the Court for relief to initiate such discovery or motions.

(k)     The PSC or lawyers designated by them shall create a method for reimbursement for costs and/or fees for services will be set at a time and in a manner established by subsequent order of the Court.

8.      In addition to serving on the PSC, the responsibilities of Plaintiffs' Liaison Counsel shall include:

(a)     To receive and distribute to plaintiffs' counsel, as appropriate, orders, notices and correspondence from the Court;

(b)     To coordinate the filing of notices and papers by members of the PEC, PSC and all plaintiffs' counsel, including the designation of responsibilities to encourage the filing of a single set of papers by counsel in situations where such group members have a common position;

(c)     To maintain and distribute to the Court, to counsel for plaintiffs, and to counsel for defendants an up-to-date comprehensive Service List of all plaintiffs' counsel;

(d)     To make himself available for any telephone conferences convened by the Court and to communicate the substance of any such telephone conference to all other Plaintiffs' counsel;

(e)     To receive and distribute pleadings, Orders, and motions to Plaintiffs' counsel by overnight courier service or telecopier within three business days after receipt, unless such service has been waived, in writing, by a receiving counsel;

(f)     To maintain and make available to all Plaintiffs' counsel of record at reasonable hours a complete file of all documents served by or upon each party;

(g)     To carry out such other duties as the Court may Order; and

(h)     Liaison Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court.

SO ORDERED:


DATED: March 24th , 2008

 /s/Dan Aaron Polster
HONORABLE DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on September 9, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the Court, via first class mail for those who do not have identified email addresses on the CM/ECF case filing system and the below referenced attorneys not referenced on the CM/ECF service list:

               /s/ James Ronca      

Vincent J. Moccio
Genevieve M. Zimmerman
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612)-349-8500

Caleb L H Marker
Ridout & Lyon LLP
555 East Ocean Boulevard Suite 500
Long Beach, CA 90802
562-216-7380
Email: c.marker@ridoutlyonlaw.com

Ari Kresch
Kresch Oliver
Suite 100
24100 Southfield Road
Southfield, MI 48075
248-327-6556
Email: akresch@1800lawfirm.com

Alyson Oliver
KRESCH OLIVER PLLC
24100 Southfield Road
Southfield, MI 48075

Andrew L Davick
Anthony J Nemo
Meshbesher & Spence, Ltd

1616 Park Ave S
Mpls, MN 55404
612-339-9121
Fax: 612-339-9188
Email: adavick@meshbesher.com
Email: tnemo@meshbesher.com

Chad A. Dudley
Dudley DeBosier
1075 Government St.
Baton Rouge, LA 70809
225-379-3333
Email: cdudley@dudleydebosier.com

Daniel Christopher Burke
Parker Waichman Alonso LLP
6 Harbor Park Drive
Port Washington, NY 11050
Email: dburke@yourlawyer.com

Douglas Robert Plymale
Plymale Law Firm
One Canal Place
365 Canal St.
Suite 1000
New Orleans, LA 70130
504-355-0092
Email: dplymale@dugan-lawfirm.com

Douglas A. Kreis
Aylstock, Witkin, Kreis & Overholtz, Pllc
17 East Main Street
Suite 200
Pensacola, FL 32502
(850) 202- 1010
Fax- (850) 916- 7449
Email: dkreis@awkolaw.com

Herbert Orlandah Phillips, IV
Mcguire Wood & Bissette

48 Patton Ave
Asheville, NC 28802
(828)- 254-8800
Email: hphillips@mwbavl.com

John Jeremy Mahoney
Mahoney & Mahoney
P.O. Box 335
Center, ND 58530
701-794-8769
Email: jmahoney@westriv.com

Jon C. Peeler
The Norman Law Building
213 Third Avenue, N
Nashville, TN 37201
(615)- 250- 8000
Fax: (615)- 250-8073
Email: jonpeeler@aol.com

Joseph A. Osborne, Esquire
Babbitt, Johnson, Osborne & LeClainche, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Email: Jaosborne@babbitt-johnson.com

Kevin Patrick Weird
Goldberg & Simpson, LLM
9301 Dayflower Street
Louisville, KY 40059
502-589-4440
Fax: 502-581-1344

Michael A. London
Douglas & London
111 John Street, 8th floor
New York, NY 10038
Email: mlondon@douglasandlondon.com

Paul J Pennock

WEITZ & LUXENBERG PC
700 Broadway
New York, NY 10003
(212)-558- 5504
Fax: (212)- 363-2721
Email: PPennock@weitzlux.com

Richard J. Arsenault, Esquire
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309
Email: rarsenault@nbalawfirm.com

Jason J. Thompson
Sommers Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
248-355-0300
jthompson@sommerspc.com

Sheila M. Bossier
1520 N. State Street
Jackson, MS 39202
601-352-5450
Fax: 601-352-5452
sbossier@bossier-law.com

Stacy K. Hauer, Esq.
Johnson Becker, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Email: shauer@johnsonbecker.com

Mark E. Gebauer
Ecker Seamans Cherin & Mellott, LLC
213 Market Street
Eighth Floor
Harrisburg, PA 17101
717-237-6052

Fax: 717-237-6019
Email: mgebauer@eckertseamans.com

Kurt Edward Stitcher
Baker & Daniels LLP
311 S. Wacker Drive
#4400
Chicago, IL 60606
312-212-6500
Email: kurt.stitcher@bakerd.com