**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

-------------------------------------------------------

IN RE: ZIMMER NEXGEN KNEE     )
IMPLANT PRODUCTS LIABILITY    )     **MDL No. 2272**
LITIGATION                     )
                                   )     **Master Docket Case No. 1:11-cv-05468**
                                   )
                                   )
                                   )
                                   )
-------------------------------------------------------
**This Document Relates to All Cases**
-------------------------------------------------------

**PLAINTIFFS' BRIEF REGARDING THE**
**CONTESTED ITEMS WITHIN CASE MANAGEMENT ORDER NO. 1 (CMO1)**

## I.     INTRODUCTION AND BACKGROUND

Both Plaintiffs and Defendants agree upon entry of a Case Management Order number one (CMO1) to facilitate the orderly and efficient management of MDL 2272. Plaintiffs first proposed entry of CMO1 (Doc. 40) on September 9, 2011. Prior to, and since that time, the parties' respective lead counsel have conferred in an effort to reach an agreed upon CMO1. The parties have largely reached agreement. This brief outlines the Plaintiffs' positions on the remaining areas of disagreement. In short, CMO1 should have been agreed upon in full. The remaining areas of disagreement include challenges by Zimmer that can only frustrate the efficiency of this MDL, increase delay to the parties, and will burden not just this Court's management of the litigation, but numerous federal courts that would be burdened by Zimmer's  proposed procedures.  Finally, Zimmer takes the highly unusual and frankly, brazen

position to suggest that members of the Plaintiffs' Steering Committee cannot maintain a joint work product privilege of communication. Not only is this position unheard of in a mass tort MDL, but it runs directly counter to the directives of the Manual for Complex Litigation, Fourth. For these reasons and the reasons set forth below, Plaintiffs' respectfully request that this Court enter CMO1 in the proposed form attached.[1]

At this juncture, the relative agreements and disagreements can be expressed as follows:

| Agreed Upon | Disagreed in Full | Limited Disagreement |
|---|---|---|
| ¶1. Scope of this Order | | |
| ¶2. Filing Instructions | | |
| | ¶3. Entry of Appearance | |
| | ¶4. Direct Filing | |
| ¶5. Service | | |
| ¶6.1, 6.3, 6.4, 6.5, 6.6 Organization of Plaintiffs Counsel | | |
| | | ¶7. Compensation of Time and Expense Records |
| ¶8. Organization of Defense Counsel | | |
| ¶9.1, 9.3 Hearings | | ¶9.2 Hearings |
| ¶10. Pending Motions and Orders | | |
| ¶11.2, 11.3, 11.4 Discovery Motions | | ¶11.1 Discovery Motions |
| ¶12.1 Communication with the Court | ¶12.2 Communication among the parties | |

---

[1] The Proposed Form of Order for CMO1, as requested by Plaintiffs, is attached as Exhibit 1.

## II.    AREAS OF COMPLETE DISAGREEMENT

### A.    ¶3. Entries of Appearance: Both the MDL Panel Rules and the Customary Procedure of Mass Tort MDLs Allow for a Single Entry of Appearance in the Originating Federal Court

