UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE:  ZIMMER NEXGEN KNEE | ) | MDL No. 2272 |
| IMPLANT PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | |
| This Document Relates To All Cases | ) | Honorable Rebecca Pallmeyer |

### THE ZIMMER ENTITIES' MEMORANDUM IN RESPONSE
### TO PLAINTIFFS' PROPOSED CASE MANAGEMENT ORDER

The Zimmer Entities[1] object to multiple paragraphs of the plaintiffs' recommendations for

the Proposed Case Management Order ("Proposed CMO"), including Paragraph 3.1, Paragraphs

4.1 – 4.5, Paragraph 7.1, Paragraph 9.2, Paragraph 11.1, and Paragraph 12.3.[2]

Plaintiffs' Paragraph 12.3 proposes a blanket and premature before-the-fact ruling that the

various plaintiffs' interests are so completely aligned that *all* communications outside their

attorney-client relationships should be privileged.  In addition, Paragraphs 3.1, 4.1 – 4.5, 7.1, 9.2,

and 11.1 fail to adhere to the Rules of Procedure of the Judicial Panel on Multidistrict Litigation

("JPML Rules"), the Federal Rules of Civil Procedure, the Local Rules for the Northern District

of Illinois, the Manual for Complex Litigation, 4th, and/or fail to provide fair procedures to the

litigants and their attorneys.  For these reasons, the Zimmer Entities respectfully request that the

---

[1]    Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Orthopaedic Surgical Products, Inc., Wilson/Phillips
Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-
State (incorrectly named as (1) Zimmer Tri-State, d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State,
d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State, d/b/a Tri-State Orthopedic), and K. Michael Melia,
d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.),
Zimmer Orthobiologics, Inc., Zimmer Surgical, Inc., and Zimmer US, Inc.

[2]    The parties submitted a Proposed Case Management Order that outlines their areas of disagreement.
In addition, the Zimmer Entities are attaching hereto as Exhibit A their proposed version of the Case
Management Order.

Court adopt the Zimmer Entities' proposed language, as stated in the Defendants' Proposed Case

Management Order submitted herewith as Exhibit A.

### A. Communications Between Attorneys Representing Plaintiffs Implanted With Different Products Are Not Privileged

In Paragraph 12.3 of the Proposed CMO, the plaintiffs request complete attorney-

client/work product privilege for all communications between any and all attorneys representing

any plaintiff(s) in matters pending in MDL 2272, notwithstanding the interests of the parties or

the content of the communications. Because the differences among products and theories means

that the plaintiffs in the cases now before this Court will have meaningfully differing interests,

the Zimmer Entities cannot agree to this waiver and believe the Court should not impose it. This

request goes far beyond the protections envisioned by the common interest privilege the

plaintiffs attempt to invoke. The plaintiffs do not have the "identical legal interests" required to

sustain a common interest privilege for all communications.

The plaintiffs' proposed Paragraph 12.3 suggests the following language, to which the

Zimmer Entities object:

> The communication of information among and between Plaintiffs' counsel and
> between Defendants' counsel shall not be deemed to be a waiver of the attorney-
> client privilege or the protection afforded by the attorney work product privilege,
> and cooperative efforts among the parties shall not be used in any manner to
> contend that there has been a waiver of the attorney-client or attorney work
> product privilege.

In short, the plaintiffs request a blanket protection for *all* communications and joint work product

The plaintiffs' request for such sweeping protection ignores both the facts of this litigation and

the law.

"Parties may assert a common interest [privilege] *where they have an identical — not*

*merely similar — legal interest in the subject matter of a communication and the communication*

*is made in the course of furthering the ongoing, common enterprise.*" *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010) (emphasis added). The extension of the attorney-client/work product privilege to these joint communications must not only encompass identical legal interests, but should also be limited in its application. *Id.* ("[T]his common interest rule is really an extension of the attorney-client privilege to otherwise non-confidential communications in *limited circumstances.*") (emphasis added) (quoting *U.S. v. BDO Steinman*, 492 F.3d 806, 816 (7th Cir. 2007)).

The plaintiffs do not share an identical legal interest and, thus, are not entitled to the common interest privilege they request for *all* communications and *all* work product between and among *all* counsel for the plaintiffs. Indeed, the plaintiffs have yet to articulate *any* category(ies) of communications in which their legal interests in the subject matter are identical.

