UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DEFENDANTS NEXGEN KNEE | ) | |
| IMPLANT PRODUCTS LIABILITY | ) | MDL NO. 2272 |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to All Cases | ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | |
| | ) | Honorable Rebecca Pallmeyer |

## ZIMMER ENTITIES' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RESOLVING DEFENDANT FACT SHEET DISPUTE

## I. INTRODUCTION

Since the plaintiffs' filing of the Plaintiffs' Steering Committee's Brief In Support Of Motion For An Order Resolving Defendant's Fact Sheet Dispute ("DFS Motion"), the parties have continued to negotiate the remaining disputes related to the Defendant Fact Sheet ("DFS").

Three disputes presently remain for the Court's review:

1. the plaintiffs' attempts to obtain documents and information in the DFS regarding components parts not at issue in this MDL;

2. the plaintiffs' requests in the DFS for all communications with or regarding plaintiffs' implanting surgeons and their groups from 1996-present; and

3. the scope of the plaintiffs' requests for production of documents attached to the DFS.

The Zimmer Entities[1] respectfully request that the Court exclude or limit the above-referenced information from the proposed DFS for multiple reasons. *First*, the plaintiffs should

---

[1] For purposes of this motion, "Zimmer Entities" includes the following defendants in this action: Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., and Zimmer US, Inc.

not be able to obtain discovery on component parts outside the scope of the products at issue in this MDL, as defined by the JMPL's August 8, 2011, Transfer Order, particularly components that did not fail. In their proposed version of the DFS, the plaintiffs seek information and documents related to the manufacturing, distribution, and reporting to the United States Food & Drug Administration for all "Flex Femoral and MIS Tibial Components" implanted in a particular plaintiff *in addition to* all explanted component parts, regardless of whether the parts failed and/or whether the parts fall within the scope of products defined as at issue in MDL-2272. The information the plaintiffs seek in the DFS on unrelated and non-failed components is not relevant to this litigation, is not likely to lead to the discovery of admissible evidence, and its discovery creates an unfair burden to the Zimmer Entities that outweighs any potential the benefit to the plaintiffs. Accordingly, and as the Zimmer Entities explain more fully below and in the Defendants' Motion For Protective Order (Dkt 231), the DFS should be limited to the discovery of information regarding failed *NexGen* Flex Femoral Components and/or the MIS Total Knee Procedure Stemmed Tibial Component Fixed Bearing Precoat (*see* Dkt. 1, p. 2 n.3), which is also known as the "5950" or "MIS Tibial Component."[2]

*Second*, the plaintiffs' request for *all* of the Zimmer Entities' communications with and about the plaintiffs' implanting surgeons and their groups from 1996 to present is overly broad, unduly burdensome, and otherwise impossible to fulfill given the scope of the DFS requests and the manner in which the Zimmer Entities create and maintain their records. The Zimmer Entities repeatedly have explained to the plaintiffs the manner in which their records are kept and the impossibility of gathering the information the plaintiffs seek in the DFS regarding

---

[2]     Specifically, "Plaintiff's Device" should be defined in the DFS as: "the Zimmer NexGen Flex Femoral Component (i.e., CR-Flex, LPS-Flex or Gender Solution Flex) and/or 5950 MIS Tibial Component which has been explanted, or for which Plaintiff provides proof that he/she has been advised by a physician should be explanted…."

communications with the implanting surgeons and their groups to no avail. Moreover, the Zimmer Entities already have agreed to provide significant information and documents that include the vast majority of communications and relationships with the plaintiffs' implanting surgeons. However, the Zimmer Entities simply cannot produce the information requested by the plaintiffs in the DFS regarding surgeon communications, including communications about the plaintiffs and/or their surgeries, given the scope and nature of the requests posed.

