# EXHIBIT B

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation.                                    Case No. 6:06-md-1769-Orl-22DAB
_____/

## ORDER

This cause came on for consideration with oral argument[1] on the following motions filed herein:

| | |
|---|---|
| MOTION: | ASTRAZENECA'S MOTION FOR ENTRY OF ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS (Doc. No. 883) |
| FILED: | February 29, 2008 |
| THEREON it is ORDERED that the motion is GRANTED in part. | |

There are one hundred seventy-four Florida Plaintiffs with cases pending in this multi-district litigation ("MDL"); seventy-five have been set for limited case-specific discovery as part of an Initial Trial Pool. AstraZeneca contends that it has thus far avoided communications with any doctor that it knows or has any reason to believe – based on Plaintiffs' responses in PFS's and potential experts' representations – has treated any of the one hundred seventy-four Florida Plaintiffs as a patient. AstraZeneca seeks an order to allow it to meet with Florida-related physicians about the possibility of having them testify as defense experts in cases brought by Plaintiffs whom the physicians have never treated or otherwise seen as one of their patients. Doc. No. 883.

AstraZeneca has identified a cumulative total of 3,140 healthcare providers who treated the one hundred seventy-four Florida Plaintiffs and expects the number to increase. AstraZeneca

---

[1] Oral argument was heard on March 11, 2008; however, the time had not yet run for Plaintiffs to file their Response, which they did on March 12, 2008. Doc. No. 895.

argues "[g]iven the large number of Florida Plaintiffs aggregated in this MDL and the limited number of doctors qualified and willing to serve as Florida trial experts, AstraZeneca brings this motion because it is conceivable (if not likely) that one or more potential Florida experts might turn out to have treated a Florida plaintiff at some time in the past." Doc. No. 883. AstraZeneca expects that there will be a relatively limited number of Florida physicians who have the experience and credentials in the relevant fields and the intangible qualities (of being sufficiently articulate, credible and persuasive) to be appropriate testifying experts in the courtroom. AstraZeneca argues that, like any defendant in a coordinated mass tort proceeding, AstraZeneca is entitled to have access to potential local experts who can assist in presenting its defense.

Plaintiffs are opposed and contend the contact Defendants seek with the physicians is not permitted under Florida law. Plaintiffs contend AstraZeneca's motion is a "poorly disguised attempt to commandeer the field of Plaintiffs' treating physicians and hire them as experts for the defense, thus opening a Pandora's Box of obvious bias and potential conflicts issues." Doc. No. 895 at 2.

**Background**

Of the one hundred seventy-four Florida Plaintiffs with cases in this MDL, seventy-five have been set for limited case-specific discovery. AstraZeneca is required to identify general and case-specific experts and provide their reports by September 12, 2008. *See* Case Management Order No. 5. AstraZeneca is in the process of locating Florida experts in a number of fields – including endocrinology, epidemiology, internal medicine, psychiatry, psychology, and diabetology. Some of these Florida experts may have treated some of the one hundred seventy-four Florida Plaintiff-patients (or for that matter, any of the 6,000 Plaintiff-patients) in this nation-wide MDL.

**Florida law on *ex parte* communications with a treating physician**

Both parties cite to the correct Florida statute governing *ex parte* communications with an opposing party's physician. Florida Statutes sections 456.057(7)(a) and (8) provide in pertinent part:

> (7)(a) Except as otherwise provided in this section and in § 440.13(4)(c) [involving the availability of medical records in workers' compensation claims], such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.
> 
> * * *
> 
> (8) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patent in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

FLA. STAT. § 456.057(7)(a).

AstraZeneca does not dispute that "ex parte discussions between a defense attorney and the plaintiff's treating physicians are barred by § 456.057" as set forth in Florida case law by Plaintiff. Doc. No. 895 at 6. However, AstraZeneca argues, the law does not preclude AstraZeneca from contacting a physician and retaining that physician as a defense expert in any case involving other Plaintiffs that the physician has never seen as patients.

Plaintiffs are opposed to allowing AstraZeneca to contact, hire, and retain Plaintiffs' treating physicians as expert witnesses in other Seroquel cases. Plaintiffs are concerned that "[N]othing in Defendants' proposed order prevents Defendants from canvassing the entire population of Plaintiffs' treating physicians, conducting ex parte discussions with them, and potentially hiring and paying them as Defendants' expert witnesses. This hardball tactic is an affront to both the

Plaintiffs' rights as patients, who are entitled to place their trust in their doctors, as well as the rights of Plaintiffs to a fair trial of their claims against wrongdoers." Doc. No. 895 at 8.

AstraZeneca contends the Florida rule against *ex parte* communications with a plaintiff's own physicians "cannot fairly be interpreted to provide Plaintiff's counsel with a shield to prevent disclosure of the physician's separate expert opinions for cases filed by others who have never been among the physician's own patients." AstraZeneca contends that when it seeks to communicate with a physician about his or her general knowledge and experience, or opinions about issues in cases filed by non-patients – as opposed to any information about one of the physician's own patients – then the patient-confidentiality interests protected by § 456.057 are not implicated, and the prohibition concerning *ex parte* physician communications simply does not come into play.

Plaintiffs are concerned that "[a]bsent some controls" over the contacts with the physicians, there may be a "race for expert witnesses" and some attorneys could theoretically create some type of inexpensive relationship with those experts, "simply in order to keep them from the other side." Doc. No. 895 at 8 (citing *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 281-82 (S.D. Ohio 1988). Plaintiffs also argue that once AstraZeneca has retained Plaintiffs' treating physicians as experts to assist in their defense of the litigation, any *ex parte* communication with those treating physicians by Plaintiffs' counsel could be prohibited, and could theoretically subject Plaintiffs' counsel to disciplinary action. Plaintiffs also worry that, for instance, if Plaintiff A loses on the liability issue, for example, Dr. B's patient also stands to lose on that issue as well, putting Dr. B in conflict with that patient. Moreover, Plaintiffs do not want to rely on AZ's counsel to warn the physicians of the conflicts that abound in such an arrangement.

