UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to All Cases | ) ) ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | Hon. Rebecca R. Pallmeyer |

## CASE MANAGEMENT ORDER NO. 4

Pursuant to the agreement of counsel in this MDL, this Order shall apply to all actions currently pending in MDL No. 2272 and all future actions transferred to MDL No. 2272. This Order governs the production of all electronically stored information ("ESI") and Custodial Files.

**I.  Format for Production**

    **A.  Definitions**

        1.  "Document" means paper documents or electronically stored information ("ESI") existing in any medium from which information can be obtained or translated into reasonably usable form.

        2.  "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

        3.  "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

        4.  "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

5. "Load/Unitization file" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

6. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

7. "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information.

8. Parties will use reasonable, best efforts to comply with their obligations under this Order. In the event a party determines that it cannot materially comply with any requirement herein, they will disclose their inability to comply and parties will meet and confer regarding resolution of the identified issue.

B. **Paper Documents in TIFF:** Zimmer, Inc. ("Zimmer") will produce paper documents (i.e., those documents not kept electronically by a party in the ordinary course of business) in TIFF format (consistent with the specifications in Section I.(D) with endorsed Bates labels and confidentiality designations, pursuant to the protective order. The name of the custodian will be provided with the production of corresponding custodial file. The production will include the appropriate Load/Unitization files which will at a minimum, contain the following fields described in detail in Section I.5 infra.):

1. Beginning Production Number (ProdBeg),

2. Ending Production Number (ProdEnd),

3. Beginning Attachment Production Number (BegAttach),

4. End Attachment Production Number (EndAttach),

5. Custodian/Source,

6. Confidentiality,

7. Document Type,

        8.        Page Counts, and

        9.        OCR.TXT file.

In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). This provision will apply to all physical documents that will be collected going forward.

**C.**    **Electronic Documents in TIFF or native format:**

1. Zimmer will produce electronic documents in TIFF or native format of an electronic document by creating the file directly from the original electronic document. Proper conversion of files, such as various e-mail file types is acceptable if the process is defensible and documented. Zimmer may not create a TIFF format file of an electronic document by printing out paper copies of that electronic document and then scanning that paper copy of the electronic document. In the event that Zimmer cannot adhere to the requirements of this paragraph with regard to specific electronic documents, the producing party will confer with the requesting party to determine a mutually agreeable production methodology.

2. Zimmer will either preserve the SHA-1 hash value on the electronic documents or preserve the SHA-1 hash value and produce this hash value with the electronic document. This paragraph does not apply retroactively to ESI previously produced.

**C.**    **Technical Specifications for All TIFF Format Files:** All TIFF format files will conform to the following specifications:

1. All TIFF formatted files will be single page, dithered (if applicable), Group IV TIFF at 300 X 300 dpi resolution and 8 1/2 X 11 inch page size, except for documents requiring different resolution or page size. If a color image is produced in black and white, the receiving party may request the producing party to produce the original, color image. After receiving such a request for color production, the parties will meet and confer on a reasonable and cost-effective means of providing the requested documents.

2. Spreadsheet files, slide programs and any file that cannot be converted to TIFF including, audio and video files, shall be produced in native file format.

3. **Text Files.** For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

4. There will be two Load/Unitization files accompanying all productions. One will be the Image load file and the other will be the Metadata load file. The specifics of these files are detailed in (i.) and (ii.) below:

   **(a.)** **Image Load File**

   - Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

   - Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

   - The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp or .opt extension (e.g., ABC001.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)

   - The load file shall contain one row per Tiff image.

   - Every image in the delivery volume shall be contained in the image load file.

   - The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

**(b.)** **Metadata Load File**

- The metadata load file shall use the following delimiters:

    - Column Delimiter: Pipe – | (ASCII 124)

    - Text Qualifier: Caret – ^ (ASCII 94)

    - New line: Registered sign - ® (ASCII 174)

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The first record shall contain the field names in the order of the data set forth in (1. B. 2. e.). Metadata fields that are not applicable to a document shall be filled with a NULL value along with fields that were not able to be obtained due to a processing error or corrupt file.

- All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC001.dat).

