UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2272 Master Docket Case No. 1:11-cv-05468 |
| This Document Relates To All Cases | ) | Honorable Rebecca Pallmeyer |

**PLAINTIFFS' MEMORANDUM OPPOSING ZIMMER'S ATTEMPT TO ENGAGE PLAINTIFFS' TREATING PHYSICIANS AS EXPERTS**

NOW COMES the Plaintiffs, by their counsel, and file the following memorandum in opposition to Zimmer's attempt to conduct ex parte communications with Plaintiffs' treating physicians for the purpose of engaging them as retained experts:

**INTRODUCTION**

Where, as here, the court's jurisdiction rests on diversity "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." (Federal Rule of Evidence 501) In personal injury actions Illinois law prohibits physicians from disclosing "any information acquired in attending any patient" without the written consent of the patient who brought the action (735 ILCS 5/8-802) and ex-parte discussions by defense counsel are strictly prohibited. *Petrillo v. Syntex Laboratories, Inc*., 148 Ill.App.3d 581 (1st Dist. 1986)

Plaintiffs have not consented. Plaintiffs object to Zimmer's attempt to circumvent the physician-patient privilege thru ex-parte communications with Plaintiffs treating physicians.

Using faulty logic and misapplied precedent, Zimmer attempts to persuade this Court to eviscerate the physician-patient privilege as governed under Illinois law. Zimmer, like a wolf in sheep's clothing, seeks to turn the privilege into a carcass with the allure that a properly fashioned Order will protect the Plaintiffs' expectations of confidentiality and loyalty inherent in

the physician-patient relationship. The Plaintiffs decline to rely on Zimmer's professed benevolence and prefer the shelter of a privilege which provides, except in rare cases, an absolute bar to communications outside of the discovery process. Zimmer has failed to substantiate any manifest injustice or prejudice that would warrant a dilution of the privilege and its request must be summarily denied.

**ARGUMENT**

**I.     Illinois rather than federal law governs the physician-patient privilege.**

Zimmer asserts that federal procedural law trumps state law (and in particular Illinois law) and authorizes Defendants to engage in ex parte communications with Plaintiffs' physicians. Zimmer's argument is wholly dependent upon its premise that in "a diversity case such as this, federal procedural law should control the parties' contact with witnesses."[1] Surprisingly, to buttress its contention, Zimmer cites *Patton v Novartis Consumer Health, Inc.*, No. 4/02-CV-0047, 2005 WL 1799509 (S.D. Ind., July 25, 2005).

Contrary to Zimmer's representation, the *Patton* court expressly recognized that principles of comity mandate that federal courts defer to state law with respect to the physician-patient privilege:

> The broad legal framework for this issue is clear. State law supplies the rule of decision in this case. Accordingly, under Federal Rule of Evidence 501, "the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." *Patton* at 1.

---

[1] Page 2, Defendants' Memorandum.

In *Patton*, the court applied Indiana law and determined that the defendant could engage in ex parte communication with a treating physician, not due to any federal superseding precedent, but simply as a result of the defendant's acknowledgement that the physician-patient privilege had been waived:

> In the *Shadur* case[2], federal law provided the rule of decision and governed the substance of the claimed privilege. The Seventh Circuit explained that in deciding such issues under federal law, comity should lead the federal courts to respect the state privilege. 664 F.2d at 1061. There is no issue of that type here, however. The parties agree that plaintiff Patton has waived the physician-patient privilege. *Patton* at 3.

As *Patton* involved a case where the privilege had been waived, it has no relevance to the matter at issue.

Nor is Zimmer's premise bolstered by its citation to *In re Aredia and Zometa Products Liability Litigation*, No. 3:06-MD-1760, 2008 WL 8576167 (M.D. Tenn., Jan 17, 2008). In *Aredia*, the magistrate adopted a state by state review of the privilege and concluded:

> As the instant case is a diversity action, the Magistrate Judge must ascertain and apply the substantive state physician/patient privilege law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); Fed.R.Evid. 501; *Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 296 (6th Cir.2007).

Accordingly, no reading of *Aredia* supports Zimmer's attempt to disregard state law with respect to this Court's recognition and enforcement of the privilege.

---

[2] *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir., 1981).

Under Rule 26 of the Federal Rules of Civil Procedure, parties are allowed to "obtain discovery regarding any matter, **not privileged**, that is relevant to the claim or defense of any party ...." [emphasis added] As there is no physician-patient privilege in federal diversity actions[3], the United States Supreme Court decision in *Erie*[4] mandates that state law controls the existence and scope of the physician-patient privilege." *In re Baycol,* 219 F.R.D. 468, 472 (D. Minn. 2003).

