UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to All Cases | ) ) | Master Docket Case No. 1:11-cv-05468 |
| | ) ) | Honorable Rebecca Pallmeyer |

**ZIMMER'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER CONCERNING ZIMMER'S CONTACT WITH AND USE OF TREATING PHYSICIANS AS DEFENSE EXPERTS**

**INTRODUCTION**

Zimmer needs to engage and communicate with physician-experts to prepare its defense in the cases consolidated in MDL-2272. Once Zimmer learned that some potential expert witnesses specializing in total knee arthroplasty were listed in Plaintiff Fact Sheets as implanting or revision surgeons, Zimmer filed a motion to confirm its right to retain and communicate with physician-experts in matters where the physician had treated a plaintiff named in a different matter. Zimmer did so (1) in recognition of the importance of the physician-patient privilege, and (2) because the pool of physicians specializing in total knee arthroplasty and qualified to serve as a testifying expert witness is extremely limited, while the number of treating physicians disclosed by the plaintiffs is large and growing.

In response, Plaintiffs overreach, seeking a blanket prohibition of *all* communications with *any* of the 549 or more knee replacement physicians who have treated *any* of the 424

plaintiffs in MDL-2272.[1]  Plaintiffs do so despite the facts that (1) their prohibition unfairly limits the pool of potential defense experts by 549 or more, (2) the potential expert(s) will possess no confidential information about the patient in the matter in which he/she would testify, and (3) many of the potential experts have knowledge of facts and relationships with Zimmer that pre-date their treatment of a plaintiff who happens to have filed suit in a matter within MDL-2272.

Moreover, Plaintiffs' response confuses the sole issue before this Court: *whether Zimmer may retain a physician-expert in one case where the physician-expert treated an individual named as a plaintiff in a different case*.  Under these circumstances, no physician-patient relationship exists between the plaintiff and the defense expert, and neither *Petrillo* nor any other law prohibits Zimmer's retention of (and communication with) the expert.

This Court should establish the parameters within which Zimmer may retain and communicate with physician-experts who have treated a plaintiff in an unrelated matter consolidated under MDL-2272.  Under these circumstances, no physician-patient relationship exists between the plaintiff and the defense expert, and courts regularly enter precisely the order that Zimmer seeks.  Absent such an order, the real risk is not that a physician will disclose privileged communications about a patient's medical care (as plaintiffs suggest), but rather that the opinions of some 549 physicians - based on experience with the products that are the subject of this litigation - will be silenced.  Accordingly, the Court should decline plaintiffs' invitation to block Zimmer's access to qualified experts specializing in total knee arthroplasty.

---

[1] Zimmer is a named defendant in 530 individual federal cases consolidated (or proposed for consolidation) in MDL-2272.  Plaintiffs have identified 549 physicians as implanting and/or revision physicians to date, though there are likely to be far more if plaintiffs' representation that some 1,000 cases will become part of this MDL are accurate.

## ARGUMENT[2]

I.  **Illinois Law Concerning The Physician-Patient Privilege Does Not Control Zimmer's Retention Of Experts In This MDL.**

This Court should decide as a matter of federal procedural law when and how Zimmer's counsel may communicate with witnesses, including physicians. In doing so, the Court – as other courts have done – of course may consider state laws as a matter of comity. But the plaintiffs are wrong to cast this issue as one of simply state law. This Court has the discretion to and should fashion an order that allows Zimmer to communicate with potential experts within parameters that protect the confidentiality of patients in unrelated matters that happen to be consolidated in MDL-2272 for discovery.[3] Neither *Petrillo* nor any other state common law cited by plaintiffs addresses this Court's discretion to do so, as a number of other MDL courts have successfully done.

Plaintiffs wrongly disparage Zimmer's characterization of *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-cv-0047, 2005 WL 1799509 (S.D. Ind. 2005), in which Judge Hamilton held that "the right to conduct such [*ex parte*] interviews is taken for granted as a matter of federal procedure." *Patton,* 2005 WL 1799509, at *3. In setting aside the magistrate's decision prohibiting defense counsel from engaging in *ex parte* discussions with treating physicians, the court did not – contrary to plaintiffs' assertion – simply apply Indiana law without regard to federal precedent and conclude that the privilege had been waived. Rather, while the court noted

---

[2] As an initial matter, Zimmer notes that the only issue currently before the Court concerns Zimmer's motion to enforce its right to retain treating physicians as defense experts in cases where the plaintiff has not been treated by the expert-physician. The parties have not met and conferred on the issue of *ex parte* communications with treating physicians by either defendants or plaintiffs. Despite this fact, plaintiffs request the Court to "bar defendants from engaging in *ex parte* communications with plaintiffs treating physicians for any purpose." (Plaintiffs' Memo p. 14.) That issue is not presently before the Court. Plaintiffs' request should be seen for what it is - an improper attempt to circumvent the procedures mandated by this Court and deprive Zimmer of a fair opportunity to address the issue.

