UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to All Cases | ) ) ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | Honorable Rebecca Pallmeyer |

**REPLY IN SUPPORT OF ZIMMER'S SUPPLEMENT TO ITS MOTION
FOR AN ORDER CONCERNING ZIMMER'S CONTACT WITH AND USE OF
TREATING PHYSICIANS – ZIMMER'S DESIGN SURGEONS**

**I.  INTRODUCTION**

Plaintiffs initially opposed Zimmer's request to communicate with certain treating physicians based on their stated fear of the disclosure of confidential patient information. With that concern apparently assuaged, Plaintiffs now oppose Zimmer's request to confer with its own Design Surgeons based on their alleged entitlement to some litigation advantage. The *In re Pelvic Mesh/Gynecare Litigation* Court concluded that the plaintiffs in a mass tort are not entitled to such an unfair advantage. This Court should do likewise.

Zimmer has an absolute right to confer with its Design Surgeons about any topic other than their care and treatment of a plaintiff. To properly defend Zimmer in this MDL, Zimmer's counsel must communicate with the Design Surgeons regarding their work on the development of the Subject Products, their opinions, and possible future work as consulting or testifying experts. Neither the Federal Rules of Civil Procedure nor the laws of the states in which the surgeons are located bar Zimmer from this vital communication, particularly given that the Design Surgeons are both fact witnesses and potential experts. Notably, Plaintiffs are fully entitled to communicate with the Design Surgeons, yet they unfairly claim that Zimmer should

not be similarly entitled, *even though the six Design Surgeons at issue assisted Zimmer in developing the Subject Products years before treating any plaintiff.* Plaintiffs attempt to hide behind some lack of clarity of the role of Design Surgeons and information the Design Surgeons may possess. However, given that (1) Plaintiffs have deposed *three* Zimmer witnesses about the work of the Design Surgeons, and (2) Zimmer has produced a plethora of documents related to the work of the Design Surgeons, Zimmer's need to speak with them as fact witnesses and potential experts is clear.

Ultimately, the issue before this Court is whether the Federal Rules of Civil Procedure or a state law physician-patient privilege precludes Zimmer's proposed communications with its Design Surgeons; they do not. Zimmer is entitled to communicate with its Design Surgeons as fact witnesses and potential experts, and the safeguards Zimmer proposes for this communication will ensure that confidential medical information is not disclosed. Accordingly, the Court should permit Zimmer to communicate with its Design Surgeons under the conditions of the Proposed Order.

## II. ZIMMER SHOULD BE PERMITTED TO COMMUNICATE WITH THE DESIGN SURGEONS AS FACT WITNESSES AND POTENTIAL EXPERTS

As an initial matter, Plaintiffs do not deny that this Court has discretion under federal law to fashion an order that allows Zimmer to communicate with the Design Surgeons within parameters that protect the confidentiality of patients. *See In re Pelvic Mesh/Gynecare Litigation*, 43 A.3d 1211, 1220 (N.J. Super. A.D. 2012); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-MDL-1769-ACC-DAB, 2008 WL 821889, at **3-5 (M.D. Fla. Mar. 21, 2008); *In re Prempro Prods. Liab. Litig.*, No. 4:03CV1507WRW, D.E. 942 at 1 (W.D. Ark. Dec. 7, 2005); *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-cv-0047, 2005 WL 1799509 (S.D. Ind. 2005); *Patterson v.*

*Caterpillar, Inc.*, 70 F.3d 503 (7th Cir. 1995). *Accord In Re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183 (Hennepin County, Minn. May 11, 1998).

Plaintiffs, instead, assert that the Court should deny Zimmer access to its own Design Surgeons because Zimmer has not shown "sufficient evidence" to support its request to communicate with the Design Surgeons, whom Plaintiffs admit are both fact witnesses with relevant knowledge and potential experts. Plaintiffs' Further Response Opposing Zimmer's Motion Concerning Contact With Treating Physicians ("Response"), pp. 5-7 (D.E. 558.) However, no such showing is required under Rule 26 or any state's common law. Even were it, Plaintiffs' feigned naiveté regarding the information the Design Surgeons possess and Zimmer's right and need to communicate with them is disingenuous. Plaintiffs know well the role of the Design Surgeons, as (1) Zimmer has produced hundreds of pages of documents showing the work Zimmer's engineers and the Design Surgeons performed in developing the Subject Products and their related Surgical Techniques, and (2) Plaintiffs deposed *three* Zimmer employees – Michelle Zawadzki, David Weidenbenner, and Brian Earl – in detail regarding the role of the Design Surgeons, the work performed by the Design Surgeons, the identities of the Design Surgeons, the Design Surgeons who played a "big role" in the development of certain products, and the documents produced by Zimmer in this litigation (the Project History File), including the minutes of meetings with the Design Surgeons.[1]

