UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to All Cases | ) ) ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | Honorable Rebecca Pallmeyer |

**ZIMMER'S MEMORANDUM IN SUPPORT OF**
**MEANINGFUL BELLWETHER TRIAL PROCESS**

The parties have now submitted to the Court a proposed trial plan reflecting agreement on all aspects of the bellwether process save one – whether the bellwether process will take into account, at all, the widely varied courts and jury pools in which the majority of the cases in this MDL ultimately will be decided.

The purpose of the bellwether process is to test the strengths and weaknesses of a representative sample of the cases in the MDL. In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S. Ct. 956, 140 L.Ed.2d 62 (1998), relying on the venue statutes' requirements that there be a meaningful connection between a case and the place in which it is tried, the Supreme Court held that cases transferred to an MDL proceeding must be sent back to transferor courts for ultimate disposition. *Id.* at 40-41 & n.4. Plaintiffs nonetheless want all bellwether cases tried in this district, one of the most urban in the nation. Zimmer wants the trials to be geographically diverse, reflecting the reality of where other cases ultimately will be tried. Absent geographic diversity, the results of the bellwether process will not be compelling to either party, undermining the very purpose of the bellwether process.

### A. Bellwether trials should be representative of all pending cases.

> The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context.

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). The purpose of bellwether trials is to give the parties an accurate picture of the strengths and weaknesses of their claims. Their usefulness disappears if they are nothing more than a series of early trials that are not representative of the consolidated cases. As one judge overseeing a large number of bellwether asbestos cases commented: "If all that is accomplished by this is the closing of 169 cases, then it was not worth the effort and will not be repeated." *Cimino v. Raymark Indus., Inc.*, 751 F. Supp. 649, 653 (E.D. Tex. 1990), rev'd, 151 F.3d 296 (5th Cir. 1998) (outlining bellwether process in class action suit).

> Trial of the bellwether cases must result in
>
>> a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis. **The more representative the test cases, the more reliable the information about similar cases will be**.

Manual for Complex Litigation (4th) § 22.315 (emphasis supplied).

Bellwethers are widely recognized as useful only if the parties view them as indicative of what juries would find in the other pending cases. "[T]he knowledge and experience gained during the bellwether process can precipitate global settlement negotiations and ensure that such negotiations do not occur in a vacuum, but rather in light of real-world evaluations of the litigation by multiple juries." Hon. Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict*

2

*Litigation*, 82 TUL. L. REV. 2323, 2325 (2008). Judge Fallon went on to emphasize this importance:

> If bellwether trials are to serve their twin goals as informative indicators of future trends and catalysts for an ultimate resolution, the transferee court and the attorneys must carefully construct the trial-selection process. Ideally the trial-selection process should . . . illustrate the likelihood of success and measure of damages . . .. Any trial-selection process that strays from this path will likely resolve only a few independent cases and have a limited global impact.

*Id*. at 2343. If only Illinois cases are chosen for bellwether trials, then those trials will not be "bellwether" at all – they simply will be a set of early trials that indicate what a sampling of Cook County jurors think of Illinois plaintiffs' claims. The parties need a broader cross-section of juries to try cases that fulfill the purpose of bellwethers as an "indicator of future trends." Alexandra D. Lahav, *Bellwether Trials*, 76 GEO. WASH. L. REV. 576, 578 (2008).

  **B.**  **Forum matters, and the parties know as much.**

  Plaintiffs argued successfully for these cases to be centralized in this jurisdiction. Undoubtedly, Plaintiffs did so after considering the likelihood of success and potential verdicts should these matters be tried here. While Plaintiffs have every right to think strategically, that strategy unfairly influences the bellwether process, if all matters are tried in the same jurisdiction. "[L]itigants can regularly affect the outcome of their dispute by where they file suit and how they cast their claims … The forum in which a case is heard often has considerable influence on the outcome. The judge and jury, the procedural rules, and in some cases the substantive law as well, all depend on the place of suit." Antony L. Ryan, *Principles of Forum Selection*, 103 W. VA. L. REV. 167, 168 (2000).

