UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE | ) | |
| IMPLANT PRODUCTS LIABILITY | ) | MDL NO. 2272 |
| LITIGATION | ) | |
| | ) | |
| | ) | Master Docket Case No. 1:11-cv-05468 |
| | ) | |
| This Document Relates to: | ) | Honorable Rebecca Pallmeyer |
| | ) | |
| *Albert v. Zimmer, Inc., et al.*, | ) | |
| Case No. 1:12-cv-02360 | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND TO STRIKE CLASS ACTION ALLEGATIONS**

Defendants Zimmer, Inc., Zimmer Holdings, Inc., and Zimmer Surgical, Inc., f/k/a

Zimmer Orthopaedic Surgical Products, Inc. (collectively, "Zimmer"), respectfully move this

Court pursuant to Federal Rules of Civil Procedure 12(b)(6), 23(c)(1)(A), and 23(d)(1)(D), to

dismiss the claims of the plaintiff, Loretta Albert ("Plaintiff"), in their entirety, and to strike

Plaintiff's defective class action allegations, which provide no chance for class certification.

As discussed in detail below, Plaintiff has failed to plead a cause of action under the

Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.52 *et seq.*, which provides the

exclusive theory of liability against manufacturers for injuries caused by their products, and

Plaintiff's pleaded causes of action are not cognizable under Louisiana law. Moreover, Plaintiff

has failed to sufficiently plead the required element of causation for any cause of action. For

these reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

Insofar as Zimmer's Motion To Dismiss results in anything less than a dismissal of

Plaintiff's Complaint *with prejudice*, Zimmer requests that the Court concurrently consider and

grant its Motion To Strike, because Plaintiff's class allegations fail to define an ascertainable

class, and cannot establish the Rule 23(b)(3) elements of predominance and superiority.

## STATEMENT OF FACTS

Plaintiff Loretta Albert filed the Class Action Complaint And Jury Demand

("Complaint") with the Eastern District of Louisiana, on March 6, 2012.[1]  (Dkt. 1.)  Plaintiff

claims to have suffered personal injuries in connection with Zimmer's manufacture and sale of

the "Zimmer NexGen total knee replacement system, including the Zimmer NexGen LPS-Flex

femoral component."  Compl. ¶ 1 (defining product as "Zimmer NexGen Knee").  Plaintiff

purports to seek damages and other relief – including compensatory damages, punitive damages,

exemplary damages, equitable damages, medical monitoring damages, attorney fees, and

declaratory relief – on behalf of herself "and all those similarly situated."  *See id.* at 1 (caption

and introductory paragraph); *id.* at 19 (seeking medical monitoring damages); *id.* ¶¶ 52, 72, 80,

88, 94, 96(B), 96(C) (seeking other various forms of relief).  To support these claims for relief,

Plaintiff asserts the following six causes of action: (1) Strict Liability, (2) Strict Products

Liability – Failure to Warn, (3) Strict Products Liability – Design Defect, (4) Negligence,

(5) Breach of Express Warranty, and (6) Breach of Implied Warranties.  *Id.* ¶¶ 41-95.

Plaintiff's claims are all premised on the allegation that the "Zimmer NexGen Knee" is

"more likely to fail because higher flexation places the knee implant at a higher risk of

loosening."  Compl. ¶ 28; *see also id.* ¶¶ 30, 40, 48, 49, 55, 58, 76, 77.  However, Plaintiff does

not allege that her artificial knee has loosened, or that she has had to undergo a revision

procedure.  In fact, Plaintiff affirmatively states that she "has not yet undergone revision surgery

---

[1]  Plaintiff's Complaint was transferred to this MDL on May 29, 2012.  (Dkt. 10.)  Despite the March 23, 2012 Order by Stipulated Agreement (MDL Dkt. 277), which requires plaintiffs to file a Short Form Complaint within 30 days of final transfer, Plaintiff has to date not filed a Short Form Complaint in this matter.

but fears she may need to in the future." *Id.* ¶ 37.  Although Plaintiff alleges that she "recently

began experiencing severe and debilitating pain in her knee," *id.* ¶ 36, she does not allege that

this pain is secondary to a loose knee implant.  Nor does she allege that this pain was caused by

any other defective characteristic of the "Zimmer NexGen Knee."