Although Zimmer agrees with Plaintiffs on the customary MDL procedure that the local rule requirements for *pro hac vi*ce should be waived in this MDL[2], Zimmer nevertheless rejects the long line of custom in MDLs that an additional entry of appearance be filed, after the case is transferred into the MDL. Such requirement not only runs counter to traditional MDL practice, it invites numerous unnecessary burdens to both the practicing lawyers in this MDL and the Court as well. First, it is the rule, rather than the exception that in product liability MDLs such as this, once counsel enter an appearance in a transferor court, he/she need not enter another appearance upon transfer. *See, e.g.,* MDL 1355: *In re: Propulsid Products Liability Litigation* (Dkt. No. 2); MDL 1507: *In re: Prempro Products Liability Litigation* (Dkt. No. 15); MDL 1626: *In re: Accutane Products Liability Litigation* (Dkt. No 2); MDL 1657: *In re: Vioxx Products Liability Litigation* (PTO 1); MDL 1736: *In re: Celexa and Lexapro Products Liability Litigation* (Dkt. No. 23); MDL 1742: *In re: Ortho Evra Products Liability Litigation* (Dkt No. 6); MDL 1769: *In re: Seroquel Products Liability Litigation* (Dkt. No. 4); MDL 1842: *In re: Kugel Mesh Hernia Patch Products Liability Litigation* (Dkt. No. 2); MDL 1871: *In re: Avandia Marketing, Sales Practices and Products Liability Litigation* (CMO 1); MDL 1943: *In re: Levaquin Products Liability Litigation* (Dkt. No. 50), MDL 1964 *In re: Digitek Products Liability Litigation* (Dkt. No. 2); MDL 1968: *In re: Nuvaring Products Liability Litigation* (Dkt. No. 7); MDL 2187: *In re: Avaulta Pelvic Support Systems Products Liability Litigation* (Dkt. No. 2); MDL 2197: *In re: DePuy Orthopaedics, Inc. ASR Hip Implant*

---

[2] See both parties' suggested language in ¶3.1 of the Jointly Filed Proposed CMO1.

3

*Products Litigation* (CMO 1); and MDL 2244: *In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation* (Dkt. No. 20).[3]

It is not a coincidence that MDL courts are relieving the burden of an additional entry of appearance, beyond that which was filed in the transferor court. For one, the requirement is superfluous. When a case is transferred to the MDL, it is the Complaint that is transferred. It is that Complaint which includes the entries of appearance of counsel. The information about that counsel is therefore available to both the defendants and this Court. Second, such a requirement would create undue burden. If a thousand cases are filed in this MDL, and if form holds and the Plaintiff is represented by more than one firm and more than one attorney within each firm, then foreseeably, the docket will be burdened by thousands of entries of appearance, for no logical reason. Finally, the JPML rules themselves anticipate the easing of the burden. Rule 2.1 of the JPML Panel Rules states: "Any attorney of record in any action transferred under Section 1407 may continue to represent his or her client in any district court of the United States to which such action is transferred." Accordingly, this Court should follow the practice of the many recent MDL courts before it and not require additional entry of appearance beyond that filed in the transferor court.

**B.      ¶4. Direct Filing of Complaints into this MDL is the Best Method to Avoid Delay and Ease the Burden on Federal District Courts and the JPML**

There are generally two recognized methods for a case falling within the jurisdiction of the pre-trial consolidation procedures of an MDL: 1) the long way – filing in an original federal district court, followed by tag-along notice to the JPML, followed by conditional transfer order, followed by briefing on conditional transfer order, followed by final transfer into this MDL; or

---

[3] The respective orders providing for no requirement of additionally entry of appearance if there was an entry of appearance in the transferor court, are attached hereto as Exhibit 2.

2) the short way – direct filing into the MDL.  For perplexing reasons that ignore its ulterior

motives of delay, burden and defeat, Zimmer wants to insist on the long way.  But the long

way burdens the parties, the federal court system and the JPML and the short way still affords

Zimmer to ask this court to reject or remand any case that it believes does not fall within the

JPML transfer directive.  Importantly, Zimmer's long way approach ignores the trend of recent

MDL courts that are clearly recognizing the efficiencies gained through direct filing and are

including such a procedure in early CMOs. *See*, *e.g.,*  MDL 1657: In re: Vioxx Products

Liability Litigation (Dkt. No. 360); MDL 1724: *In re: Viagra Products Liability Litigation*

(Dkt. No. 42); MDL 1943: *In re: Levaquin Products Liability Litigation* (Dkt. No. 50); MDL

1968: *In re: Digitek Products Liability Litigation* (PTO 19);  MDL 2092: *In re: Chantix*

*(Varenicline) Products Liability Litigation* (Dkt. No. 12); MDL 2197: *In re: DePuy*

*Orthopaedics, Inc. ASR Hip Implant Products* (Dkt. No. 23); MDL 2244: *In re: DePuy*

*Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation* (Dkt. No. 20).[4]