This litigation involves no fewer than seven unique knee components.[3] Zimmer submits herewith as Exhibit B the affidavit of Michelle Zawadzki outlining the histories of and differences among those products. A defect in one of these unique components does not by itself prove a defect in another. There is no better proof of this than the plaintiffs' laser-like focus on the reported experience of Dr. Richard Berger as the foundation of their case. "It was Dr. Berger who performed the ground breaking study reported by the New York Times that found a failure rate of about 9 percent with Zimmer NexGen high-flex knee implants." Brief In Support Of Plaintiff Fred Stone's Motion For Centralization And Transfer Of Actions To The Northern District Of Illinois Or Another More Appropriate Jurisdiction, p. 15. The plaintiffs then continue: "Moreover, as a top

---

[3] These products include: CR-Flex Porous Femoral Component, CR-Flex Precoat Femoral Component, Gender Solutions CR-Flex Precoat Femoral Component, LPS Flex Precoat Femoral Component, LPS Flex Option Femoral Component, Gender Solutions LPS-Flex Femoral Component, and MIS Total Knee Procedure Stemmed Tibial Component Fixed Bearing Precoat.

orthopedic knee surgeon using almost exclusively Zimmer products and a consultant for Zimmer for many years, he will likely be a key witness to the litigation." *Id.* However, most of the plaintiffs are now in a fix, as contrary to the interests of the great majority of the plaintiffs in these cases Dr. Berger actually has criticized only one product: the CR Flex Porous Femoral component. In fact, he continues today to implant the cemented version of that component in hundreds of patients each year. *See* Exhibit C, Declaration of Paul Daniel, ¶¶ 4-5. This is but one illustration of the divergent interests created by this mutli-product MDL.

Perhaps unsurprisingly in light of the above, the complaints in these cases show that different plaintiffs have raised different theories of defect. First, the complaints demonstrate that several of the Lawsuits will focus solely on the alleged failure of the MIS Tibial Component.[4] In at least four cases, *Cozzolino*, *Hood*, *Lopez*, and *Vargas*, the plaintiffs specifically allege that a failed *tibial* component caused the need for a revision surgery.[5] In other cases, the plaintiffs allege a failure of the *femoral* component.[6] Cases involving a femoral component further diverge because some involve porous components and others involve precoat, or cemented, components. Ultimately, the differences in design and composition of many of the components at issue in the complaints result in a number of different possibilities for the cause of the failures alleged by the plaintiffs. Indeed, to date most of the plaintiffs have yet to identify any specific

---

[4]   This product's full name is "MIS Total Knee Procedure Stemmed Tibial Component Fixed Bearing Precoat." For the sake of simplicity, Zimmer has again abbreviated the product name to "MIS Tibial Component."

[5]   *See, e.g., Cozzolino v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05471, Dckt. Entry No. 1, ¶¶ 61, 62; *Hood v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05478, Dckt. Entry No. 1, ¶ 51; *Lopez v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05721, Dckt. Entry No. 1, ¶ 37; *Vargas v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05482, Dckt. Entry No. 1, ¶ 43.

[6]   *See, e.g., Jamerson v. Zimmer, Inc., et al.*, Case No. 1:11-cv-06439, Dckt. Entry No. 1, ¶ 57; *Loveday v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05752, Dckt. Entry No. 1, ¶ 36; *Madden v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05721, Dckt. Entry No. 1, ¶ 49; *Root v. Zimmer, Inc., et al.*, Case No. 1:11-cv-05470, Dckt. Entry No. 1, ¶ 48.

theory of defect and, thus, whether the plaintiffs possess identical legal interests in the subject

matter of a given hypothetical communication and whether those communications will be made

in the course of furthering an ongoing, common enterprise is undetermined.

As such, the plaintiffs request for a common benefit protection for *all* communications

and *all* work product between and among *all* counsel for the plaintiffs in MDL 2272 is premature

and unsupported by common law.  Not only do the plaintiffs lack the identical legal interest

necessary to obtain the common interest privilege, but in fact the interests of many of the

plaintiffs may be directly contrary to the interests of other plaintiffs.