Finally, the plaintiffs' propose that the Zimmer Entities produce a number of documents in response to the requests for production attached to the DFS. While the Zimmer Entities can and will respond to four of the five requests, Request No. 1 again seeks communications and documents about individual plaintiffs, their surgeons, and the plaintiffs' surgeries in a manner that is overbroad, unduly burdensome, and otherwise impossible given the way in which Zimmer, Inc., creates and keeps its records.

For these reasons, the Zimmer Entities respectfully request that the Court approve the version of the DFS attached as Exhibit A, including the proposed language of the Zimmer Entities.

## II. PLAINTIFFS SHOULD NOT BE ALLOWED TO USE THE DFS TO SEEK DISCOVERY REGARDING PRODUCTS NOT AT ISSUE IN THE MDL

### A. Plaintiffs' Proposed Definition of "Plaintiff's Device" Impermissibly Includes Component Parts Outside the Scope of the MDL

The plaintiffs argue that the DFS definition of "Plaintiff's Device" must be broad enough to include: (1) any Zimmer *NexGen* Flex Femoral Component and 5950 MIS Tibial Component that is implanted in any plaintiff, regardless of whether the components have failed or been explanted; *and* (2) any other component part that was explanted (or that a physician has advised will need to be explanted), regardless of whether that component failed or allegedly is defective. *See* DFS Motion, p. 1.

3

On the contrary, the claims identified by the Panel as within MDL-2272 concern only

(1) the flex aspects of the *NexGen* Flex Femoral Components, and (2) the design of the 5950

MIS Tibial Component.  *See* Transfer Order (Dkt. 1) pp. 1-2.  The Panel explained its rationale

for centralizing those claims as follows:

> The subject actions share factual issues arising from allegations
> that Zimmer's "high-flex" femoral components (i.e., the Cruciate
> Retaining (CR) and Legacy Posterior Stabilized (LPS)
> components, and the "Gender Solutions" versions thereof) and/or
> the MIS [Total Knee Procedure Stemmed Tibial Component Fixed
> Bearing Precoat] … are prone to premature loosening, causing
> affected individuals pain and loss of movement, and often forcing
> them to undergo revision surgery.  The actions also raise factual
> issues as to whether the aforementioned high-flex components
> actually provide an individual with any increase in flexion.

*Id*.  This was no accident:  the plaintiffs' own briefing before the Panel specified those products.

In the initial motion to transfer filed with the Panel, the plaintiffs stated:

> The medical devices at issue in this MDL centralization request are
> two central components to the Zimmer NexGen Knee product line.
> The first is the high-flex version of Zimmer's NexGen Complete
> Knee Solutions line of prosthetic knee implants [referring to
> femoral components]. ...  The second component within the
> NexGen knee system which has co[3]me under scrutiny and recall is
> the MIS Tibial component. ...

*See* Brief In Support Of Plaintiff Fred Stone's Motion For Centralization And Transfer Of

Actions To The Northern District Of Illinois Or Another More Appropriate Jurisdiction (Dkt. 1-

1) at 5.  *See also* Interested Party Response And Memorandum Of Law In Support Of Transfer

(Dkt. 5) p. 4 ("In addition to alleging injury as a result of a defective 'High-Flex' model, several

of the cases filed across the country, including Plaintiff's, also contain claims relating to a

specific tibial component manufactured by Defendants called the MIS Stemmed Tibial

Component.") and Singsaas Complaint (Dkt. 5-1) ("This is an action … in connection with … the NexGen MIS Stemmed Tibial component").

Despite the clear scope of the Panel's Transfer Order, the plaintiffs now seek to discover information well beyond the *seven NexGen* Flex Femoral and 5950 MIS Tibial Components at issue in MDL-2272, regardless of whether the component failed or was explanted, as well as all components parts that may have been explanted (e.g., patella, tibial articular surface, bone cement, etc.), regardless of whether those components failed or if there is any allegation of defect in those components.  Enlarging the DFS definition of "Plaintiff's Device" in this manner not only presents overarching concerns regarding the integrity of the MDL, but it also unfairly requires the Zimmer Entities to produce several large categories of information and documents for products outside the scope of this MDL in the earliest stages of discovery.  The definition of Plaintiff's Device in the DFS, thus, should be limited to those products identified by the Panel as at issue in this litigation:  the *NexGen* Flex Femoral Components and 5950 MIS Tibial Component (collectively, "the MDL Products").