AstraZeneca basically contends that Plaintiffs' counsel should not be allowed to keep the leading physician-experts from testifying for the defendant in every Plaintiffs' case simply because,

"through advertising, they solicited a large number of clients and aggregated all of their cases in one forum." Doc. No. 883 (quoting defendant's brief in *In re AMS Minnesota Penile Prosthesis Litig.*, No. PI 97-11183 (Minn. Dist. Ct., Apr. 21, 1998) (Doc. No. 883, Ex. F). If state privilege rules were construed "as prohibiting an MDL defendant from consulting with a particular doctor about the cases of non-patients merely because one or more patients sued that defendant, then hundreds or even thousands of doctors in a state could be disqualified as potential defense experts." Doc. No. 883.

The Court agrees with AstraZeneca that it is entitled to search for and hire local physicians to serve as viable testifying expert witnesses. More than 3,100 physicians have already been identified as treating physicians for Plaintiffs, which limits the local pool of physicians available to serve as experts significantly. AstraZeneca has proposed several "precautions" imposed by courts in other products liability litigation to guard against any possible disclosure of patient-specific information protected under Florida law. Plaintiffs did not comment on the proposed safeguards proposed by AZ, but sought instead to bar all such contacts.

AstraZeneca proposes a court order containing the following safeguards:

1. AstraZeneca and its attorneys will not communicate with the physician-expert about any of his patients who are involved in or are likely to become involved in this MDL.
2. AstraZeneca and its attorneys cannot use a physician as an expert in a case where that physician's patient is a plaintiff in that particular case.
3. AstraZeneca and its attorneys, before having any substantive communication with a prospective physician-expert, will provide the physician with this Order and will secure the physician's written acknowledgment that he/she has read the attached Memorandum to Physicians.

Doc. No. 883.

AstraZeneca's suggested safeguards are taken from the language of orders from other courts managing aggregated proceedings that have allowed drug manufacturer-defendants to have

substantive communications with and to retain physicians as experts in non-patient cases even though state privilege rules, like Florida, prohibited *ex parte* communications the opposing party's physician. *See In re Prempro Litig.*, MDL No. 4:03-cv-1507-WRW, Order re: Retention of Experts (E.D. Ark., Dec. 7, 2005) (holding that the pharmaceutical defendants "will not be prohibited from retaining a physician as an expert witness who is identified on a plaintiff's fact sheet" but subject to certain limitations, including that "[d]efendants and their attorneys cannot use a physician as an expert in a case where that physician's patient is a plaintiff in that particular case.") Doc. No. 883-3, (Ex. B). A similar memorandum to urologists was used by a state court judge overseeing the coordinated Minnesota Penile Prosthesis Litigation. *In re AMS Litigation*, Case No. 87-11183 (Minn. Dist. Ct. May 8, 1998) (Hearing Trans.); Doc. No. 883-4, 883-5 (Ex. C & D). The state judge allowed the manufacturer-defendants to retain as defense experts eight urologists who had not treated 20 bellwether plaintiffs but had treated other plaintiffs even though case law prohibited *ex parte* interviews of a plaintiff's treating physicians, but required use of the memorandum. *Id.*

The Court concludes that a prohibition on AZ's contacting and retaining physicians has the potential to deprive AstraZeneca of a fair opportunity to present its defense in the cases to be tried in Florida. The danger of AstraZeneca's attempting to "monopolize" all expert witnesses is matched by the prospect of the Plaintiffs' collectively disqualifying the substantial number of treaters they have used.

The Court is mindful of the potential for misuse of this authorization, the danger of inappropriate communications and the possibility of conflicts and complexities as the cases develop and the varying roles of physicians intertwine. Hence, safeguards are imposed, and this authorization will be subject to review and potential modification as may be needed.

In this case, the Court will adopt the safeguards substantially as proposed by AstraZeneca, including the Memorandum to Physicians as approved by the Court. It is **ORDERED** that AstraZeneca will not be prohibited from retaining a physician as an expert witness who is identified on a Plaintiff's Fact Sheet or otherwise as being a treater for a plaintiff in this litigation. The following restrictions will apply:

1. AstraZeneca and its attorneys will not communicate with the physician-expert about any of his or her patients who are involved in or are likely to become involved in this MDL.
2. AstraZeneca and its attorneys cannot use a physician as a consulting or testifying expert in a case where that physician's present or former patient is a plaintiff in that particular case.
3. AstraZeneca and its attorneys, before having any substantive communication with a prospective physician-expert, will provide the physician with this Order and will secure the physician's written acknowledgment that he/she has read the attached Memorandum to Physicians (Exhibit 1 to this Order).

**DONE** and **ORDERED** in Orlando, Florida on March 21, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation.

Case No. 6:06-md-1769-Orl-22DAB

_____/

**MEMORANDUM TO DOCTORS**

Defendants ("AstraZeneca") are permitted to retain as expert witnesses physicians who may have treated one or more patients who are Plaintiffs in this litigation. Despite their service as experts, these physicians are still bound by the physician-patient privilege and are forbidden from communicating with AstraZeneca, its employees and its attorneys about their patients who are Plaintiffs, absent a subpoena, their patients' written authorization, or another order from the Court. AstraZeneca and its representatives must identify which of a physician's patients are Plaintiffs before any substantive communications begin. If a physician, at any time, believes that AstraZeneca is attempting to communicate about a patient who is a Plaintiff, directly or indirectly, the physician should contact the patient or his or her attorney.