- The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

5. ESI will be produced by Zimmer to the requesting party as Static Images together with a Load/Unitization file that will contain the Metadata fields described below on the document level, except as set forth in section (I) (B) above. The following fields associated with each electronic document

including the body of the document, will be produced in the appropriate Load/Unitization file.

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| | CUSTODIAN | CUSTODIAN | Name of person or data source (non-human) from where documents/files are produced. **Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.* | All | M or L |
| | BEGBATES | BEGDOC# | Beginning Bates Number (production number) | All | L |
| | ENDBATES | ENDDOC# | End Bates Number (production number) | All | L |
| | PGCOUNT | PGCOUNT | Number of pages in the document | All | L |
| | FILESIZE | FILESIZE | File Size | All | M |
| | APPLICAT | APPLICAT | Commonly associated application for the specified file type. (See 2 (l) below). | All | M |
| | FILEPATH | FILEPATH (for Edocs) FOLDER (for emails) | File source path for all electronically collected documents which includes location, folder name, file name, and file source extension. This requirement does not include documents collected from the corporate email archive. | All | M |
| | NATIVEFILELINK | DOCLINK | For documents provided in native format only | All | L |

| Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|
| TEXTPATH | LOGFILE or FULLTEXT | File path for OCR or Extracted Text files per paragraph (d) above | All | L |
| FROM | FROM | Sender | Email | M |
| TO | TO | Recipient | Email | M |
| CC | CC | Additional Recipients | Email | M |
| BCC | BCC | Blind Additional Recipients | Email | M |
| SUBJECT | SUBJECT | Subject line of email | Email | M |
| BEGATTACH | (will be provided from ATTRANGE) | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email | L |
| ENDATTACH | (will be provided from ATTRANGE) | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | Email | L |
| ATTACHCOUNT | ATTACHMENT COUNT | Number of attachments to an email | Email | L |
| ATTACHNAME | ATTACHMENT LIST | Name of each individual attachment | Email | M |
| DATESENT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Date Sent | Email | M |
| DATERCVD (mm/dd/yyyy hh:mm:ss AM) | DATERCVD | Date Received | Email | M |
| HASHVALUE | SHA-1 HASH | SHA-1 Hash Value for Edocs | Edocs | M |
| TITLE | DOCTITLE | Title provided by user within the document | Edocs | M |
| AUTHOR | AUTHOR | Creator of a document | Edocs | M |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM) | DATECRTD | Creation Date | Edocs | M |

| Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|
| LASTMODD (mm/dd/yyyy hh:mm:ss AM) | LASTMODD (mm/dd/yyyy hh:mm:ss AM) | Last Modified Date | Edocs | M |
| Redacted | Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All | M |
| Confidentiality | Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order. "Yes" for Confidential documents; "No" for documents that are not so designated. | All | M |

6. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI; that do not exist as part of the original Metadata of the document; or that would be burdensome or costly to obtain. The parties retain the right to move the Court for the production of additional electronic metadata fields should ongoing discovery reveal the need for such Metadata. The designation of a document as a "Protected Document" pursuant to the Protective Order of Confidentiality shall include the metadata produced for that document.

7. **Bates Numbering**: All images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. Defendants produced the first 713,224 pages with six digit Bates numbers, but will produce all remaining pages with an eight digit Bates number. If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

8. When processing ESI, EDT should be selected as the time zone. To the extent that a party has already processed ESI using a different time zone, the producing party will note the time zone used in its processing.

9. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

10. When the Static Image is produced, the producing party shall make reasonable attempts to maintain and not modify the original Native File and its metadata.

11. The parties will meet and confer regarding the production of structured data sources and the best methods of collection and production. Production options that should be considered should include, but not be limited to requests of database queries to generate a report or the export of usable and exportable files or data sets for review by the requesting Party.

12. User-generated files that have been collected that cannot be produced and/or imaged because of technical issues should be identified as exception files and included on a log that lists all metadata set forth in paragraph 2(e) except that the metadata for the APPLICAT field will be obtained from binary encoding from the file, and reason for exception: for example, corruption, unavailable password protection, proprietary software, or other technical issues. The producing party shall provide a copy of this log with its production. If the receiving party requests production of any files listed on the exception log, the parties will meet and confer on a reasonable and cost-effective means of providing the requested data.