In *Benally v. United States,* 216 F.R.D. 478, 480 (D. Ariz. 2003), a Federal Tort Claims Act case, the government made a similar argument to the one Zimmer makes here, that federal common law permits *ex parte* contact with treating physicians. The court analyzed the Arizona doctor/patient privilege, and noted that "Arizona recognizes the physician-patient privilege, and interprets the privilege to prohibit *ex parte* interviews by defendant's counsel of plaintiff's treating physicians, as a matter of public policy and as a means to preserve the integrity of the privilege." *Benally* at 480. The court also stated that "[g]enerally, the courts have allowed such *ex parte* interviews only because the controlling state law does not provide for such a privilege and the federal rules do not expressly preclude such interviews." *Benally* at 480. The court held that "where the state law provided the rule of decision, and Arizona law of physician-patient privilege expressly prohibits *ex parte* interviews of treating physicians as a matter of public policy and to preserve the integrity of the privilege," *ex parte* contact is prohibited. *Benally* at 480-81.

Other federal courts, sitting in diversity in a state with a physician-patient privilege, have also found that *ex parte* interviews are not permitted. The Court in *Horner v. Rowan Cos.,* 153

---

[3] *Filz v. Mayo Found.,* 136 F.R.D. 165, 167 (D.Minn. 1991).

[4] *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

F.R.D. 597 (S.D. Tex. 1994) held that Texas law creates a waiver of privilege, "but only as to communications or records *relevant to* the issue of a plaintiff's medical condition when litigation relative to that condition is instituted." *Horner* at 601. The court required formal discovery, noting that this relieved the physician of the responsibility of determining what information remains privileged, "protects him from inadvertent liability, and protects any information still privileged by assuring plaintiff's representative will be in a position to timely assert the privilege where appropriate." *Horner* at 601-602.

Another diversity case, *Neubeck v. Lundquist,* 186 F.R.D. 249 (D. Me. 1999), reached the same result. There, the court noted that "in order to preserve the integrity of the privilege, a defendant must be limited to the formal mechanisms of discovery provided by the Federal Rules of Civil Procedure ...." *Neubeck* at 251. The court also found that a waiver of the privilege "is limited and a non-lawyer treating physician could easily be confused about the extent to which the waiver applies, unintentionally disclosing privileged information not relevant to any issue in the case." *Neubeck* at 251.

Finally, it must be noted that this case does not represent Zimmer's first attempt to sidestep the physician-patient privilege in a product liability case involving federal diversity. In *Lillego v Zimmer, Inc*., 2004 WL 2066772 (D. Minn., 2004), Zimmer argued that federal procedural rules preempted state law. The court held otherwise, barring Zimmer's attempt to engage in ex parte contact finding that the privilege was governed and protected by a Minnesota statute.

**II.      Under Illinois law, the Petrillo Doctrine bars Defendants from engaging in ex parte communications with treating physicians.**

Under *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581 (1st Dist. 1986) and its progeny, Illinois courts have consistently protected the sanctity of the physician-client relationship and a defendant is banned from conducting ex parte communications with a treating doctor without the plaintiff's express consent.

In the years following the decision in *Petrillo,* all five districts of the Illinois appellate court have followed the decision and, although the specific application of *Petrillo* to various facts has differed in some respects, "the fundamental holding that ex parte discussions between defense counsel and plaintiff's treating physician shall be conducted only through authorized methods of discovery has been overwhelmingly approved in subsequent Illinois Appellate Court cases." L. Bonaguro & M. Jochner, *The Petrillo Doctrine: A Review and Update,* 83 Ill. B.J. 16, 16 (1995).