[3] As discussed below, Zimmer disputes that under Fed. R. Evid. 501, the law of Illinois concerning the physician-patient privilege would apply to all cases in this MDL.

3

that the parties agreed that the physician-patient privilege had been waived, the court also considered and relied on earlier decisions concluding that (1) state rules of procedure did not control discovery in a federal civil case, and (2) the Federal Rules of Civil Procedure gave the court discretion to decide the question. *Patton,* 2005 WL 1799509, at *2.

Moreover, plaintiffs' attempt to invoke substantive state privilege laws confuses the issue. The court in *Patton* noted that when a plaintiff puts his physical condition at issue he has waived the privilege as to any related medical conditions, and federal law governs the procedure for discovering information no longer privileged. *Patton*, 2005 WL 1799509, at *2. Plaintiffs likewise have waived the physician-patient privilege under most states' laws; however, again, no privileged information is at stake here given the limitations proposed by Zimmer which (1) preclude Zimmer from engaging in *ex parte* communications with a physician-expert about any of his or her patients involved in the MDL, and (2) prevent Zimmer from using a physician as a consulting or testifying expert in a case where that physician's present or former patient is a plaintiff in that particular case. Put simply, Zimmer would not be engaging in *ex parte* communications with a treating physician about his or her patient, and any information learned in any event cannot be used in the patient's own case. Even under the plaintiffs' reading of *Patton* there is no credible argument that a state law controls and prohibits the engagement.

Plaintiffs cite a number of cases concerning *ex parte* contact with treating physicians and appear to argue that *Patton* is inapplicable because they claim that plaintiffs in this MDL have not waived the privilege. Plaintiffs' argument is an inappropriate attempt to invoke the privilege of one patient as a means to bar Zimmer's retention of physician-experts in all MDL cases. No authority cited by plaintiffs supports that position.

II. **The *Petrillo* Doctrine Does Not Bar Zimmer's Retention Of A Physician-Expert In Matters Not Involving The Physician's Patient.**

A. ***Petrillo* does not prohibit Zimmer's counsel from retaining/contacting a physician in a case where the plaintiff is not a patient of the physician.**

Plaintiffs rely heavily on *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (Ill. Ct. App. 1986), and its progeny for their contention that Zimmer should be prohibited from communicating with any of the 549 or more treating physicians disclosed in MDL-2272. (Pl. Memo p. 6.) However, of critical importance is the fact that neither *Petrillo* nor any of the other cases cited by plaintiffs even speak to the retention of treating physicians as defense experts in cases where no physician-patient relationship exists. To the contrary, all of the cases cited by plaintiffs involved the issue of *ex parte* communications with a treating physician in the course of the *plaintiff-patient's own case*. Not one of the cases cited by plaintiffs fairly can be read to prohibit the retention of a physician as a defense expert because the physician treated an individual who is a plaintiff in a *different* lawsuit.[4]

In fact, unlike the defendant in *Petrillo* who could not identify information or evidence that he could obtain through an *ex parte* conference, but which he could not obtain via the conventional methods of discovery, here, by its very nature, the expert consultation and information Zimmer seeks cannot be obtained through conventional discovery. *Petrillo*, 499 N.E.2d at 586-87. Indeed, Rule 26(a)(2) by its very nature contemplates that a party will obtain information from its experts outside the presence of opposing counsel and, therefore, provides

---

[4] Zimmer acknowledges that the Court in *In re Kugel Mesh Hernia Repair Patch Litigation*, 2008 WL 4372809 (D.R.I. 2008), rejected defendants' efforts to retain treating physicians as defense experts. However, the majority of courts faced with the issue have decided otherwise. *See, e.g., In re Seroquel Prods. Liab. Litig.*, No. 6:06-MDL-1769-ACC-DAB, 2008 WL 821889, at *3-5 (M.D. Fla. Mar. 21, 2008); *In re Prempro Prods. Liab. Litig.,* No. 4:03CV1507WRW, D.E. 942 at 1 (W.D. Ark. Dec. 7, 2005); *In re Pelvic Mesh/Gynecare Litigation*, No. A-5685-10T4, 2012 WL 1957932 (N.J. Super. A.D. June 1, 2012); *Accord In Re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183 (Hennepin County, Minn. May 11, 1998). Zimmer's proposed order mirrors those successfully implemented in those matters.