Moreover, as Zimmer further explained in its briefing, the Design Surgeons possess knowledge related to the development, use, implantation, and instructions of/regarding the Subject Products. *See* Supplement To Zimmer's Motion For An Order Concerning Zimmer's

---

[1] The deposition transcripts of Ms. Zawadzki, Mr. Weidenbenner, and Mr. Earl have been designated as confidential and subject to this Court's Protective Order. Content related to the role of Zimmer's design surgeons may be found at the following citations: Deposition of Michelle Zawadzki, 120:6-123:17; Deposition of David Weidenbenner, Vol. I, 111:7 to 112:2; Deposition of Brian Earl, 121:12 to 122:10. Should the Court wish to consider the witnesses' exact testimony, Zimmer will submit those pages of the deposition transcripts under seal.

Contact With Treating Physicians – Zimmer's Design Surgeons ("Supplement"), pp. 1-4. (D.E. 543.) Zimmer also has identified the exact products on which each of the Design Surgeons consulted. *Id.* at 4-12. Contrary to Plaintiffs' claim, no speculation is required regarding the role of the Design Surgeons, and Zimmer is entitled to communicate with them.

Plaintiffs further claim that Zimmer should be denied access to its Design Surgeons because (according to Plaintiffs) Design Surgeons "typically provide little, if any, actual design assistance for the device" and, rather, would only know information about marketing of the device. (D.E. at 558 at 6.) This unsupported speculation, tied neither to Zimmer nor to any actual evidence regarding Zimmer's interactions with the Design Surgeons, is irrelevant to the question of whether Zimmer's proposed communication jeopardizes some physician-patient privilege. Even where it related in some tangential way to this Court's inquiry, Plaintiffs are dead wrong. As Zimmer's Supplement and Zimmer's confidential design documents (produced to Plaintiffs and identified in Ms. Zawadzki's deposition) reveal, Zimmer receives critical input from its Design Surgeons on a variety of topics related to the use, implantation, design, and development of its products. *See* Supplement, *passim*. Zimmer, thus, has a real need to talk with the Design Surgeons as fact witnesses and potential experts.

Moreover, Plaintiffs' claim that Zimmer can consult with other Design Surgeons who possess information about the development of the Subject Products is an obvious nonsequitur. It does not matter if Zimmer has five Design Surgeons or fifty. All of Zimmer's Design Surgeons are fact witnesses who participated in the development of the Subject Products, and the six Design Surgeons Zimmer identified in the Supplement are both fact witnesses and potential expert witnesses.[2] To reiterate, Zimmer's immediate need is to consult with the six Design

---

[2] The number of Zimmer Institute Faculty is similarly irrelevant, especially considering the faculty are experts on products not at issue in the MDL. This is another red herring in Plaintiffs' brief. (D.E.558 at 7.)

4

Surgeons identified in Zimmer's supplement related to their involvement in and contributions to the designs of the Subject Products, their knowledge of the designs and development of the products, and their thoughts and opinions regarding the Subject Products. It is this knowledge that makes the Design Surgeons "so special." *See* Response, p. 6.

Rather than address the issue before the Court – whether Zimmer is precluded from communicating with its own Design Surgeons as fact witnesses and potential experts by a physician-patient privilege – Plaintiffs' Response primarily raises a number of hypothetical questions that are neither relevant to the issue before the Court nor ripe for determination. For example, whether the content of Zimmer's communications with the Design Surgeons is discoverable or not is an issue for another day. The discoverability of communications with fact witnesses and experts is governed by Rules 26, 30, 33, and 34; Evidence Rule 702; and common law. Put simply, Plaintiffs' suggestion that Zimmer is trying to keep information "secret from the Court" and related hypotheticals are without basis.