  Indeed, there is widespread understanding that forum matters. Research indicates that "plaintiffs' win rate drops markedly after transfer of venue" away from the venue the plaintiffs

3

chose.  *See* Kevin M. Clermont et al., *Litigation Realities*, 88 CORNELL L. REV. 119, 124 (2002).  For this reason, the Seventh Circuit has noted the advantage of diverse decision makers when a defendant faces multiple lawsuits – finding it preferable to hold "multiple trials, involving different juries, and different standards of liability, in different jurisdictions. . .."  *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299, 1300 (7th Cir. 1995)  (overturning district court's certification of class and finding issue should be submitted "to multiple juries constituting in the aggregate a much larger and more diverse sample of decision-makers").

The very point of the bellwether exercise is to select representative cases.  Accordingly, the best approach is to select cases in a way that acknowledges that different jurisdictions have different law, different jurists, and different jury pools.  Just as the Seventh Circuit recognized the value of diverse decision makers in *In re Rhone-Poulenc Rorer*, so too should this Court by adopting a process that allows for geographically diverse bellwether trials.

### C. The Court should construct a bellwether process that is fair and has value to all parties.

There are no hard and fast requirements governing how the bellwethers are selected.  "[T]he sheer number and type of feasible trial-selection processes are limited only by the ingenuity of each transferee court and the coordinating attorneys … no one process is a paragon for all MDLs."  Fallon, *supra*, at 2343.  As an MDL transferee court, this Court may not try a case that was transferred to it under 28 U.S.C. §1407; *Lexecon* and §1407 require the Court to remand those cases for trial.  This Court may oversee all pretrial proceedings of the bellwether cases, and then suggest remand of those cases for trial.  *See, e.g., In re Factor VIII*, 169 F.R.D. 632, 636 (N.D. Ill 1996) (noting that transferee judges have authority to enter orders concerning the conduct of trials that will occur after remand).

4

MDL courts have recognized the benefits of holding bellwether trials in multiple jurisdictions. In *Mann v. Lincoln Electric Co.*, an individual case chosen as a bellwether in the *In re: Welding Fumes Products Liability Litigation*, the MDL court had a choice between keeping the bellwether case for a retrial or remanding it back to its original jurisdiction. *See* 2011 WL 3205549, at \*\*1-2 (N.D. Ohio July 28, 2011). In deciding to remand the case to its originating court, the MDL court noted that it "has already presided over trial of several *Welding Fume* bellwether trials; **the parties are more likely to learn new information regarding the strength and value of *Welding Fume* cases by trying them in front of new judges and obtaining verdicts from juries in other jurisdictions**." *Id.* at \*4 (emphasis added). Likewise, the Court in *In re Aredia and Zometa Products Liab. Litig.* opted to hold all of the first wave of bellwether trials in each case's original jurisdiction, selecting ten cases as bellwethers to be remanded for trial. *See* Case No. 3:06-md-1760 (M.D. Tenn.) Dkt. 1263.

The majority of cases consolidated in this MDL originate from jurisdictions other than Illinois. Zimmer respectfully requests that this Court adopt a process that ensures geographic diversity and provides a representative sample of the matters consolidated before it. The Court may elect to select one or more cases originating from this jurisdiction as bellwethers, but absent geographic diversity, the parties will not gain additional and representative information about the likely outcome of cases not selected as bellwethers.

Plaintiffs' proposal would disserve the bellwether process, narrowing it to reflect likely outcomes in only one forum. Given the resources to be invested, all parties need to see the truly representative results that would come from geographically diverse trials.

                                                                  Respectfully submitted,

Dated: August 21, 2012                FAEGRE BAKER DANIELS LLP


                                                    /s/ Joseph H. Yeager, Jr.
                                                    Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
                                                    Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
                                                    300 North Meridian Street, Suite 2700
                                                    Indianapolis, IN  46204
                                                    Telephone:	(317) 237-0300
                                                    Fax:	(317) 237-1000
                                                    Email:	jay.yeager@faegrebd.com
                                                                     apierson@faegrebd.com

*Attorneys for Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/ Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 21, 2012, a copy of the foregoing was filed electronically. Parties may access this filing through the Court's system.

/s/ Joseph H. Yeager, Jr.