Although the Complaint is purportedly filed on behalf of a class, Plaintiff does not

provide a proposed class definition.  She states only that she submits the Complaint "on behalf of

herself and all those similarly situated."  Compl. at 1.  Nevertheless, Plaintiff alleges that her

action "is appropriate for determination through the Class Action Procedure."  Compl. ¶ 96.

Plaintiff requests, *inter alia*, "that this action be certified as a class action…for the purpose of

determining the common issues of liability for appropriate damages," *id.* at 18 (Prayer, ¶ 2); that

"the rights of the Plaintiff and the members of the class to establish their entitlement to

compensatory damages, and the amounts thereof, be reserved for determination in their

individual actions when appropriate," *id.* at 19 (Prayer, ¶ 5); and that "a medical monitoring class

be certified, and the Court aware [sic] appropriate damages sufficient to establish a medical

monitoring program as deemed effective by Plaintiff's medical experts," *id.* at 19 (Prayer, ¶ 7).

## ARGUMENT

### I.     The Court Should Dismiss Plaintiff's Complaint In Its Entirety Because Plaintiff Fails To Plead Sufficient Facts To Support Any Cause Of Action.

As discussed below, the Court should dismiss Plaintiff's Complaint in its entirety because

it (a) fails to allege a cognizable cause of action under Louisiana law, and (b) fails to allege facts

sufficient to establish the common required element of causation.

### A.     Standard Of Review.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss all or

part of a pleading if it fails to state a claim upon which relief can be granted.  In order to survive

such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see

also* Fed. R. Civ. P. 8(a). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* The level of factual specificity required depends on the complexity of

the claim, *McCauley v. City of Chicago*, 671 F.3d 611, 616-617 (7th Cir. Ill. 2011); thus, "[a]

more complex case…will require more detail, both to give the opposing party notice of what the

case is all about and to show how, in the plaintiff's mind at least, the dots should be connected,"

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

**B.    The Court Should Dismiss Plaintiff's Complaint In Its Entirety.**

Under Louisiana law, which applies to Plaintiff's claims,[2] the Louisiana Products

Liability Act, La. Rev. Stat. § 9:2800.52 *et seq.* ("LPLA"), is the exclusive avenue through

which Plaintiff may pursue relief against Zimmer in this lawsuit:

> This Chapter establishes the exclusive theories of liability for
> manufacturers for damage caused by their products. A claimant may
> not recover from a manufacturer for damage caused by a product on
> the basis of any theory of liability that is not set forth in this Chapter.

La. Rev. Stat. §9:2800.52; *see also Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1248,

1250-51 (5th Cir. 1997). "The LPLA provides that a manufacturer of a product is liable to a

claimant for damage 'proximately caused' by a characteristic of the product that rendered it

---

[2]  Louisiana law applies to Plaintiff's claims. "When a diversity case is transferred by the multidistrict
litigation panel, the law applied is that of the jurisdiction from which the case was transferred." *Chang v.
Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). Here, Plaintiff originally filed this product
liability action in the Eastern District of Louisiana. Plaintiff alleges that she is a citizen of Louisiana,
Compl. ¶ 3, and that "a substantial number of the events, actions or omissions giving rise to Plaintiff's
claims" occurred within the Eastern District of Louisiana, *id.* ¶ 9. As such, Louisiana law will apply. *See*
La. Civ. Code. Art. 3545 (Louisiana product liability choice-of-law rule); *In re Yasmin & Yaz
(Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 273 (S.D. Ill.
2011) ("*In re Yasmin*") (applying Louisiana law to product liability claims filed by Louisiana plaintiff
allegedly injured in Louisiana).

4

'unreasonably dangerous' when the damage arose from a reasonably anticipated use of the product by the 'claimant or another person or entity.'" *Id.* at 1251 (*quoting* La. Rev. Stat. § 9:2800.54A). A plaintiff may prove that a product was 'unreasonably dangerous' based only on one of the following four theories: (1) construction or composition, (2) design, (3) an inadequate warning, or (4) a breach of express warranty. La. Rev. Stat. § 9:2800.54B; *Jefferson*, 106 F.3d at 1251. Accordingly, in order to plead a *prima facie* case under the LPLA, a plaintiff must allege: (1) that the defendant is a manufacturer of the product at issue; (2) that the plaintiff's damages were proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the plaintiff's damages arose from a reasonably anticipated use of the product. *Jefferson*, 106 F.3d at 1251; *Burks v. Abbott Labs.*, 639 F. Supp. 2d 1006, 1014 (D. Minn. 2009).