There is no downside to direct filing. In fact, there are advantages. Zimmer will be able to

gather product identification earlier. The Court can ascertain immediately of the propriety of

the case before the Court.  But more importantly, direct filing avoids the downsides to the

alternative, traditional method.  If Zimmer's approach is endorsed, there will be scores of

district courts around the country that have to open up a docket and file, however temporarily

or lengthy, for a case that will inevitably make its way to this MDL. Moreover, after that

district court opens its file, one of the parties must then file a tag-along notice, the JPML must

issue a conditional transfer order, the parties could very well have to engage in additional

briefing, and, if Zimmer challenges a case that properly belongs in this MDL, the JPML must

---

[4] The respective orders allowing for direct filing in these MDL litigations are attached as
Exhibit 3.

undertake another round of review. It is plainly a waste of judicial economy. Zimmer's

concerns that a case could be directly filed into this MDL that does not belong here can be

allayed in three ways: first, the JPML has outlined the cases that appropriately belong in this

MDL; second, the JPML transfer order specifically indicated that the "the transferee judge may

conclude that …dissimilar…actions should be remanded…" *See*, JPML Transfer Order of

MDL 2272, Aug. 8, 2011; and third, this Court does maintain the authority and jurisdiction to

remand a case that it is improperly filed, outside the scope of the JPML transfer order and the

subject matter that develops in this MDL. Direct filing conserves judicial economy and

promotes efficiency for all parties involved. There is no legitimate reason for it to be excluded

from CMO1.

**C.     ¶12.2 To Effectively and Efficiently Prosecute the Plaintiffs' Claims, the PSC Must Have the Unfettered Right and Discretion to Communicate with Each Other and Share Work Product**

Zimmer has once again stretched the envelope to unprecedented proportions with its

suggestion that the PSC should not be able to have full opportunity to communicate with each

other and share work product in their prosecution of claims that fall within the scope of the

JPML order. Zimmer's objection is again a veiled attempt to undo the order of the JPML and

convince this Court – against the clear directive of the JPML – that the litigation before

involves dissimilar products. Because of the unequivocal language of the MCL, 4th that

confers a work product privilege to the PSC, and because of the long line of MDL case

management orders that follow suit, this Court should reject Zimmer's outlier and unsupported

approach.

Co-lead, Liaison and PSC members are designated by the court to act on behalf of other

counsel and parties in addition to their own clients. Thus the same attorney-client privilege

that would apply in a traditional case must exist between counsel who are charged with serving

multiple interests including the interests of other attorney's clients. The Manual for Complex

Litigation, 4th, to which Zimmer advocates that the Court and the parties follow[5], states

unequivocally: "***Communication among the various allied counsel and their respective***

***clients should not be treated as waiving work-product protection or the attorney–client***

***privilege, and a specific court order on this point may be helpful***." MCL 4th, §10.222.

(emphasis added). The MCL 4th underscores the need for unfettered communications amongst

the PSC: "To avoid controversy over the interpretation of the terms of the court's appointment

order, designated counsel should seek consensus among the attorneys (and any unrepresented

parties) when making decisions that may have a critical impact on the litigation. *Id.* Perhaps

most tellingly, the MCL 4th offers a sample order to guide courts presiding over and MDL like

this and the language is plain and unequivocal, and virtually matches the suggested language of

Plaintiffs' Proposed CMO1:

> *Privileges Preserved.* No communication among plaintiffs' counsel or among
> defendants' counsel shall be taken as a waiver of any privilege or protection to which they
> would otherwise be entitled.

MCL 4th, §40.22, para. 5. The approach of the MCL 4th is the one that is standard in MDL

litigations, including other MDL litigation involving Zimmer orthopedic products. *See, e.g.,*

MDL 2158: *In re: Zimmer Durom Hip Cup Products Liability Litigation* (Dkt. No. 17); MDL

1355: *In re: Propulsid Products Liability Litigation* (Dkt. No. 2); MDL 1531: *In re: Baycol*

*Products Liability Litigation* (PTO 3 & 4); MDL 1657: *In re: Vioxx Products Liability*

*Litigation* (PTO 1); MDL 1708: *In re: Guidant Corp. Implantable Defibrillators Products*

*Liability Litigation* (Dkt. No. 11); MDL 1742: *In re: Ortho Evra Products Liability Litigation*

---

[5] See agreed upon ¶1.3 of Jointly Submitted Proposed CMO1.