Neither are the plaintiffs correct in claiming that the Panel already rejected this issue.  In

fact, as the JPML Transfer Order specifically stated: "As the litigation progresses, the transferee

judge may conclude that issues concerning one or more of these Zimmer components are

sufficiently dissimilar that the associated claims or actions should be remanded to their transferor

districts . . .."  Transfer Order, Dckt. Entry #1, pp. 2-3.  Because the plaintiffs lack identical legal

interests, the plaintiffs' Paragraph 12.3 of the Proposed CMO should be stricken.

## B. All Counsel Intending To Participate In This Multi-District Litigation Should Enter An Appearance Before This Court

The plaintiffs' Paragraph 3.1 of the Proposed CMO states that any attorney who appeared

in a transferor court prior to transfer need not enter an additional appearance before this Court.

The Zimmer Entities respectfully request that this Court not permit attorneys to participate in the

proceedings without appearing before this Court for multiple reasons.

First, counsel must file an appearance to ensure that they understand and agree to adhere

to the Local Rules of the Northern District of Illinois.  The Proposed CMO specifically states

attorneys are expected to familiarize themselves with the Local Rules, and the only way to

ensure compliance with this provision is to require all attorneys to enter an appearance with this

Court. Not only will the entry of an appearance require compliance with the Local Rules, but it will also require that all counsel who enter an appearance abide by the terms of any protective order eventually entered by this Court. Without an appearance, it is questionable whether any attorneys violating the protective order would be within the Court's jurisdiction if the Court is required to compel certain conduct.

Second, the plaintiffs' proposed Paragraph 3.1 allows confusion about precisely which attorneys are participating in MDL 2272 and, more importantly, will increase the likelihood of disclosure of the Zimmer Entities' confidential documents. This litigation now encompasses approximately one hundred cases. At the time of transfer, many of the plaintiffs were represented by multiple law firms and counsel – a limited number of whom have entered their appearance before this Court. However, many others have not. The plaintiffs' proposed Paragraph 3.1 would allow all of these attorneys to participate in MDL 2272 whether they enter an appearance before this Court or not. Not only will the plaintiffs' proposed Paragraph 3.1 prevent the Zimmer Entities and the Court from knowing the identities of the counsel actively participating in this litigation, but more importantly, it will prevent the Zimmer Entities and the Court from identifying the attorneys who are entitled to see confidential documents to be produced by the Zimmer Entities in this litigation. Requiring all attorneys who intend to participate in this litigation to file separate appearances in this Court is not burdensome and clarifies which attorneys will be participating in this litigation. Therefore, the Zimmer Entities request that the Court enter their Paragraph 3.1 of the Proposed CMO.

### C. Direct Filing Of Cases Into The MDL Circumvents The Transfer Procedures Established By The JPML

The plaintiffs' request in Paragraphs 4.1 – 4.5 of the Proposed CMO – that any plaintiff whose case would be subject to MDL 2272 be permitted to directly file that case in the Northern

District of Illinois – unnecessarily circumvents the transfer procedures established by the Judicial Panel for Multidistrict Litigation ("JPML"). The JPML has established specific guidelines for the transfer of cases to pending multidistrict litigation. *See* JPML Rules 7.1 and 7.2; 28 U.S.C. § 1407. These rules not only outline the proper procedure to transfer the cases to this MDL, but also provide the Zimmer Entities with a procedure to object to the transfer of actions to this MDL, before the correct forum: the JPML. This transfer procedure, provided for by the JPML Rules, should not be disregarded.

Moreover, the Northern District of Illinois is not the proper venue for the vast majority of cases pursuant to 28 U.S.C § 1391. Not only is it important that prospective plaintiffs file their complaints in the proper venue in order for the Zimmer Entities to analyze the appropriateness of the venue, but furthermore, upon completion of all pretrial proceedings, the cases in MDL 2272 will be returned to those venues. Despite the plaintiffs' assurances that such a procedure can be enacted following the completion of pretrial proceedings, prospective plaintiffs should be required to file their cases in the proper venues and transfer any proper cases to this MDL pursuant to the specific rules set forth by the JPML. Accordingly, the Zimmer Entities request the Court deny the plaintiffs' request to include Paragraphs 4.1 – 4.5 in the Proposed CMO.