B.    The Information Plaintiffs' Seek About Components Not At Issue In MDL-2272 Is Not Relevant To The Litigation And The Burden Of Production Far Outweighs Its Potential Benefit To Plaintiffs_____

This Court and other jurisdictions strictly limit the discovery of unrelated products. Generally, discovery is limited "to information which is relevant to the subject matter involved in the pending action." *Piancenti v. General Motors Corp.*, 173 F.R.D. 221, 223 (N.D. Ill. 1997) (precluding the plaintiffs from discovery concerning two different automobile models). "[D]ifferent models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation …  What is required is a specific factual showing of substantial similarity.   Conclusory statements of alleged similarity are not enough." *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1120 (N.D. Ga. 2007).

5

"Practical considerations dictate that parties not be permitted to roam in shadow zones of relevance and to explore a matter which does not appear germane merely on the theory that it might become so." *Amcast Industrial Corp. v. Detrex Corp.*, 138 F. R. D. 115, 118 (N.D. Ind. 1991).

In connection with the DFS, and at this very early stage of discovery, the plaintiffs claim that they should receive information – not just about the MDL Products that actually failed – but also about myriad other components implanted in the plaintiffs, including components that did not fail but may have been explanted. The plaintiffs reason that such an expansive production should be permitted because they allege all of the implanted component parts are "interrelated." *See* DFS Motion, p. 4. This vague allegation, without more, is insufficient to satisfy the above-cited legal standard for obtaining discovery on products other than failed *NexGen* Flex Femoral and/or 5950 MIS Tibial Components identified in a Plaintiff Fact Sheet.

Further, the requested information and documents are simply not relevant for component parts that did not fail and are not at issue in MDL-2272. The specific documents and information the proposed DFS would require the Zimmer Entities to produce include Device History Records, Distribution History Reports, Medical Device Adverse Event Reports and/or Medwatch forms. *See* DFS Motion, Sections II. and V. Device History Records and Distribution History Reports show manufacturing and distribution information for each component part, including the date and place of manufacture and the distribution for each component from manufacture to delivery to the patient's hospital. Zimmer, Inc., creates Device History Records when it manufactures each and every lot of components, and the Device History Records document the steps taken by Zimmer, Inc., employees during the manufacturing process. Device History Records can range from 25-75 pages *per component*. Depending on the date of manufacture,

6

Zimmer, Inc., may keep the Device History Records in hard copy, digitally, or on microfilm/fiche.

The plaintiffs request in the DFS that the Zimmer Entities gather and produce Device History Records and Distribution Reports for components *that did not fail* is unduly burdensome, particularly in this early stage in the litigation. Moreover, even were Zimmer, Inc., to invest the time and resources to identify and produce the requested information, the Device History Records will not reveal any relevant, discoverable information to the plaintiffs. For example, the plaintiffs claim they should receive Device History Records and Distribution History Reports for artificial patellas implanted in individual plaintiffs that are revised, even where there is no theory of defect as to the patellas. Producing the manufacturing and distribution records for those components will *not* lead to the discovery of admissible information regarding the plaintiffs' stated theory of defect: flex engineering design changes somehow caused the MDL Products to loosen and be defective. *See* August 8, 2011, Transfer Order (Dkt. 1), pp. 1-2. Moreover, nothing about the Device History Records or Distribution History Reports has any bearing on the plaintiffs' current claim that the products are an "integrated system." Those records are not design-related or other records that show anything about how the components work together or integrate. Rather, they are isolated manufacturing and distribution documents. Because the records the plaintiffs seek in the DFS through their overbroad definition of "Plaintiff's Device" – the Device History Records and Distribution History Reports for products that did not fail – have no bearing whatsoever on the issues in MDL-2272, the Zimmer Entities should not be required to produce them. The Zimmer Entities' production, especially at this early stage in the litigation,

should be limited to information regarding failed Flex Femoral and/or 5950 MIS Tibial