13. **Embedded Objects:** All files containing embedded objects will be extracted as separate documents and produced as attachments to the document.

14. **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

15. **Extraneous Files:** The following categories of electronic files may be excluded from Custodial File collection, review, and production:

      **(a)** ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including but not limited to: ani; bat; bin; c; cfg; class; dll; drv ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; ost; out; pcd; pcx; pst; reg; sfw; sys; tag; Thumbs.db; ttf; and xp.  .pst and .ost files will be collected and processed separately, as necessary.

      **(b)** Software application files known to contain no meaningful user created data that are listed on the Reference Data Set of the National Software Reference Library, as maintained by the National Institute of Standards and Technology ("NIST"),

16. **De-duplication:** Zimmer shall de-duplicate ESI within Custodial Files to the extent possible where a single document custodian has more than one identical copy of a document. Duplicate copies of the same document may be produced within a Custodial File where more than one system of record was used to process data due to the need to produce e-mails from Zimmer's e-mail archive and the pace at which Custodial Files must be produced. Where multiple document custodians each possess their own copies of an identical document, the document may be produced for each custodian in possession of the document.

17. **Translated Documents:** If any document produced by a party has an English language translation in the custodial or source file from which the document was produced, the party will produce both the original non-English document as well as the translation.

18. **Replacement Documents:** If a file or other document requires replacement, the producing party shall identify such file or document by appending an "R" to the Bates number accompanying such replacement. The producing party shall also identify such replacement files or documents in the cover letter accompanying such production.

19. **Previous Productions:** This Order does not require either party to re-produce or re-format any documents produced before the entry of this CMO4.

## II. Privileged Documents

### A. Privilege Logs

1. If a party withholds responsive documents based on a claim of privilege, that party must provide a privilege log in compliance with Federal Rule of

        Civil Procedure 26(b)(5)(A). Similarly, if a party redacts a responsive document , that party will provide a redaction log identifying each document that contains a redaction and the reason for the redaction.

    2**.**    The parties will produce privilege and redaction logs in Microsoft Excel format or a similar electronic format that allows for text searching and organization of data.

    3.    The parties will produce a privilege and redaction log within thirty (30) days of a production consistent with Case Management Order No. 3.

    4.    If a party produces a document that was previously identified in a privilege or redaction log, the party will do so separately from the rolling production and provide a key which identifies the privilege bates number and new bates number if they differ.

  **B.**    **Inadvertently Produced Documents:** The inadvertent production of any materials constituting or containing attorney-client privileged information or attorney work product shall not waive any claim of privilege. If a receiving party disclosed the document(s) or information contained in the document(s) before being notified of its inadvertent production, the receiving party shall take reasonable steps to retrieve that information until the privilege claim has been resolved. The parties shall follow the procedures in paragraph 12 of the Protective Order for any inadvertently produced documents.

**III.**    **Continuing Obligations of All Parties**

  **A.**    **Meet and Confer:** To expedite discovery of relevant electronic evidence and reduce each parties' costs, the parties' attorneys and IT professionals will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of computerized information. The parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The responsibility shall be continuing, unless otherwise ordered by the Court.

  **B.**    **Avoidance of Undue Burden or Cost:** A party may object to production of ESI that is not reasonably accessible because of undue burden or cost. In asserting this objection, the responding party will inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party an opportunity to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information. The parties will cooperate to ensure the burden and

      expense of discovery is proportionate to its likely benefit considering the needs of the case, as required under Federal Rules of Civil Procedure 26(b)(2)(C) and 26(g)(1)(B)(iii).

**C.**   **All Parties:** The obligations created by this stipulated order apply to both Zimmer and the individual plaintiffs in MDL No. 2272 where it refers to the parties. Although this Order does not provide a protocol for the production of ESI by individual plaintiffs, the requirements of the Federal Rules of Civil Procedure will govern until further order of the Court. This Order shall continue in full force and effect until order of the Court or until this litigation is terminated by a final judgment.

Dated: June 4, 2012

_____
Judge, United States District Court