The Illinois Supreme Court has affirmed the basic tenets of *Petrillo* and held that *Petrillo* is based on privacy rights found in the Illinois Constitution:

> "We believe that the rationale of the *Petrillo* court is sound and that there is a strong public policy against *ex parte* conferences between the plaintiffs' health care practitioners and defendants or their representatives. We further believe that the privacy interest referred to in the "certain remedy" clause of section 12 (of the 1970 Illinois Constitution) provides a constitutional source for the protection of the patient's privacy interest in medical information and records that are not related to the subject matter of the plaintiff's lawsuit. We acknowledge that the certain remedy provision has been referred to in general as a statement of philosophy rather than a guarantee of a specific remedy.(citation omitted) Nonetheless, we believe that a statement of "constitutional

philosophy" is reflective of the strong public policy that was recognized in *Petrillo*. Therefore, we conclude that patients in Illinois have a privacy interest in confidential medical information, and that the *Petrillo* court properly recognized a strong public policy in preserving patients' fiduciary and confidential relationship with his or her physicians." *Best v. Taylor Mach. Works,* 179 Ill.2d 367 at 458-459 (1997)

The premise of the Petrillo Doctrine is that *ex parte* communications between doctors and defense counsel violate the confidential nature of the doctor-patient relationship. As one might expect, a physician is ethically bound to keep a patient's information confidential unless the patient has consented to its release. *Petrillo*. at 588-593. Moreover, the public, and specifically the patient, has the right to rely on physicians to adhere to their ethical obligations and protect the confidential relationships they have with the patient. *Petrillo*. at 592.

An *ex parte* communication is defined as any contact between defense counsel and a plaintiff's treating physician that falls outside the formal methods of discovery. *Petrillo* at 584. Aside from these established discovery mechanisms, such as sending subpoenas for records and setting depositions, defense counsel and a plaintiff's treating physician are to have absolutely no contact. *Karsten v. McCray*, 157 Ill. App. 3d 1, 14 (2nd Dist., 1987); *see also, Pourchot v. Commonwealth Edison Co.*, 224 Ill. App. 3d 634, 637 (3d Dist. 1982) (prohibiting even harmless contact between defense counsel and plaintiff's treating physician regardless of whether conducted in good faith).

The confidential nature of the physician-patient relationship is so important that courts prohibit *ex parte* communications between defense attorneys and doctors even in situations where the doctor does not disclose any patient confidences. *Mondelli v. Checker Taxi, Co*, 197 Ill. App. 3d 258, 265 (1st Dist., 1990). By doing so, courts have chosen to prevent situations

wherein confidences might be divulged by a doctor to his patient's adversary. *Mondelli* at 265. Simply put, the physician-patient relationship is far too important to permit physicians to converse with defense attorneys, regardless of whether or not the physicians intend to divulge the confidences of their clients.

For example, in *Wakeford v. Rodehouse Restaurants of Missouri*, 223 Ill. App. 3d 31, 45-6 (5th Dist., 1992), the Fifth District barred the testimony of a rehabilitation counselor who spoke with defense counsel simply because the counselor was privy to plaintiff's medical file and therefore "possessed and had accesses to the confidences of the patient and his treating physician." In its decision, the court provided the following rationale underlying its stringent prohibition against *ex parte* communications between a physician and patient:

> The situation ... is one that plaintiff's lawyers face all too frequently. The plaintiff's doctor has huddled with defense counsel, but it is unknown whether privileged information was disclosed. The doctor has thrown his or her allegiance to the defense, but it cannot be known whether improper influences were at work. The testimony itself violates no rule of evidence or privilege, and yet, the prejudice to the plaintiff's case is devastating. Wakeford at 45.

In other words, under Illinois law, *ex parte* communications between defense counsel and physician are barred because they "are potentially harmful to the interests of the patient in that the physician might disclose intimate facts regarding the patient which are unrelated and irrelevant to the mental or physical condition placed at issue in the lawsuit. *Mondelli*, at 261; *Karsten* at 14.

The Plaintiffs' doctor-patient relationship predated this litigation, and extends to communications about medical conditions and treatment beyond the subject of this litigation.

The relationship is legally protected to prevent the "chilling" effect on medical care if an adversary in litigation can obtain unfettered access to confidential information without passing the scrutiny of Plaintiffs' counsel.

### III. The Petrillo Doctrine should be applied to all cases in the MDL.

*In Baycol*, the Court applied Minnesota law to all MDL cases and thereby prohibited *ex parte* communications between defendants and plaintiffs' treating physicians for all claims involved, regardless of their state of origin.

Similarly, *In re Vioxx*, 230 F.R.D. 473 (E.D. Lou. 2005), the Court acknowledged that in individual diversity cases the physician-patient privilege would be determined in accordance with the forum state law for each separate claim, but ruled that it was in the interest of the MDL to uniformly apply the law of the state of the federal court in order to promote the streamlining function of MDL consolidation. *In re Vioxx* at 475.

There is no reason that the Illinois rule should not apply to this litigation – to wit: defendants may only communicate with plaintiffs' treating physicians via discovery rules.