5

for disclosure of certain expert information prior to trial concerning a testifying expert. The identity and information obtained from a consulting expert, however, remains confidential.

Moreover, the focus of the privilege and prohibition recognized by some states concerning *ex parte* communications is not the physician, but the patient-plaintiff's communication to his/her physician about their condition.[5] Thus, privileged information is that which the physician learns from or about his/her patient. The physician's general knowledge and experience are not privileged.

B.     **None of the reasons provided by plaintiffs justify denial of Zimmer's proposed order.**

Zimmer's proposed order includes measures addressing plaintiffs' concerns about any potential disclosure of physician-patient information. Among other measures, Zimmer's proposed order prevents Zimmer from using a physician as a consulting or testifying expert in a case where that physician's present or former patient is a plaintiff. Plaintiffs assert three arguments in opposition to Zimmer's proposed order.[6] (Pl. Memo p. 9-11).

First, plaintiffs argue that Zimmer's retention of a treating physician as a defense expert will cause the physician inherently to be biased when called to testify in the patient-plaintiff's own case due to a pecuniary relationship with Zimmer. However, plaintiffs ignore that (1) the physician's observations as a fact witness are just that – facts – which are the subject of

---

[5] In prohibiting "extra-judicial, *ex parte* discussion of a patient's medical confidences," the Court in *Petrillo* sought to protect from disclosure without a patient's consent "information disclosed during the physician-patient relationship." *Petrillo*, 499 N.E.2d 952, 957-59 ("the physician, by engaging in such [ex parte] conference, discusses the patient's confidences without the consent of the patient. To this end, the physician divulges to a third party information which the patient originally disclosed to the physician .….")

[6] Plaintiffs state that" Zimmer does not dispute that substantive ex parte communications between Zimmer's counsel and plaintiffs' treating physicians are generally improper under Illinois state law as well as the law of other states." (Pl. Memo p. 9). Zimmer acknowledges that *some* states have enacted statutes recognizing a physician-patient privilege and prohibit the disclosure of confidential information without the patient's consent. Not all states, however, recognize a physician-patient privilege. *See, e.g., Weiss v. Astellas Pharma, US, Inc.*, No. 05-527-JMH, 2007 WL 2137782, at **2, 6 (recognizing the absence of a physician-patient privilege in Kentucky and allowing defendants' counsel to have *ex parte* contact and communications with plaintiff's treating physicians).

6

contemporaneous medical records and to which the physician must testify under oath, (2) both parties have the opportunity to discover and explore on cross-examination any alleged bias, including that arising from compensation in other matters, and (3) the physician may have a pre-existing relationship with Zimmer, and it would be unfairly prejudicial to Zimmer to prohibit Zimmer from relying on the physicians most familiar with the *NexGen* Flex products. Contrary to plaintiffs' claim, there is no legal authority to support the proposition that a pecuniary relationship with the defendant prohibits the witness's employment as an expert witness.[7]

Second, plaintiffs assert that a physician who testifies as a defense expert in bellwether trials is necessarily providing affirmative assistance to Zimmer contrary to the patient's interests. In support, plaintiffs cite to a superior court decision issued in *In re Accutate Litigation*, Case No. 271 (N.J. Super. Ct. July 1, 2010) (citing *Stempler v. Speidell*, 100 N.J. 368, 381 (1985)), for the proposition that a physician's duty to help his patient in litigation may also "include a duty to refuse affirmative assistance to the patient's antagonist in litigation."[8] (Pl. Memo. p. 10). Plaintiffs assertion is misplaced and fails to appreciate the recent holding in *In re Pelvic Mesh/Gynecare Litigation*, --A.3d.--, 2012 WL 1957932 (N.J. Super. A.D. June 1, 2012), in which the New Jersey Appellate Division addressed the issue presently at hand: the defendants ability to consult with and retain as defense experts physicians who had at any time treated one or more plaintiffs in the mass tort proceedings. In reversing the decision of the trial court barring the defendants from retaining treating physicians as defense experts, the Appellate Division

---

[7] Additionally, plaintiffs' assertion that physicians will be inherently biased and conflicted against fulfilling their duties to a patient because they will be compensated by defendants unjustifiably denigrates the medical profession. Plaintiffs' experts also are compensated, and both are bound by ethical duties of honesty and truthfulness.