In an abundance of caution, Zimmer requested the Court's permission to communicate with its own Design Surgeons as fact witnesses and potential experts, as both federal and state law permit. This Court should enter an order allowing Zimmer to do so.

## III. NO LAW PROHIBITS ZIMMER FROM COMMUNICATING WITH ITS OWN DESIGN SURGEONS

Plaintiffs' Response fails to include any logical rationale (much less law) for denying Zimmer's request to communicate with the Design Surgeons as fact witnesses and potential experts within Rule 26(a). Tellingly, Plaintiffs' Response also includes no suggestion that confidential patient information will be compromised under the conditions of the Proposed Order if Zimmer is so permitted.

As Zimmer explained in the Supplement, and as the analysis below reveals, federal and state law permit the communication Zimmer requests.

### A. Zimmer May Communicate With Drs. Tria and Scuderi Under New York And New Jersey Law

Plaintiffs admit that Zimmer is permitted to communicate with a plaintiff's treating physician under the common law of New York and New Jersey. (D.E. 558.) The inquiry about Zimmer's proposed communications with Drs. Tria and Scuderi should end there. Instead, Plaintiffs conjure a number of hypothetical conditions to suggest that the Court nonetheless should prohibit Zimmer from communicating with these Design Surgeons. For example, Plaintiffs' sudden concern over potential conflicts should Zimmer's counsel represent the Design Surgeons is not ripe and has no bearing on whether the physician-patient privilege would be compromised by communication under the terms of the Proposed Order. Response at 12. The undersigned counsel does not presently represent the six surgeons at issue in the Supplement and, should the parties choose to engage in such representation in the future (which is not unreasonable given that Zimmer contracted with the Design Surgeons for their development services), Plaintiffs lack standing to assert any alleged ethical conflict in that representation. Response at 12 and n.18 (D.E. 558).

Moreover, Plaintiffs' claim that Zimmer should be prohibited from communicating with the Design Surgeons because Zimmer intends to assert their "error" as a defense is equally unavailing. Plaintiffs cite Zimmer's Position Statement (D.E. 209 at 8-9) as alleged support for this claim. Response at 12 (D.E. 558). However, the portion of Zimmer's Position Statement cited by Plaintiffs is Giles Scuderi, M.D.'s criticism of a Korean study, including his hypothesis that the loosenings noted in the study could have been the result of surgical or cement technique. Zimmer's Position Statement (D.E. 209 at 8-9.) Plaintiffs then inexplicably attempt to turn

6

Dr. Scuderi's work into an affirmative statement that Zimmer plans to sue all of the treating physicians in these cases, including the Design Surgeons. Zimmer's notation of criticisms of the Korean study, and the fact that physician error may be one of numerous reasons a surgery can be unsuccessful, is of no moment. Neither does Zimmer's intent to carefully analyze the causation in every case create some ethical dilemma that prohibits it from communicating with the Design Surgeons. One condition of the Proposed Order is that the Design Surgeons could not communicate with Zimmer regarding their treatment of a plaintiff(s) and could not be engaged by Zimmer as an expert in any matter in which the Design Surgeon's patient was a plaintiff. As such, no potential physician ethical conflict exists.

Ultimately, neither New York nor New Jersey law bar Zimmer from communicating with Drs. Tria and Scuderi. Zimmer, therefore, should be allowed to communicate with these surgeons under the terms in the Proposed Order.

**B.      Zimmer May Communicate With Dr. Booth Under Pennsylvania Law**

As Plaintiffs note, the directive of Pennsylvania Rule of Civil Procedure 4003.6, governing physician patient privilege is clear — to protect the confidential and irrelevant medical information of the plaintiff. Plaintiffs are correct that in *Marek v. Ketyer*, 733 A.2d 1268 (Pa. Super. 1999), the actual content of the communications was not addressed by the court. However, the issue in *Marek* was that, based on the relationship between the doctor and the plaintiff, there was a risk of disclosure of the plaintiff's confidential information during those communications. *Id.* No court has applied Rule 4003.6 to a case where no such risk exists, which is exactly the situation here. Plaintiffs cite no Pennsylvania court as prohibiting the type of communications proposed by Zimmer with Dr. Booth, and such communications should be allowed.