As an initial matter, Plaintiff's Complaint is defective because none of Plaintiff's pleaded causes of action are recognized in Louisiana. Plaintiff does not assert a statutory cause of action under the LPLA, but rather, asserts common law causes of action based on strict liability, negligence, express warranty, and implied warranty, all of which are outside the scope of the LPLA. Compl. ¶¶ 41-95; *Jefferson*, 106 F.3d at 1251. This alone is sufficient to dismiss Plaintiff's Complaint in its entirety. *See, e.g., id.*; *Ingram v. Bayer Corp.*, No. 02-0352, 2002 U.S. Dist. LEXIS 10402, at *5-6 (E.D. La. May 30, 2002) ("courts routinely dismiss claims

against manufacturers that do not arise under the LPLA" based on its unequivocal exclusionary language (citing cases)).[3]

Plaintiff's Complaint, however, contains a much more substantive flaw warranting dismissal – namely, it fails to adequately plead the required element of causation. In order to plead a *prima facie* case under the LPLA, Plaintiff must allege, among other things, that (a) the plaintiff suffered "damages" that (b) were proximately caused by a "characteristic" of the product at issue that made the product "unreasonably dangerous." La. Rev. Stat. § 9:2800.54(A); *Jefferson*, 106 F.3d at 1251; *Burks*, 639 F. Supp. 2d at 1014.

Here, although Plaintiff does allege an unreasonably dangerous "characteristic" of the Zimmer NexGen Knee – namely, an alleged increased risk that the implant will loosen prematurely, *see* Compl. ¶¶ 28, 30, 40, 48, 49, 55, 58, 76, 77 – Plaintiff fails to demonstrate how that characteristic caused her damage. Plaintiff does *not* allege that she has been diagnosed with a loose knee implant, nor does she allege that she has had to undergo a revision procedure as a result of a loose knee implant. Rather, she alleges only that she "fears she may need to [undergo a revision] in the future." Compl. ¶ 37. This alone is insufficient to support a cause of action under the LPLA. *See In re Rezulin Prods. Liab. Litig.*, 361 F. Supp. 2d 268, 277-78 (S.D.N.Y.

---

[3] Even if the Court interprets some of Plaintiff's pleaded claims as claims lodged under the LPLA, despite Plaintiff's failure to reference the statute, the Court should still dismiss *with prejudice* Plaintiff's claim for Breach of Implied Warranties (Count VI), and should strike Plaintiff's demands for punitive damages, exemplary damages, equitable damages, and declaratory relief, because the LPLA does not provide for such causes of action or categories of relief. *See, e.g., Jefferson*, 106 F.3d at 1251 (dismissing implied warranty claim); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770-71 (W.D. La. 2007) (dismissing punitive damages claim); *Aucoin v. Amneal Pharms., LLC*, No. 11-1275, 2012 U.S. Dist. LEXIS 100889, at *17-18 (E.D. La. July 20, 2012) (dismissing request for attorney's fees); *see also* La. Rev. Stat. § 9:2800.53(5) (defining scope of damages available). The Court should additionally strike Plaintiff's request for medical monitoring damages both (1) because, as discussed below, Plaintiff has failed to allege a manifest physical injury caused by the alleged defect in the Zimmer *NexGen* Knee, *see Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1230 n.6 (La. 2003), and (2) because Plaintiff "makes no mention of what type of monitoring he is looking for, who prescribed him the monitoring, or what the efficacy of the monitoring might be," *Royal v. Exxon Mobil Corp.*, No. 12-81, 2012 U.S. Dist. LEXIS 13800, at **4-5 (E.D. La. Feb. 6, 2012) (dismissing plaintiff's request for medical monitoring damages).

2005) (dismissing LPLA claims based on a fear of future injury). Although Plaintiff also alleges that she "recently began experiencing severe and debilitating pain in her knee," she does not allege that this pain was secondary to a loose knee implant, nor does she allege that it was caused by any other unreasonably dangerous "characteristic" of the Zimmer NexGen Knee. *See* La. Rev. Stat. § 9:2800.54(A).[4]

Plaintiff's vague and conclusory allegations that she suffered "serious bodily injury and harm" and "severe and debilitating injuries" as a result of the Zimmer NexGen Knee are insufficient to support her claim. *See Iqbal*, 556 U.S. at 678. The limited factual allegations offered with regard to Plaintiff's physical injuries do not attribute cause to any alleged defect of the Zimmer NexGen Knee, and therefore Plaintiff has failed "to show how…the dots should be connected." *Swanson*, 614 F.3d at 405.