(Dkt. No. 6); MDL 1842: *In re: Kugel Mesh Hernia Patch Products Liability Litigation* (Practices and Procedures Order 2); MDl 1871*: In re: Avandia Marketing, Sales Practices and Products Liability Litigation* (CMO 1); MDL 1905: *In re: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation* (PTO 4); MDL 1943: *In re: Levaquin Products Liability Litigation* (Dkt. No. 50); MDL 2051: *In re: Denture Cream Products Liability Litigation* (Dkt. No. 45), MDL 2092: *In re: Chantix (Varenicline) Products Liability Litigation* (Dkt. No. 11); MDL 2197: *In re DePuy Orthopaedics, Inc. ASR Hip Implant Products* (CMO 1); MDL 2244: *In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation* (Dkt. No. 20).[6]

Zimmer is unable to point to a legitimate concern where communication amongst the PSC and Plaintiffs would be unprotected. For one, this Court will be entering a protective order shortly which will govern the parties regarding confidentiality pertaining to documents and disclosed materials. Secondly, and related, this Court's power to compel or otherwise sanction attorneys for violation of that confidentiality is sufficient. But perhaps most importantly is the utter chaos that would result from the artificial walls intimated by Zimmer.

The practical result of Zimmer's suggested language is that it proposes to limit a lawyer from being involved with any information concerning a device for which he represents no client. Thus, according to Zimmer's proposal, a lawyer with all LPS Flex cases may not be involved with any information concerning CR-Flex cases. This proposal yields results which are not only absurd but may also rise to the level of due process violation. For example, if the PSC cannot share work product information among each other, these absurdities would ensue:

---

[6] See referenced orders, regarding the attorney and work-product privilege, attached as Exhibit 4.

- A lawyer reviewing documents concerning the LPS Flex device is, under defendant's proposal, not permitted to see any document containing information about CR Flex. There will be many, many documents that contain references to both. Even the package insert for the LPS flex contains a reference to the CR-Flex device.[7]

  - It is virtually impossible to segregate the documents in a fashion sufficient to prevent an LPS lawyer from seeing CR information. For example, Zimmer designated the same person, Stephen McKelvey, as the FDA contact person for its 510k Summary of Safety and Effectiveness for both the LPS Flex and the Gender Solution femoral companant which has as it's predicate devices both the LPS and CR Flex compaonents. The same is true of Brandon Hipsher who is the Zimmer contact person for the Gender Solutions Natual Knee Flex and the NexGen CR Flex GSF femoral component
  - Defendant would have to produce separate sets of documents that redact CR information from the LPS documents they produce, and that redact LPS information from the CR documents they produce, and that have no redactions for those lawyers, including lead counsel, who are entitled to see all documents

- A lawyer deposing a witness from Defendant would only be able to ask questions concerning documents about the LPS device; a separate lawyer would have to ask questions about documents discussing the CR-Flex device, and a third lawyer would ask questions about documents containing information on both

- A lawyer preparing for depositions in a Gender Soluions case would not be able to look at documents for the "predicate " devices, the CR Flex and the LPS Flex, which Zimmer described as "identical" except for modifications to address specific anatomic features typical of a female patient.  It is very clear in this case that each succeeding device presented to the FDA was based upon design and research of the pre-existing predicate devices. It would be impossible to ask intelligent questions without knowledge of all the previous devices,  upon which the device at issue was based.