**D. The Zimmer Entities Request That The Court Conduct Periodic Status Conferences As Needed And At The Request of Plaintiffs' Lead Counsel, Defendants' Lead Counsel, Or On Its Own Accord**

The Zimmer Entities believe regular status conferences are advisable. Whether those conferences should be set monthly should depend on the Court's pleasure as reflected in the Zimmer Entities Proposed Paragraph 9.2. For its part, the Zimmer Entities believe that some longer period would be adequate, as the Court can of course set other conferences and hearings as needed.

### E. The Advance-Consultation Obligation Should Apply Only to Discovery Related Motions

The Court's Local Rule 37.2 requires parties to consult before filing discovery related motions. The Zimmer Entities agree that no discovery-related motion should be filed unless it includes a certification that the movant has conferred with opposing counsel and made a good faith effort to resolve the matter without Court action.

The plaintiffs ask the Court to expand its consultation requirement to cover all motions. It would be an inefficient use of time and resources to require the parties to confer on non-discovery related motions when the potential for agreement to such a request is virtually non-existent. The resulting delay and disagreement would generate little benefit, as in the rare instance in which some part of the anticipated substantive relief may be agreed upon, the same result could be negotiated after the motion is filed.

Moreover, this expanded consultation requirement would fall disproportionately on the Zimmer Entities, since as defendant the Zimmer Entities will be the party challenging experts and filing dispositive motions. The Zimmer Entities should not be forced to delay – or telegraph – such motions.

### F. Fee And Reimbursement Requests Should Be Subject To Public Filing

Pursuant to Rule 40.23 of the Manual for Complex Litigation, 4th, all fee applications and requests for reimbursement may be subject to public filing. Rule 40.23 contemplates the public filing of such applications and requests, therefore, the Zimmer Entities request such public filings be made.

Dated:  September 30, 2011     Respectfully submitted,


             BAKER & DANIELS LLP


             /s/ Joseph H. Yeager, Jr.

             Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
             300 North Meridian Street, Suite 2700
             Indianapolis, IN  46204
             Telephone:  (317) 237-0300
             Fax:     (317) 237-1000
             Email:    jay.yeager@bakerd.com

             Attorney for Zimmer, Inc., Zimmer Holdings, Inc.,
             Zimmer Orthopaedic Surgical Products, Inc., Wilson/
             Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips,
             Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State
             (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-
             State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer,
             Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State
             Orthopedic), K. Michael Melia, d/b/a Zimmer Melia &
             Associates, Inc. (incorrectly named as Zimmer Melia &
             Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer
             Surgical, Inc., and Zimmer US, Inc.

## CERTIFICATE OF SERVICE

I certify that on September 30, 2011, a copy of the foregoing The Zimmer Entities' Memorandum In Response To Plaintiffs' Proposed Case Management Order was filed electronically. Parties may access this filing through the Court's system. I further certify that on September 30, 2011, a copy of the foregoing The Zimmer Entities' Memorandum In Response To Plaintiffs' Proposed Case Management Order was sent by first-class United States mail, postage prepaid, upon the following:

Bharatio O. Sharma
Pogust Braslow & Millrood LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428

John P. Lavelle , Jr.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Kevin R. Weiss
Laureate Group
1805 Kensington Drive
Waukesha, WI 53188

Kim M Schmid
Bowman & Brooke Law Firm
150 South Fifth Street, Suite 2600
Minneapolis, MN 55402

Mark E. Gebauer
Ecker Seamans Cherin & Mellott, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101

Melissa Fry Hague
1710 Spruce Street
Philadelphia, PA 19103

Roxanne Conlin
Conlin & Associates PC
319 7th Street, Suite 600
Des Moines, IA 50309

Richard J. Sapp
Nyemaster, Goode & McLaughlin
699 Walnut Street
1900 Hub Tower
Des Moines, IA 50309

Thomas R. Anapol
Anapol, Schwartz, Weiss & Schwartz
1900 Delancey Place
Philadelphia, PA 19103

William L. Bross, IV
Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, AL 35203

James T. Capretz
Capretz & Associates
5000 Birch Street, Suite 2500
Newport Beach, CA 92660

Don K. Ledgard
Capretz & Associates
5000 Birch Street, Suite 2500
Newport Beach, CA 92660

/s/ Joseph H. Yeager, Jr.

10