Components.[4]

Finally, this Court should confine the definition of "Plaintiff's Device" in the DFS to

failed MDL Products only, because the burden of collecting these records for component(s) not

at issue in MDL-2272, which did not fail, violates the proportionality requirement of Fed. R. Civ.

Pro. 26(b)(2). The proportionality requirement calls for the Court to limit discovery if its burden

and expense outweigh its likely benefit. *See, e.g.*, *Makowski v. Smith Amundsen LLC*, No. 08 C

6912, 2010 WL 3184483 at *2 (N.D. Ill. Aug. 11, 2010) (limiting overbroad requests that lacked

a subject matter limitation); *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1015 (N.D.

Ill 2009), *aff'd*, No. 06 C 3132, 2010 WL 780390 (N.D. Ill. Mar. 30, 2010)(affirming the

tailoring of discovery requests to balance the relevant legal issues with the burden on defendant).

As the Zimmer Entities note above, Device History Records are voluminous and their production

is unduly burdensome. Each plaintiff in MDL-2272 has been implanted with four or more

different component parts (tibial, femoral, patellar and articular surface). Many of these

components are revised/explanted even if they did not fail during a total knee arthroplasty

revision surgery. Gathering and producing Device History Records and Distribution History

Reports for literally hundreds of components implanted in hundreds of plaintiffs that *did not fail*

is unduly burdensome and not reasonably calculated to lead to the discovery of admissible

evidence.

In short, the plaintiffs should not be permitted to expand the definition of "Plaintiff's

Device" beyond that set forth by the Transfer Order. The information the plaintiffs seek in the

DFS through their overbroad definition of "Plaintiff's Device" is not relevant to this litigation,

---

[4]     For the same reasons, the plaintiffs' request for Medical Device Adverse Event Report and/or Medwatch forms for components that are not MDL Products and that did not fail should not stand, if any such reports even exist.

and the burden of production well outweighs the benefit to the plaintiffs in obtaining this

information.

### III. ZIMMER HAS ALREADY PRODUCED (AND AGREED TO PRODUCE) SIGNIFICANT, RESPONSIVE INFORMATION RELATED TO COMMUNICATIONS WITH SURGEONS, AND THE ADDITIONAL PRODUCTION PLAINTIFFS REQUEST IN THE DFS IS UNDULY BURDENSOME

#### A. Zimmer Has Already Agreed To Produce Significant Implanting Surgeon Communication-Related Information

The surgeon communication-related requests in dispute in the proposed DFS state as

follows:

> Identify all incidents from January 1, 1996 to present where defendant's employees detailed, marketed or sold the plaintiff's device to plaintiff's implanting surgeon or his/her group or practice at the time of implantation, if known.
>
> \*      \*      \*      \*
>
> Identify all Communications regarding the Femoral or MIS Devices, as defined on page 1 of this DFS, including but not limited to Dear Healthcare Provider letters and/or recall letters, sent to Plaintiff's implanting and explanting surgeon (and/or their group or practice, if known), as identified in Plaintiff Fact Sheet Section V. In lieu of identifying the Communications in list form, Defendants may produce copies of all such Communications, specifically identified herein by Bates number.
>
> \*      \*      \*      \*
>
> Request No. 1: Communications … regarding the Plaintiff, Plaintiff's Device, Plaintiff's implant or explant surgery or Plaintiff's Device from January 1, 2005 to present.[5]

*See* Draft DFS, III(b), IV(a), VIII.