### IV. Zimmer's proposed Order violates the Petrillo Doctrine.

Zimmer does not dispute that substantive *ex parte* communications between Zimmer's counsel and plaintiffs' treating physicians are generally improper under Illinois state law as well as the law of other states.[5] To avoid compliance, Zimmer proposes to limit its communications with a plaintiff's physician to medical issues not directly involving such plaintiff's care. In essence, Defendants propose to inquire with each of plaintiffs' physicians as to their general opinion as to the design of Zimmer's artificial knee and to their general opinion as to whether they generally implant it correctly. Apparently, Zimmer believes that as long as a physician

---

[5] Page 2, Defendants' Memorandum.

discusses a patient's medical treatment in a generic sense, there is no violation of the privilege. Zimmer's position demonstrates a lack of understanding and respect for the physician-doctor relationship.

The special relationship between a patient and her doctors has been "recognized and protected in both Western and Eastern civilization for over 2000 years." *In re Vioxx Products Liability Litigation*, 230 F.R.D. 473 (E.D.La. 2005). It rests on a privilege of confidentiality that belongs to the plaintiff, as the patient, and she is the only party with the right to waive it.

Doctors have ethical obligations to their patients. Zimmer's attempt to pay them as retained experts poisons the doctors and sets them directly in conflict with the interests of their patients. As noted above, each treating physician owes her a duty of confidentiality based on the doctor-patient privilege. *Vioxx* at 476-77. Those duties may go further – in *In re Accutane at Lit.*, Case No. 271, p. 11, 12 (N.J. Super. Ct. July 1, 2010), the court held that "physicians have an [affirmative] ethical duty to communicate with [the] patient and the patient's representative, and to aid [the] client in litigation." The court went on to suggest that the physician's duty to help his patient in litigation also "includes a duty to refuse affirmative assistance to the patient's antagonist in litigation." *Accutane* at 11, citing *Stempler v. Speidell*, 100 N.J. 368, 381 (1985); *see also In re Vioxx* at 476 (Judge Fallon observed that treating physicians can serve as both fact and expert witnesses for the plaintiffs). If a plaintiffs' treating physician were to testify as an expert for the defense *against* the plaintiff, the physician would be acting contrary to the interests of his or her own patient.

Zimmer's proposal to bar treating physicians that are hired as retained experts from testifying against their own patients will not solve the conflict. First, that same expert will have to testify in the plaintiff's trial as a witness despite being on Zimmer's payroll in connection with

this MDL litigation. That pecuniary interest creates an inherent bias and conflict against fulfilling the physician's duties to his patient in connection with the litigation. Second, if the physician testifies as Zimmer's generic retained expert in bellwether trials against representative plaintiffs, the physician is necessarily providing affirmative assistance to Zimmer contrary to the patient's interest.

The problem is exacerbated when the treating physician may be an important fact witness. *See Meyers v. National R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729 (7th Cir. 2010) (delineating circumstances in which doctors are fact witnesses and when they are expert witnesses subject to report requirements). Zimmer's retention and preparation of such a doctor as an expert will inevitably compromise the doctor's role as a fact witness, even where the doctor does not testify as an expert in the plaintiff's particular case. Defendants' attempt to hide this conflict of interest under the guise that the doctor would only be working with Zimmer on "some other case" does not change this analysis because the issues of liability and causation are identical in all of these cases. In short, the treating doctor would be working for his/her patient's adversary concerning the very litigation in which his/her patient is a party. That situation is contrary to the duty of loyalty a doctor owes to his/her patient and cannot be allowed.[6]

Zimmer's attempt to consult with and then turn treating physicians against their patients is manifestly abhorrent. Allowing Zimmer to hire a treating physician as a retained expert to give opinions adverse to her patient would drive a wedge in the doctor-patient relationship. Zimmer's application also opens the door for defendants' counsel to engage in confidential *ex parte* communications with these treating doctors and invites overreaching. There are no

---

[6] Even if plaintiffs' physician are hired as consulting experts and do not ultimately testify the conflict remains, due to the fact that they were paid by Zimmer to express an opinion that is contrary to their patients' position in this litigation.

exceptional circumstances justifying this unwarranted intrusion into pre-existing confidential doctor-patient relationships. The Court should reject Zimmer's approach in its entirety.