[8] Plaintiffs reliance on *In re Accutate* and *Stempler* to support its conclusion is inappropriate. On appeal, the Court in *In re Pelvic Mesh* noted the court in *Stempler* did not adopt the statement – that a physician's duty to his patient "includes a duty to refuse affirmative assistance to the patient's antagonist in litigation" - as the law of New Jersey. Rather, the court in *In re Pelvic Mesh* noted that the court's ultimate holding in *Stempler* – that defense counsel may informally interview treating physicians – leaves within the physician's discretion whether to cooperate with the defense. 2012 WL 1957932, at *9.

7

concluded that the prior ruling was a mistaken exercise of authority and inappropriately equated a plaintiff's "litigation interests" with a patient's "medical interests," elevating those "litigation interests" to a preemptive level not previously recognized by binding authority. *In re Pelvic Mesh/Gynecare Litigation*, 2012 WL 1957932, *5.

Similar to the plaintiffs in this lawsuit, the plaintiffs in *In re Pelvic Mesh/Gynecare Litigation* also argued that retention of a treating physician as a defense expert "could interfere with the doctor-patient privilege."[9] However, the court stated:

> The key issue in this appeal is not whether the physician-patient privilege prevents engagement of a treating physician as an expert for the defense. The issue is whether some other rule or judicial or public policy categorically bars a treating physician from serving as an expert witness against the "litigation interests" of his or her patient, although in a different case.

*Id.* at, **4-5.

Moreover, to the extent plaintiffs claim a proprietary right to a physician's testimony, it is well established, that "there is no proprietary interest in the testimony of a treating physician and plaintiff has no right to prevent a treating physician from testifying as to opinions in a deposition or in court, regardless of whether those opinions run counter to plaintiffs' theory of the case." *Tucker v. John R. Steele and Assoc., Inc.*, No. 93 C 1268, 1994 WL 127246, at *3 (N.D. Ill. April 12, 1994); *See also In re Pelvic Mesh/Gynecare Litigation*, 2012 WL 1957932, **6, 9 (N.J. Super. A.D. June 1, 2012) (stating that "in many types of personal injury cases, physicians who testify for the defense or consult with defense counsel provide those services contrary to the interests in litigation of other patients they have treated or continue to treat…. Our system of

---

[9] The court stated that the physician-patient privilege had limited significance in the dispute. The court noted that the plaintiffs had waived a claim of privilege with respect to any medical condition relevant to their claims in the lawsuit and further, that a treating physician can be compelled to testify as a fact witness regarding those subjects. *Id.* at *4. The court also stated that physicians can be expected to understand they are subject to ethical constraints against disclosure of confidential patient information and noted that as proposed by defendants, physicians would be instructed about the continuing confidentiality of patient information. *Id.* at *5.

8

civil justice does not bar a physician from expressing a position in litigation of one plaintiff that is contrary to the "litigation interests" of a current or past patient in another case"…"we disavow any suggestion that a physician…has a duty to support substantively a litigant's claims or defenses.")

Likewise, in *Patterson v. Caterpillar, Inc*., 70 F.3d 503 (7th Cir. 1995), the plaintiff challenged the district court's decision to allow the testimony of one of his treating physicians, despite the plaintiff's attempt to assert a physician-patient privilege. While the court noted that the cause of action involved federal questions and no physician-patient privilege is recognized under federal common law, the court also analyzed the issue under Wisconsin state law, holding that plaintiff could not avail himself of the physician-patient privilege because *none of the physician's testimony contained information covered by the privilege*. *Patterson,* 70 F.3d at 507 (emphasis added). At trial, the district court limited the physician's role to expert testimony regarding the nature of a medical condition and information available to the defendant at the time it decided to terminate plaintiff's benefits. The court noted that "[a]lthough he was one of Patterson's treating physicians, Dr. Terry offered no testimony based on this physician-patient relationship." *Patterson*, F.3d at 507, n.1. Patterson also argued that contacts between defense counsel and the physician, constituted *ex parte* communication sufficient to bar the physician's testimony. However, the court noted that (1) a patient does not have the right to prevent his treating physician from engaging in any conversation outside a judicial proceeding simply because confidential information could potentially be imparted, and (2) the physician was free to speak with defense counsel and testify on behalf of the defense. *Patterson,* F.3d at 507. Thus, even where a physician-patient relationship exists, a plaintiff cannot silence the treating physician's opinions in his or her own case and should not be allowed to do so in another's case.