7

### C. Zimmer May Communicate With Dr. Hoffman Under Utah Law

In a further attempt to distract the Court from the physician-patient privilege issue before it, Plaintiffs argue that Design Surgeon Aaron Hoffman, M.D., was paid by Zimmer. All Design Surgeons contracted with Zimmer for their work and were paid, as Plaintiffs know well given Zimmer's production of surgeon consulting agreements. Dr. Hoffman's fees for his work on behalf of Zimmer are irrelevant to the question of the physician-patient privilege and, if anything, only underscore that Zimmer should be entitled to communicate with the professionals it engaged long before the treatment of any MDL plaintiff (including Dr. Hoffman).

Plaintiffs' interpretation of *Sorenson v. Barbuto*, 177 P.3d 614 (Utah 2008), employs equally strained logic. There are significant differences between the facts in *Sorenson* and the facts at issue. The *Sorenson* court applied the physician-patient privilege to precluded ex parte communications at issue for two reasons: "First, not doing so undermines patient expectations of physician-patient confidentiality. Second, appropriately limiting the scope of a treating physician's disclosure requires judicial monitoring that cannot occur in the context of ex parte communications." *Id.* at 620. Neither of those issues is even at play here. Zimmer does not propose to discuss patient-specific information, as was at issue in *Sorenson*, and the conditions of the Proposed Order explicitly prohibit it. There also was no proposed order governing the topics of the communications between defendant's counsel and the treating physician in *Sorenson*. *Id.* The facts in *Sorenson* are inapposite to the facts at issue here, and the holding of *Sorenson* does not address the circumstances before this Court. Because *Sorenson* does not prevent Zimmer from contacting its Design Surgeons under the safeguards of the Proposed Order, Zimmer should be so allowed to communicate with Dr. Hoffman.

### D. Communications With Drs. Berger And Rosenberg Are Permitted Under Illinois Law

Plaintiffs' only response to Zimmer's argument that *Petrillo* does not prohibit Zimmer's communications with Drs. Berger and Rosenberg is to cite an indistinct sentence in a law review article. (D.E. 558 at 11.) Plaintiffs cannot cite for the Court a case in which the court has applied the privilege to communications *not* related to the plaintiff-patient's medical condition. This only reinforces Zimmer's argument that neither *Petrillo* nor any other Illinois case precludes communications with the Design Surgeons on topics other than a plaintiff's confidential medical information. Zimmer's communications with Drs. Berger and Rosenberg, therefore, should be permitted.

### IV. CONCLUSION

As the court noted in *In re Pelvic Mesh/Gynecare Litigation*, Plaintiffs' "litigation interests" are not the same as their "medical interests," and they should not be unfairly elevated to preempt Zimmer's right to communicate with its Design Surgeons. Plaintiffs seek to bar Zimmer from communicating with its own Design Surgeons, despite the fact that the surgeons are fact witnesses and potential experts critical to Zimmer's defense. Neither federal nor state law permits such a result and, indeed, a number of federal courts have held that a defendant should be permitted to communicate with treating physicians under appropriate safeguards. *See, supra*, 2-3.

The Proposed Order allows Zimmer to communicate with its Design Surgeons without risk of the disclosure of confidential patient medical information. Accordingly, Zimmer respectfully requests that the Court enter an order permitting Zimmer to communicate with the Design Surgeons under the conditions of the Proposed Order.

Respectfully submitted,

Dated: August 3, 2012  FAEGRE BAKER DANIELS LLP

/s/ Andrea Roberts Pierson
Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
Email: jay.yeager@faegrebd.com
apierson@faegrebd.com

J. Stephen Bennett (Ill. State Bar #6226615)
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802-2600
Telephone: (260) 424-8000
Fax: (260) 460-1700
Email: stephen.bennett@faegrebd.com

*Attorneys for Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/ Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2012, a copy of the foregoing Reply In Support Of Zimmer's Supplement To Its Motion For An Order Concerning Zimmer's Contact With And Use Of Treating Physicians – Zimmer's Design Surgeons was filed electronically. Parties may access this filing through the Court's system.

/s/ Andrea Roberts Pierson