Plaintiff has not pled a viable cause of action under Louisiana law, and has not pled sufficient facts to establish the required element of causation. Accordingly, the Court should dismiss the Complaint as a matter of law.

II.     **The Court Should Strike Plaintiff's Class Action Allegations Because The Complaint Is Facially Defective And Definitively Establishes That A Class Action Cannot Be Maintained.**

Zimmer additionally moves, pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D) of the Federal Rules of Civil Procedure, to strike Plaintiff's class action allegations.[5]

---

[4] To the extent Plaintiff claims that the alleged increased risk of premature loosening has caused her to suffer "damage" in the form of medical monitoring expenses, this cannot support an LPLA cause of action absent a well-pled allegation that she was physically harmed by an unreasonably dangerous characteristic of Zimmer's product. *See* La. Civ. Code art. 2315(B); *Bonnette*, 837 So.2d at 1230 n.6.

[5] The pendency of facially deficient class action complaints, such as the Complaint in this case, prejudices Zimmer insofar as there is a risk that delinquent claimants, who after failing to file their complaints in a timely manner, may attempt to rely on such meritless class action complaints to argue that the applicable statute of limitations was tolled. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). Accordingly, to the extent Plaintiff's Complaint is not dismissed in its entirety *with prejudice* as a result of Zimmer's Motion To Dismiss, Zimmer respectfully requests that the Court concurrently consider and grant this Motion To Strike.

A.      **Standard Of Review.**

Rule 23 provides that "[a]t an early practicable time after a person sues…as a class

representative, the court must determine by order whether to certify the action as a class action."

Fed. R. Civ. P. 23(c)(1)(A).  Moreover, in conducting a class action, "the court may issue orders

that…require that the pleadings be amended to eliminate allegations about representation of

absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  "District

courts, both within this district and others, have held that a motion to strike class allegations,

made pursuant to these provisions, is an appropriate device to determine whether the case will

proceed as a class action."  *Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 U.S. Dist. LEXIS

126643, at *3 (N.D. Ill. Nov. 30, 2010); *see, e.g., In re Yasmin*, 275 F.R.D. at 274-79.[6]

"Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class may be

certified '[a]t an early practicable time,' courts may – and should – address the plaintiff's class

allegations when the pleadings are facially defective and definitively establish that a class action

cannot be maintained."  *Wright*, 2010 U.S. Dist. LEXIS 126643 at *4.

Federal Rule of Civil Procedure 23 requires a multi-step analysis to determine whether a

putative class may be certified.  First, the plaintiff must satisfy all four requirements of Rule

23(a), namely (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation.  *See* Fed. R. Civ. P. 23(a); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir.

2006).  In addition, the plaintiff must establish that the lawsuit satisfies at least one of the

provisions of Rule 23(b).  *Id.*  In the instant matter, Plaintiff seeks monetary damages and

---

[6]  *See also Arango v. Work & Well, Inc.*, No. 11-1525, 2012 U.S. Dist. LEXIS 102411, at *6-12 (N.D. Ill. July 24, 2012); *In re Vioxx Prods. Liab. Litig.*, No. 09-3713, 2012 U.S. Dist. LEXIS 78954 (E.D. La. June 6, 2012); *Ginardi v. Frontier Gas Svcs. LLC*, No. 11-420, 2011 U.S. Dist. LEXIS 89054, at *11 (E.D. Ark. Aug. 10, 2011); *Cornette v. Jenny Garton Ins. Agency*, No. 10-60, 2010 U.S. Dist. LEXIS 52809, at *4 (N.D. W. Va. May 27, 2010); *Bearden v. Honeywell Int'l Inc.*, No. 09-1035, 2010 U.S. Dist. LEXIS 28331, at *30 (M.D. Tenn. March 24, 2010); *Bevrotte v. Caesars Entm't Corp.*, No. 11-543, 2011 U.S. Dist. LEXIS 114463 (E.D. La. Oct. 4, 2011).