- A lawyer deposing a third party witness who is limited to only an LPS device would find it impossible to take a complete deposition. For example, the LPS-Flex Legacy knee brochure which is, presumably, created by the public

---

[7] See p.3 of the LPS-Flex product insert, attached as Exhibit 5.

relations company defendant retains for such purposes, states that these devices are "compatible with CR/CS or PS philosophies…[8]" Such a lawyer cannot make a full and complete inquiry. Third party depositions, therefore, would require a lawyer with an LPS device, and a separate lawyer with a CR Flex device, and then a third lawyer who has both devices. This would apply to a multitude of third party witnesses, including any public relations and marketing firms, clinical trial doctors, and even Drs. Berger and dela Valle.

Zimmer's plan is unprecedented, unworkable and uncalled for. Plaintiffs should be afforded the protection of the work product privilege as called for by the Manual.

## III.   AREAS OF PARTIAL DISAGREEMENT

### A.   ¶7.  The PSC Should Not be Required to Reveal Work Product and Strategy by Filing Publicly Common Benefit Records on Time and Expense

Zimmer's attempted insertion of a requirement that the submission of PSC time records and costs be "public," is no more than a back-door attempt to unearth Plaintiffs' work product and strategy. This sly attempt should be rejected.  Plaintiffs' contemporaneous recording of common benefit time and costs necessarily requires the recording of work product and strategy.  There is no reason that defendants should be entitled to that information, any more than defendants should have to produce evidence of their time and justification for their expenses.  Moreover, there is no support for it in the Manual for Complex Litigation.  In fact, to the contrary, the Manual contemplates that the records are not to be filed publicly and instead, are to be filed under seal. The form order, as recommended within the Manual states, with regard to the filing of time and expense records:

---

[8] See p.6 of the LPS-Flex product brochure, attached as Exhibit 6.

10

2.     *Filing*.

 By the fifteenth day of each month, each firm that may seek an award (or
approval) of a fee by the court shall file [***under seal with the clerk***] [with lead
counsel or a budget/record/compensation committee established by lead counsel
and the court] a report summarizing, according to each separate activity, the time
and expenses spent by its members or associates during the preceding month (and
the ordinary billing rates of such attorneys in effect during the month) and the
accumulated total of the firm's time, hourly rates, and expenses to date. [***Lead
Counsel shall file under seal with the clerk*** by the last day of the month a report
summarizing, for all participating counsel, such time and expenses reports, arranged
according to the particular activities.]

MCL 4th, §40.23 (emphasis added).  Of note, there is no mention at all of public filing

of the records. To the contrary, the only methods suggested are that the records be maintained

by lead counsel or filed *under seal*.

The reason for the Manual's suggested practice is clear.  When Plaintiffs complete

contemporaneous records, they are sufficiently detailed to ensure a future award. In creating

those detailed records, however, documentation is made of strategy and work product.

Plaintiffs consult with one another, consult with clients (even on common benefit matters),

consult with experts, share mental impressions and strategy during conference calls, just to

provide a brief list of the types of materials that should remain sacrosanct.  Are defense counsel

prepared to submit detailed time and expense records of their own, even when it reveals work

product? Of course not.

The Court can and should be satisfied that the work and expense is reasonable,

necessary and customary.  Displaying that for public view provides no benefit and serves no

purpose, other than for Defendants to peek into the strategy of Plaintiffs.  As such, the public

filing requirement should remain out of CMO1.

**B.    ¶9.2.  The Schedule of Regular Monthly Hearings, with the Option to Adjourn Them When They Are Unneccessary is Endorsed by the Manual for Complex Litigation and Advisable to Maintain the Efficiency of the MDL**

Experience in mass tort MDL litigation instructs that regularly scheduled monthly meetings are helpful and keep the parties and the Court on course in the litigation. In the months where the parties or the Court find them to be unnecessary, they can, of course be skipped.  For reasons that are unclear, Zimmer does not want to agree to monthly conferences. Rather, Zimmer suggests the more ambiguous "periodic conferences." Once again, however, if the parties are to be governed by the Manual for Complex Litigation, the Manual, in fact supports the Plaintiffs' suggested approach.  In fact, in the form orders that the Manual provides as a guide it reads:

4. Status Conferences

(a) *Regularly Scheduled Conferences*. The court will convene a status conference in this litigation every      [insert scheduled time]     , subject to the court's calendar. MCL 4th, §40.21, 4(a).