---

[5] The Zimmer Entities dispute Request No. 1 to the extent that it seeks communications "regarding … Plaintiff's Device" and "surgery" and, thus, could be construed to include Zimmer's communications with implanting surgeons as disputed in the two other surgeon communication-related requests.

In the DFS Motion, the plaintiffs claim that information responsive to the above requests is "highly relevant" to this litigation, though they fail to provide any factual basis for their claim. The plaintiffs do claim elsewhere in the DFS Motion that information relating to "relationships, communications, and compensation" by and between Zimmer, Inc., and the plaintiffs' health care providers is significantly relevant to "the decision-making process employed in recommending and using" the Flex Femoral and 5950 MIS Tibial Components. *See* DFS Motion, II. The Zimmer Entities agree that certain surgeon relationship and communication information is relevant and discoverable. Indeed, Zimmer Entities already have produced the core documents provided to surgeons regarding the Flex Femoral and 5950 MIS Tibial Components: i.e., the Package Inserts, Surgical Techniques, and marketing materials supplied to physicians. The Zimmer Entities further have agreed to produce information from knee-related medical education and training that may have been conveyed to surgeons. However, the plaintiffs' above requests seek far more information than those core documents, and the burden of the requested production greatly outweighs the potential that relevant information may be obtained – particularly given the very early stage of discovery at issue in the DFS.

Preliminarily, the DFS Motion claims that Zimmer Entities derive "significant benefits" from the DFS, because the DFS relieves them of the burden of other discovery obligations. *See* DFS Motion, p. 2. This claim is unsupported by the facts. In addition to the Zimmer Entities' impending obligation to respond to the requests standardized in the DFS, the Zimmer Entities also are in the midst of responding to 115 general requests for production issued by the Plaintiffs' Steering Committee, as well as producing documents from approximately *forty* (and counting) employee custodians on a rolling basis. Thus, contrary to the plaintiffs'

10

characterization, any information the Zimmer Entities provide in response to the DFS is *in addition to,* not instead of, its discovery responses and ongoing document production.

Indeed, in response to other discovery obligations, the Zimmer Entities have produced (and will continue to produce) core communications with surgeons regarding the MDL Products: all Dear Healthcare Provider letters, recall letters, Package Inserts, Surgical Techniques, and marketing materials regarding the MDL Products that may have been distributed to surgeons. *See* Zimmer Inc.'s Response To Plaintiffs' Steering Committee's First Requests For Production, *passim*. In addition, the Zimmer Entities have agreed to provide documents evidencing Zimmer, Inc.'s relationships with surgeons, including: all consulting agreements and 1099s for implanting surgeons from 1999 to present, lists of the plaintiffs' implanting surgeons' attendance at Zimmer, Inc., knee-related trainings from 1996 to present; and all of the training materials provided to surgeons at these knee-related trainings. *See* Exh. A, Section IV. c.-e. As the Zimmer Entities explain more fully in Section B below, the information they already have agreed to produce will evidence the vast majority of *all* existing records regarding communications and relationships with surgeons, and that production certainly includes surgeon communications relevant to this litigation.

Moreover, as part of its responses to the plaintiffs' substantial requests for production, the Zimmer Entities are producing employee custodial files, by custodian, on a rolling basis. To date, they have identified approximately forty custodians for whom documents will be produced. These custodians were identified based on their involvement with the design, manufacture, marketing, or sale of the MDL Products. This group of custodians includes members of the LPS Flex, CR Flex, Gender Femoral, and 5950 MIS Tibial Component design teams -- employees who could have communicated with surgeons during the development of a new product. The

Zimmer Entities are producing the employees' hard copy files, electronic files, and e-mails on a custodian-by-custodian basis after conducting key word searches on those documents to narrow the scope of the custodial file to the components at issue in this litigation. Each custodian production is fully text-searchable, so the plaintiffs will be able to conduct key word searches for surgeon names or otherwise.