### V. Zimmer's request to interrogate Plaintiffs' physicians amounts to a fishing expedition.

No explanation is provided as to why this Court should sanction Zimmer wholesale interrogation of plaintiffs' physicians where: "Zimmer should be free to consult with potential experts about his or her general knowledge and experience, as well as about specific cases that are filed by non-patients."[7] It is suggested that prior to violating the plaintiffs' confidences with their physicians, Zimmer must first demonstrate that there are no qualified experts otherwise available. Zimmer undoubtedly has access to countless physicians and experts around the country (and the world) who are qualified to assist in its defense. As currently tendered, Zimmer's Motion does not provide any claim of inherent injustice that would outweigh the privelege.

*In re Kugel Mesh Hernia Repair Patch Litigation*, 2008 WL 4372809 (D.R.I. 2008). the court had barred substantive *ex parte* communication between defense counsel and plaintiffs' treating physicians, but defendant nonetheless sought the right to retain such doctors as expert witnesses, subject only to the limitation that it would not discuss the medical history of the expert's own patient-plaintiff with that expert. The court rejected this proposal, noting that "any potential inconvenience to defendants in engaging experts was significantly outweighed by plaintiffs' right to confidentiality in their medical matters." 2008 WL 4372809, at 1. *See also Miles v. Farrell*, 549 F.Supp. 82, 84 (N.D. Ill. 1982) (because treating physician "owed his

---

[7] Pages 3-4, Defendants' Memorandum.

patient a duty of confidentiality, fiduciary in nature," he was precluded from testifying as defense expert in malpractice case in which patient was the plaintiff).

Zimmer cites *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2008 WL 821889 (M.D. Fla. Mar. 21, 2008) to support its backdoor effacement of the privilege. In *Seroquel*, the defense demonstrated an actual dramatic limitation in their expert pool, which the Defendants in the matter at hand have failed to do. However, even in allowing the defendants to retain plaintiffs' physicians, Judge Baker noted that "[t]he [c]ourt is mindful of the potential for misuse of this authorization, the danger of inappropriate communications and the possibility of conflicts and complexities as the cases develop and the varying roles of physicians intertwine." *In re Seroquel* at 7. Plaintiffs aver that the potential for such consequences is greater in this case, and therefore such safeguards are simply not enough to ensure the sanctity of the privilege.

It is difficult to comprehend how Zimmer's defense would be compromised absent the elimination of the privilege. In regard to the design of its device, it can be assumed that Zimmer already possesses all the information and input it has previously received from physicians it utilized in the past. Although its Memorandum references Dr. Aaron Rosenberg and mentions that he was on the CR-Flex and Gender design teams, Zimmer fails to proffer that his testimony would be critical to Zimmer's defense and that no other members of its design teams are available to provide such testimony.[8]

Undoubtedly, Zimmer has already engaged an army of experts to prepare its defense of its product and Zimmer's motion can only be viewed as an attempt to influence the testimony of the plaintiffs' treating physicians. Even if a benign motive could be gleaned from its affront to

---

[8] See footnote on page 2 of Defendants' Memorandum.

the physician-patient privilege, Zimmer's proposal if granted would constitute a patent violation of the trusts and confidences which the Plaintiffs are entitled to maintain with their physicians.

For the reasons outlined above, plaintiffs urge the Court to bar defendants from engaging in ex parte communications with plaintiffs treating physicians for any purpose, including but not limited to negotiating with them to work as expert witnesses.

Dated: June 14, 2012

Respectfully submitted,

**FOOTE, MEYERS, MIELKE & FLOWERS, LLC**

/s/ Peter J. Flowers
Peter J. Flowers Foote,
Meyers, Mielke & Flowers
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Phone: (630) 232-6333
Fax: (630) 845-8982
Email: pjf@foote-meyers.com

*Plaintiffs' Co-Lead Counsel*

Tobias L. Millrood, Esq.
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Phone: (610) 941-4204
Fax: (610) 941-4245
Email: tmillrood@pbmattorneys.com

James R. Ronca, Esq.
Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.
1710 Spruce Street Philadelphia, PA 19103

- 14 -

- 15 -

        Phone: (215) 735-1130
        Fax: (215) 875-7700
        Email: jronca@anapolschwartz.com

        Timothy J. Becker, Esq.
        Johnson Becker PLLC
        33 South Sixth Street, Suite 4530
        Minneapolis, MN 55402
        Phone: (612) 333-4662
        Fax: (612) 339-8168
        Email: tbecker@johnsonbecker.com

        ***Plaintiffs' Liaison Counsel***

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 14, 2012, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the Court.

                                                   /s/ Peter J. Flowers