9

Last, plaintiffs assert that Zimmer's proposal "opens the door for defendants' counsel to engage in confidential ex parte communications" and invites overreaching. This argument inherently assumes that Zimmer's counsel will violate this Court's order which, should the Court enter the order as proposed by Zimmer, would prohibit Zimmer from engaging in *ex parte* communications with defense experts about plaintiff-patients. Both physicians and lawyers are professionals, subject to discipline if they abuse the occasion of the communication by engaging in *ex parte* discussion of a particular patient's medical condition in violation of the Court's order. It simply cannot be presumed that defense counsel will attempt to do so.

### III. This Court Should Permit Zimmer To Retain Treating Physicians As Defense Experts As Other MDL Courts Have Done.

#### A. Even if it addressed the present issue, *Petrillo* would not control simply because this MDL Court is sitting in diversity in Illinois.

Despite the fact that *Petrillo* is inapplicable to the present issue, plaintiffs contend that this Court should apply the physician-patient privilege and *Petrillo* doctrine recognized under Illinois law to all cases in this MDL. (Pl. Memo p. 9.) Assuming for purposes of argument that state law governs the issue at hand as plaintiffs contend, it would be incorrect for the Court to rely on Illinois law as being dispositive to all cases. As this litigation is in a transferee court, the relevant state law concerning the physician-patient privilege must be determined by applying the choice-of-law rules of the states where the actions were originally filed. *Chang v. Baxter Healthcare Corp.,* 599 F.3d 728, 732 (7th Cir. 2010) ("when a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred.").

Plaintiffs state that the Court in *Baycol* "applied Minnesota law to *all* MDL cases and thereby prohibited ex parte communications between defendants and plaintiffs' treating

physicians for *all* claims involved regardless of their state origin." (Pl. Brief p. 9) (emphasis added). Plaintiffs' assertion is simply not true. To the contrary, the order issued in response to defendants' motion to conduct informal *ex parte* interviews of plaintiffs' treating physicians applied to only six cases in the MDL – all of which had a Minnesota plaintiff resident. Stated another way, the law at issue was Minnesota and the physician-patient privilege recognized under Minnesota law. The Court did *not* apply Minnesota law to all MDL cases regardless of the state of origin. Copies of the relevant court orders are attached as Exhibit A.

      Likewise, plaintiff's reliance on *In re Vioxx* is similarly misplaced and does not support the conclusion that this transferee Court can simply apply Illinois law to all cases in the MDL. The Court in *In re Vioxx*, 230 F.R.D. 473 (E.D. Lou. 2005), was confronted with a motion to modify an earlier order requiring all attorneys wishing to interview a plaintiff's prescribing physician to serve liaison counsel for the opposing party with prior notice of such interview and provide opposing counsel with an opportunity to participate in the interview. Plaintiffs sought modification of the Order. Here, plaintiffs contend that while the court in *In re Vioxx* acknowledged that in individual diversity cases the physician-patient privilege is determined in accordance with the forum state law for each separate claim, the Court "ruled that it was in the interest of the MDL to uniformly apply the law of the state of the federal court [Louisiana] in order to promote the streamlining function of MDL consolidation." (Pl. Memo p. 9.) Again, plaintiff's assertion is simply not accurate. While the court engaged in a discussion of the physician-patient relationship, the court did not expressly discuss or conclude that Louisiana law governed the issue as to all consolidated cases. On the contrary, while the court ultimately revised its earlier order to protect the physician-patient relationship, the court recognized that the issue was "a discovery issue and not a substantive one." *Id.* at 475.