therefore must satisfy Rule 23(b)(3), which requires the plaintiff to establish (1) that questions of law or fact common to the putative class members predominate over any questions affecting individual class members (the "predominance" requirement), and (2) that a class action is a superior vehicle with which to adjudicate the matter (the "superiority" requirement). Fed. R. Civ. P. 23(b)(3); *Wright*, 2010 U.S. Dist. LEXIS126643 at *4-5. Finally, in order for a class action to be certified, the plaintiff must propose a definition for a putative class that is definite enough that the class can be ascertained. *Oshana*, 472 F.3d at 513. Even at this early stage, it is the plaintiff's burden to prove that the case may be maintained as a class action. *Oshana*, 472 F.3d at 513; *Wright*, 2010 U.S. Dist. LEXIS 126643 at *5.

### B. The Court Should Strike Plaintiff's Class Action Allegations.

As discussed below, the Court should strike Plaintiff's class action allegations in the instant matter because they are facially deficient and (1) do not provide a proposed class definition that is ascertainable; (2) do not, and cannot, establish that common questions predominate over individual questions, and (3) do not, and cannot, establish that a class action is superior to alternative methods of adjudication.[7]

### 1. Plaintiff's Class Allegations Fail To Propose An Ascertainable Class.

Although Plaintiff purports to act "on behalf of herself and all those similarly situated," Plaintiff makes no effort to define a putative class in her complaint. This is fatal to her class allegations. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings").

---

[7] Plaintiff's class allegations should also be dismissed because Plaintiff did not move for class certification within 91 days of filing the Complaint, as required in the Eastern District of Louisiana. *See* L. Civ. R. 23.1(B) (E.D. La.); *Nabut v. Dascents, LLC*, No. 11-2762, 2012 U.S. Dist. LEXIS 98766, *5-7 (E.D. La. July 17, 2012) (denying class certification, *sua sponte*, because plaintiff failed to comply with 91-day motion-for-class-certification deadline of L. Civ. R. 23.1(B)).

Without any proposed definition of the class, neither the Court nor the parties are able to determine the size, scope, or nature of Plaintiff's putative class action. For example, the Complaint does not indicate whether Plaintiff is proposing a nationwide class, multi-state class, or single-state class. It further does not indicate whether Plaintiff purports to represent only plaintiffs who received the same knee replacement products that she received, and who, like her, have not yet undergone revision procedures but fear the prospect of having to have one in the future; or whether she purports to represent a broader scope of plaintiffs. Because Plaintiff has not even attempted to define the parameters of her putative class, the Complaint does not provide a "description of a class [that] is sufficiently definite to permit ascertainment of the class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).[8] Accordingly, the Court should strike Plaintiff's class action allegations. *See John*, 501 F.3d at 445; *In re Vioxx Prods. Liab. Litig.*, No. 09-3713, 2012 U.S. Dist. LEXIS 78954, at *12 (E.D. La. June 6, 2012) (granting motion to strike class allegations because putative class defined in complaint was not ascertainable).

> **2.      Plaintiff's Allegations Do Not And Cannot Establish That Common Issues Predominate.**

Regardless of how Plaintiff may choose to define a putative class, individual questions of fact predominate any common issues in this action and preclude the possibility of class certification. *See In re Yasmin*, 275 F.R.D. at 276-77.

It is widely recognized that the class action device is not very useful in mass tort cases, such as this case, which tend to "present 'significant questions, not only of damages but of liability and defenses of liability,…affecting the individuals in different ways.'" *Amchem*

---

[8] Plaintiff's failure to plead a class definition also renders her Complaint defective under the law of the Eastern District of Louisiana – the transferor court in this matter. *See* L. Civ. R. 23.1(A)(2) (E.D. La.) ("The complaint must…[m]ake allegations thought to justify the maintenance of the claim as a class action, including…(a) the size and definition of the alleged class").

*Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (alteration in original). This is particularly true in the context of cases involving pharmaceuticals and medical devices, where "the factual and legal issues often do differ dramatically from individual to individual because there is no common cause of injury." *In re Am. Med. Sys.*, 75 F.3d 1069, 1084 (6th Cir. 1996). On this issue, the Ninth Circuit has opined as follows:

> In products liability actions…individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

*In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982); *see also In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1306 (7th Cir. 1995) (noting criticism of the use of class actions in the mass tort context and decertifying class of hemophiliacs alleged to have contracted HIV through infusion with defendant's blood products).