There are countless issues that come up month-to-month.  Establishing a routine schedule avoids the often challenging effort to herd the calendars of multiple lawyers.  Moreover, it gives the parties reasonable expectations to prepare and set out a long-term plan for when issues can be addressed with the Court.  Attempting to tackle the multitude of issues and put them before the Court on an ad hoc basis is not recommended in this type of MDL litigation. Accordingly, Plaintiffs request the suggested approach of the Manual and ask that the Court set monthly status conferences in this litigation.

**C.     ¶11.1. Meet and Confer Should be the Rule Prior to the Filing of All Motions, Not Just Discovery Motions**

It is again, a bit curious that Zimmer does not want to meet and confer on the filing of any motions other than discovery.  After all, not only is the meet and confer process recommended by the Manual for Complex Litigation, 4th, but more importantly, in practice, it helps to resolve disputes and conserve judicial economy and the costs and time of the parties. For these reasons, Plaintiffs' request that the CMO1 include a meet and confer obligation for the filing of motions.

Once again, the Manual in instructive in the recommended forms it offers for guidance on matters such as this:

8. *Motions*

(a) *Meet and Confer.*  To avoid unnecessary litigation concerning motions, including motions relating to discovery disputes, **counsel are directed to meet and confer before filing a motion. In any motion filed,** counsel for the moving party must certify that a good-faith effort was made to resolve the dispute.

MCL 4th, §40.52, 8(a) (emphasis added).

Consider this example: Plaintiff produces an expert report of a witness who originally opines that he will offer opinions on liability and causation.  After his deposition is taken, Defendants want to file a Daubert motion seeking to strike the liability opinions offered. And, in fact, Plaintiffs' strategy has changed such that they decide to limit their offer of proof on the expert witness to causation only.  Under Plaintiffs' proposal within CMO1, Defendants would confer with Plaintiffs and the Plaintiffs would agree not to offer the expert in the future on liability issues.  No Daubert motion has to be filed.  No hearing has to be held.  The Court's time is not taken up, the Plaintiffs' time is not taken up and Defendants save the money of preparing the motion.  Under Defendants' proposal, however, they would file the motion

without meet and confer, wasting the time and expense of preparing the motion, and now Plaintiffs would have to file a formal response, or the parties would have to struggle to find an agreed upon order to reflect the outcome of Defendants' motion.  In short, the Defendants' proposal leads to waste. Numerous examples, outside of discovery motions, abound, such as Rule 12 motions and Rule 56 motions.  There is no justifiable reason to avoid meet and confer other than for the element of surprise motions and not revealing one's hand.  But those type of ambush tactics should be avoided and frowned upon.  Accordingly, a meet and confer requirement for motions, as outlined in the Manual, should be adopted.

Dated: September 30, 2011

Respectfully submitted,

**POGUST BRASLOW & MILLROOD, LLC**

/s/  Tobias L. Millrood
Tobias L. Millrood, Esq.
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Phone: (610) 941-4204
Fax: (610) 941-4245
Email: tmillrood@pbmattorneys.com

James R. Ronca, Esq.
Anapol, Schwartz, Weiss, Cohan, Feldman &
Smalley, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 875-7700
Email: jronca@anapolschwartz.com

Timothy J. Becker, Esq.
Johnson Becker PLLC

33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 333-4662
Fax: (612) 339-8168
Email: tbecker@johnsonbecker.com

***Co-Lead Counsel for Plaintiffs***

Peter J. Flowers
Foote, Meyers, Mielke & Flowers
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Phone: (630) 232-6333
Fax: (630) 845-8982
Email: pjf@foote-meyers.com

***Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2011, I electronically filed *Plaintiffs' Brief Regarding the Contested Items Within Case Management Order No. 1 (CMO1)* and supporting documents with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

**POGUST BRASLOW & MILLROOD, LLC**

/s/Tobias L. Millrood
Tobias L. Millrood, Esquire
tmillrood@pbmattorneys.com
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile: (610) 941-4245

*Counsel for Plaintiff*