In short, the Zimmer Entities have produced, and will continue to produce, scores of relevant documents evidencing communications and relationships with the plaintiffs' implanting surgeons. Further, they are in the process of producing custodial files for forty employees who could have communicated with the plaintiffs' implanting surgeons. These steps are more than sufficient to satisfy the Zimmer Entities' discovery obligations under the DFS, particularly given its purpose in this early stage of the litigation.

      B.     Plaintiffs' Request For Additional Information And Documents Regarding Surgeon Communications Is Overly Broad, Unduly Burdensome, Unlikely To Lead To The Discovery Of Admissible Information, And Is Not Proportional To The Burden Of The Request.

Given the Zimmer Entities' production of the above-described information, the only remaining communications at issue in the above requests are those that the plaintiffs hope to obtain through a company-wide sweep for "all communications" or "marketing" with the more than 160 implanting surgeons at issue in matters pending in MDL-2272, plus the potential 100+ practice groups to which those surgeons belong. As is noted above, these requests are overly borad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, and otherwise violate the proportionality requirement of Fed. R. Civ. Pro. 26(b)(2), as the potential benefit to plaintiffs is far outweighed by the burden of production.

The plaintiffs seek *all* communications made by Zimmer employees to *all* of the plaintiffs' implanting surgeons and their groups for the past 16 years. The estimated number of

implanting surgeons and groups, to date, is around 250-300, and this figure grows daily.  As counsel for the Zimmer Entities explained to counsel for the plaintiffs in detail during DFS negotiations, even if Fed. R. Civ. Pro. 26(b) justified the wholesale production of such information at this early stage in the litigation – and it does not -- the way in which the Zimmer Entities make and keep their records makes a search of this type nearly impossible, and certainly cost and time-prohibitive.

Zimmer, Inc., does not engage in direct marketing and sales to individual surgeons regarding an individual patient's surgery. Kendall Aff., ¶ 5.  While Zimmer, Inc., employees do communicate with surgeons regularly regarding product designs and other issues, its employees are not directly involved in the selection, sale, or marketing of a specific component for an individual plaintiff surgery.  Kendall Aff., ¶ 6.  Moreover, the sales force who communicates most regularly with individual surgeons is not employed by Zimmer, Inc. Kendall Aff., ¶ 7.  Sales representatives are employed by or contractors to independent distributors of Zimmer, Inc., products.  Kendall Aff., ¶7.

To the extent that an employee communicates with a surgeon about a Zimmer issue or product, those communications happen individually between the employee and surgeon, and Zimmer, Inc., does not track those communications by surgeon name, employee name, department, project, or otherwise.  Kendall Aff., ¶ 8.  Thus, the only conceivable way in which Zimmer, Inc., could locate all of its employees' communications with individual surgeons (or the much larger group) would be a company-wide employee-by-employee search for all documents any past or present Zimmer, Inc., employee may possibly have reflecting a communication with the 250-300 surgeons and groups at issue in the plaintiffs' proposed DFS requests for the last 16

13

years. Kendall Aff., ¶ 9. Given that the Zimmer Entities presently employ thousands of people, such a search is simply impossible.

Even were the Zimmer Entities to confine the DFS-requested search to the marketing department alone (a search of which would not fully satisfy the scope of the DFS requests), the plaintiffs' request is unduly burdensome and impractical. Zimmer, Inc., employed more than 200 employees in marketing during the plaintiffs' proposed 16-year time period. Kendall Aff., ¶ 10. Thus, searching the marketing department for communications with the plaintiffs' 250-300 implanting surgeons and their groups would require the Zimmer Entities to search through over 200 current and former employees' hard copy and electronic records for a 16-year time period. Kendall Aff., ¶ 11. The manpower and financial cost to conduct this type of search is truly inestimable given the breadth and scope of the requests, but counsel for Zimmer estimates it would involve hundreds of Zimmer employee and attorney hours.[6]