    **B. Plaintiffs are seeking to impede the truth seeking function of the court system by relying on inapplicable physician-patient privilege concerns and abuse the MDL process.**

In closing, plaintiffs suggest that "prior to violating the plaintiffs' confidences," the burden lies with Zimmer to prove the absence of qualified experts available to Zimmer. (Pl. Memo p. 12-13). However, this argument misses the mark: there is no barrier to Zimmer's proposed communications and no authority supports plaintiffs' claim that Zimmer must first prove a lack of available expert witnesses. For the reasons set forth above, Zimmer's consultation with and retention of a physicians as a defense expert in the manner proposed by Zimmer does not violate a patient's confidences.

As of Friday, Zimmer was a named defendant in 530 individual federal cases that assert Flex allegations related to this MDL. Of those cases, 549 physicians have been identified as implanting and/or revision physicians, and the number of treating physicians will grow if plaintiffs' representations of 1,000 cases becoming a part of this MDL are accurate. An order barring Zimmer from retaining as an expert any physician who has treated any plaintiff in the MDL, thus, would severely impact Zimmer's ability to prepare its defense.

Moreover, the problem is not just one of numbers but rather, which physicians are disqualified. Plaintiffs seek to disqualify 549 knee replacement surgeons as potential Zimmer experts, including those who frequently use and/or helped to design the products at issue. Plaintiffs further seek to prohibit contact with physicians with whom Zimmer has long-standing business relationships. Zimmer has a fundamental right to use the experts of its choosing. And, just as Zimmer could not prohibit plaintiffs from retaining those 549 physicians as experts, plaintiffs should not be permitted to do so either. At best, plaintiffs attempt to require Zimmer to

12

demonstrate a lack of qualified experts is an attempt by plaintiffs to compel Zimmer to reveal its confidential work product and thought process.

There is no legal basis to support the conclusion that plaintiffs seek – that Zimmer be barred from communicating with a physician because the physician happened to treat a plaintiff in this MDL. Plaintiffs' position that a plaintiff in one case should be permitted to prevent a physician from serving as a defense expert in another plaintiff's case is unfounded. Put simply, plaintiffs are attempting to use the consolidation of cases in this MDL to unfairly hinder Zimmer's right to engage experts of its choosing to defend itself. For example, there is no question that Zimmer would be permitted to retain Dr. Rosenberg, as it has in other cases, as an expert to consult or testify in other cases where the plaintiff is not a patient of Dr. Rosenberg. The fact that Dr. Rosenberg has been identified by two plaintiffs in this MDL as a treating physician should not impact Zimmer's ability to retain him as a defense expert for use in a case where the plaintiff is not a patient.[10]

The Panel's coordination of these lawsuits for discovery in MDL-2272 does not justify a broad finding of presumed prejudice to the plaintiffs and a blanket disqualification of qualified physicians from providing assistance and testimony to the defense. Zimmer has agreed not to discuss any patient's confidences with a physician defense expert who also happens to be a treating physician of another plaintiff in this MDL. Furthermore, Zimmer will provide physicians with a memorandum informing the physicians that they are forbidden from communicating, outside the process of formal discovery, with Zimmer's attorneys about the care and treatment of patient-plaintiffs in this litigation. This approach protects the ability of

---

[10] Moreover, of the two plaintiffs, one plaintiff has not been seen by Dr. Rosenberg since 2010. That same plaintiff is presently a patient of a different orthopaedic physician. Accordingly, it would be patently unfair to prohibit Zimmer from retaining Dr. Rosenberg as a defense expert simply because he rendered treatment to two plaintiffs in this litigation and, in the case of at least one, it appears that the relationship has ended.

13

defendants to defend themselves and present the jury with the testimony of the most highly qualified doctors.

## CONCLUSION

For the foregoing reasons, Zimmer respectfully requests the Court enter the order proposed by Zimmer concerning its retention of physician-defense experts.

Respectfully submitted,

Dated: June 16, 2012  FAEGRE BAKER DANIELS LLP


/s/ Joseph H. Yeager, Jr.
Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
Email: jay.yeager@faegrebd.com
apierson@faegrebd.com

J. Stephen Bennett (Ill. State Bar #6226615)
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802-2600
Telephone: (260) 424-8000
Fax: (260) 460-1700
Email: stephen.bennett@faegrebd.com

*Attorneys for Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/ Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on June 18, 2012, a copy of the foregoing Zimmer's Reply In Support of Its Motion For An Order Concerning Zimmer's Contact With and Use of Treating Physicians as Defense Experts was filed electronically. Parties may access this filing through the Court's system.

/s/ Joseph H. Yeager, Jr.