For these reasons, district courts both in and outside the Seventh Circuit have repeatedly rejected class certification in medical device and pharmaceutical products liability actions alleging personal injuries. *See, e.g., In re Yasmin*, 275 F.R.D. 270 (S.D. Ill. 2011).[9]

In *Yasmin*, the Southern District of Illinois recently faced a motion to strike class allegations in circumstances virtually identical to those here. *See In re Yasmin*, 275 F.R.D. 270. The plaintiff, a Louisiana citizen, filed a putative class action complaint under Louisiana law

---

[9] *See also Miller v. Janssen Pharm. Prods., L.P.*, No. 05-4076, 2007 U.S. Dist. LEXIS 31863 (S.D. Ill. May 1, 2007); *Bethards v. Bard Access Sys., Inc.*, No. 94-1522, 1995 U.S. Dist. LEXIS 22467 (N.D. Ill. Feb. 21, 1995); *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312 (E.D.N.C. 2009); *Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 191 (E.D. Pa. 2007); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006); *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003); *In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197 (D. Minn. 2003).

alleging various causes of action against defendant Bayer Corporation for personal injuries related to use of the prescription contraceptive product, Yasmin. Granting the defendant's motion to strike class allegations, the court opined on the issue of predominance:

> Establishing the requisite elements of product liability claims sounding in strict liability, negligence, warranty, and/or fraud generally requires fact intensive inquiries unique to each plaintiff (such as questions related to causation, injury, affirmative defenses, and damages). Accordingly, mass product liability suits are rarely sustainable as class actions.
>
> In the instant case, almost every element of the asserted claims will require highly individualized factual inquiries unique not only to each class member but also to each class member's prescribing physician. For example, as defendants' brief highlights, establishing causation will require (1) an examination of each class member's medical history, including pre-existing conditions and use of other medications; (2) an evaluation of potential alternate causes for the alleged injury; and (3) an assessment of individualized issues pertaining to each class member's prescriber, including how the doctor balances the risks and benefits of the medicine for that particular patient, the particular doctor's prescribing practices, the doctor's knowledge about the subject drug, and the doctor's sources of information with regard to the subject drug.
> . . .
> Considering the case-specific questions discussed above, it is evident that individual issues of fact predominate. Accordingly, certification of the proposed nation-wide class would be improper.

*In re Yasmin*, 275 F.R.D. at 276-277.

The circumstances here are no different. Every knee replacement surgery involves risks, including the risk that the implant will loosen and require revision, and the success of the procedure depends on multiple variables. Surgical factors influencing success include the selection of appropriate implants of the correct size and shape, making precise bone cuts to fit the implants, removing the appropriate amount of bone, achieving correct alignment of the components, properly applying bone cement for cemented implants, proper cleaning of the implant site, and recommending proper post-surgery care and rehabilitation, among other factors.

In addition, important patient and biological variables influence the success of knee replacement surgery, including whether the patient develops an infection or adverse reaction to the surgery or implant, as well as patient weight, height, age, quality of bone stock, body mass index, and activity level. Determining the contribution of these multiple variables versus the contribution of any alleged defect of the knee replacement component in causing a particular class member's injury will obviously require highly individualized inquiries, not only with regard to each class member, but also with regard to each class member's orthopaedic surgeon.

Moreover, the application of Zimmer's affirmative defenses will require additional individualized determinations for each class member. *See In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 567 (E.D. Ark.2005). For example, Zimmer has pled the statute of limitations, assumption of the risk, contributory negligence, and comparative negligence, among many other affirmative defenses, in this MDL. Am. Answer at 186 (Defense Nos. 4, 5, 7) (MDL Dkt. 273). Each of these defenses will apply on a case by case basis, and will require individual proof and evaluation. *See In re Prempro*, 230 F.R.D. at 567; *Dalkon Shield*, 693 F.2d at 853. Accordingly, given the highly individualized inquiries required to establish liability, a class action is not an appropriate procedure to utilize in this case. *See In re Yasmin*, 275 F.R.D. at 276-77.[10]

---

[10] To the extent Plaintiff contends that a medical monitoring class should be certified, *see* Compl. at 19 (Prayer, ¶ 7), the Court should reject such request, as an initial matter, because Louisiana does not allow medical monitoring damages in the absence of a manifest physical or mental injury. *See* La. Civ. Code art. 2315(B); *Bonnette*, 837 So.2d at 1230 n.6. Accordingly, any "medical monitoring" class would have to allege personal injuries in order to state a cognizable claim under Louisiana law, and would suffer the same class action deficiencies discussed above. Moreover, the *remedy* of medical monitoring, in itself, would inject additional individual issues into the equation, rendering class action treatment even more problematic. *See In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); *Perez v. Metabolife Int'l*, 218 F.R.D. 262, 273 (S.D. Fla. 2003).