"A court may limit discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895 (S.D. Ind. 2006). Here, Zimmer has agreed to produce the relevant categories of documents detailed in Section A above, including more than forty custodial files. Based on the documents already being produced, the results of

---

[6]     Given the size and scope of the production in response to the plaintiffs' broad discovery requests, counsel for Zimmer estimates that a search for just **one** surgeon's name could yield more than 135,000 documents. Those documents would mention the surgeon's name, and only a document-by-document review could determine whether the documents were, in fact, the communications with surgeons that the plaintiffs' request. The plaintiffs' proposed search in the DFS contemplates a search for 300 surgeon and group names. Thus, this means the Zimmer Entities would be required to search for some 300 medical providers, which could result in 25,000,000 or more document hits from name based keyword searches. Based on these estimates, the potential cost to the Zimmer Entities would be enormous in order to respond to one DFS request. The burden of performing the 300-name search pre-production is simply too great. Instead, Zimmer is conducting its ESI collection, search, and review to identify relevant custodians. Responsive documents are then produced in a text-searchable format. Should the plaintiffs wish to conduct keyword searches for individual surgeons' names or group names, there is no reason why they cannot do so, at their own expense.

the additional search the plaintiffs propose would reveal little relevant information that is not duplicative of what the Zimmer Entities have already agreed to produce. Thus, the proposed search is both incredibly burdensome *and* unlikely to lead to the discovery of admissible evidence. Moreover, the Zimmer Entities have proposed a procedure by which the plaintiffs can undertake (at their expense) a review of the information produced for surgeon-related communications. *See, supra,* n.7. In short, a search of the nature the plaintiffs proposed in the DFS and Request No. 1 to the DFS is simply too burdensome given the manner in which the records of Zimmer, Inc., are created and retained.

The Court, thus, should order the disputed surgeon-related communications removed from the DFS. *See* Draft DFS, III(b) and IV(a).

## III. CONCLUSION

For the foregoing reasons, the Zimmer Entities respectfully request that this Court enter an Order (1) limiting the definition of "Plaintiff's Device" in the DFS to failed MDL Products; and (2) striking the portions of the proposed DFS that request *all* communications with or regarding the plaintiffs' implanting surgeons and their groups, or regarding the plaintiffs or their surgeries, from 1996 to present.

Dated:  February 20, 2012                    FAEGRE BAKER DANIELS LLP

                                             /s/ Andrea Roberts Pierson

                                             Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
                                             Andrea Roberts Pierson (Ind. State Bar #18435-49)
                                             300 North Meridian Street, Suite 2700
                                             Indianapolis, IN  46204
                                             Telephone:  (317) 237-0300
                                             Fax:  (317) 237-1000
                                             Email:  jay.yeager@faegrebd.com
                                             Email:      andrea.pierson@faegrebd.com

                                             *Attorneys for Zimmer, Inc., Zimmer Holdings, Inc.,
                                             Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic
                                             Surgical Products, Inc., Wilson/ Phillips Holdings, Inc.,
                                             d/b/a Zimmer Wilson/Phillips, Orthopaedic
                                             Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly
                                             named as (1) Zimmer Tri-State d/b/a Tri-State
                                             Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc.,
                                             and/or (3) Zimmer Tri-State d/b/a Tri-State
                                             Orthopedic), K. Michael Melia, d/b/a Zimmer Melia &
                                             Associates, Inc. (incorrectly named as Zimmer Melia &
                                             Associates, Inc.), Zimmer Orthobiologics, Inc., and
                                             Zimmer US, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 21, 2012 a copy of the foregoing ***Zimmer's Response In Opposition Of Plaintiffs' Motion For An Order Resolving Defendant Fact Sheet Dispute*** was filed electronically.  Parties may access this filing through the Court's ECF/CFM system.


<u>/s/ Andrea Roberts Pierson</u>