      **3.**      **Plaintiff's Allegations Do Not, And Cannot, Establish That A Class Action Is The Superior Method Of Adjudication.**

Lastly, the Court should strike Plaintiff's class action allegations because a class action is not the superior method of adjudicating this action.

The Judicial Panel on Multidistrict Litigation has already formed this MDL for purposes of conducting pre-trial proceedings in an effort to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." Transfer Order at 1 (MDL Dkt. 1). Accordingly, "[m]ost of the efficiency gains that class-treatment could bring in a case such as this have been captured already by the consolidation of…cases in this Court for pre-trial proceedings." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 403 (S.D.N.Y. 2008). In addition, given that more than five-hundred individual matters have already been consolidated in the MDL, this is clearly not a case "in which meritorious claims will go unasserted out of concern that litigation costs will wipe out the anticipated recovery." *Bevrotte*, 2011 U.S. Dist. LEXIS 114463 at *16. Accordingly, the justification for utilizing a class action procedure here is not compelling. *See In re Rhone-Poulenc*, 51 F.3d at 1299. ("In most class actions – and those the ones in which the rationale for the procedure is most compelling – individual suits are infeasible because the claim of each class member is tiny relative to the expense of litigation. That plainly is not the situation here.").

The Seventh Circuit has criticized the use of the class action procedure in mass tort cases, such as this case, in favor of "a decentralized process of multiple trials, involving different juries, and different standards of liability, in different jurisdictions." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002); *see also In re Rhone-Poulenc*, 51 F.3d at 1304 ("Most federal courts…refuse to permit the use of the class-action device in mass-tort cases," and "[t]hose courts that have permitted it have been criticized, and alternatives have been suggested

which recognize that a sample of trials makes more sense than entrusting the fate of an industry to a single jury."). This is exactly what the MDL provides, as each consolidated case will ultimately be remanded to its transferor jurisdiction after pre-trial proceedings are complete.

Accordingly, the MDL procedure is the superior method of adjudicating this mass tort claim. Plaintiff cannot establish otherwise, particularly given the predominating individual issues of fact discussed above. *See Murry v. America's Mortg. Banc, Inc.*, No. 03-5811, 2005 U.S. Dist. LEXIS 11751, at *9-10 (N.D. Ill. May 5, 2005) ("If individual issues predominate, then class certification is usually not a superior method for resolving the controversy, since management of such issues by a court will not be efficient.") (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir.)); *see also Robertson v. Monsanto Co.*, 287 Fed. Appx. 354, 362 (5th Cir. 2011). For these reasons, Plaintiff cannot establish the Rule 23(b)(3) requirement of superiority, and the Court should strike Plaintiff's class allegations from the Complaint.

## CONCLUSION

For the reasons discussed above, the Court should grant Zimmer's Motion To Dismiss, and dismiss Plaintiff's Complaint in its entirety. Moreover, to the extent the Court allows Plaintiff to pursue, or re-plead, any of her claims, the Court should also consider and grant Zimmer's concurrently filed Motion To Strike, and strike Plaintiff's class allegations from the Complaint.

Respectfully submitted,


FAEGRE BAKER DANIELS LLP

/s/ Andrea Roberts Pierson
Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:      (317) 237-0300
Fax:                 (317) 237-1000
Email:             jay.yeager@faegrebd.com
                       apierson@faegrebd.com

J. Stephen Bennett (Ill. State Bar #6226615)
111 East Wayne Street, Suite 800
Fort Wayne, IN  46802-2600
Telephone:      (260) 424-8000
Fax:                 (260) 460-1700
Email:             stephen.bennett@faegrebd.com

*Attorneys for Zimmer, Inc., Zimmer Holdings, Inc.,
and Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic
Surgical Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 14, 2012, a copy of the foregoing Memorandum In Support Of Motion To Dismiss And To Strike Class Action Allegations was filed electronically. Parties may access this filing through the Court's system.

/s/ Andrea Roberts Pierson