UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2272 |
| This Document Relates to the Below Listed Cases | ) ) ) ) | Master Docket Case No. 1:11-cv-05468 Honorable Rebecca Pallmeyer |

## ZIMMER'S[1] RESPONSE TO PLAINTIFFS' MEMORANDUM REGARDING TRIAL CASE SELECTION ISSUES

In Plaintiffs' Memorandum Regarding Trial Case Selection Issues ("Plaintiffs' Memorandum"), the Plaintiff Steering Committee ("PSC") attempts to modify the Trial Plan and renege on terms negotiated by the parties in two ways.

First, the PSC asks the Court to excuse its improper selection of *Norma Blake v. Zimmer, Inc., et al.*, despite the fact that it admits *Blake* was not eligible for inclusion in the Case Pool. Paragraph 2 of the Trial Plan explicitly limits the Case Pool to those matters in which Zimmer received signed medical authorizations prior to October 29, 2012. Ms. Blake did not provide medical authorizations by October 29, 2012, much less by this Court's July 22, 2012, deadline pursuant to Case Management Order No. 2. Indeed, Ms. Blake finally served medical authorizations **four months** after the Court's deadline, and well after the Trial Plan's deadline for consideration as a Case Pool selection. As such, *Blake* should be stricken.

---

[1] For purposes of this response, "Zimmer " includes the following defendants: Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.

1

<u>Second</u>, the PSC asks the Court to strike Zimmer's selection of *Mary Alexander, et al. v. Zimmer, Inc., et al.* as a revised 5950 MIS Tibial Component Case because it alleges (a) *Alexander* involves claims against Ms. Alexander's tibial articular surface, not her 5950 MIS Tibial Component, and (b) Ms. Alexander allegedly is an "unrevised" patient. However, Ms. Alexander's own Short Form Complaint confirms unequivocally that she seeks damages from alleged defects in her 5950 MIS Tibial Component, and there is also no dispute that Ms. Alexander underwent revision surgery. The PSC's current effort to redefine *Alexander* as an unrevised case directly contradicts the definition of "unrevised" (1) to which the parties agreed during the parties' Trial Plan negotiations; (2) upon which Zimmer relied thereafter; and (3) which Zimmer faithfully followed in making its Case Pool selections. The PSC cannot belatedly change the agreed-upon definition of an unrevised case simply because it does not like one of Zimmer's Case Pool picks.

Zimmer followed the definitions and rules set forth in the Trial Plan, as negotiated by the parties. The PSC did not. The Court should enforce the Trial Plan.

## I. *BLAKE* WAS NOT ELIGIBLE FOR SELECTION IN THE CASE POOL, AND THE COURT SHOULD STRIKE IT

The PSC does not dispute that (1) Paragraph 2 of the Trial Plan defined the cases to be considered for Case Pool selection, and (2) *Blake* was not eligible for Case Pool selection. *See* Pl.'s Memorandum, pp. 2, 8, 16. The PSC instead argues that they alone should be permitted to select a matter outside the Trial Plan's eligible pool – specifically, *Blake*. This Court should decline to rewrite the Trial Plan to permit the selection of *Blake* for three reasons.

<u>First</u>, the Trial Plan and the prerequisites for Case Pool consideration under it are clear. To be considered for Case Pool selection by either party, the plaintiffs were obligated to produce medical authorizations by October 29, 2012, and Plaintiff Fact Sheets by November 2, 2012. *See*

DMS_US 51244458v1

Trial Plan, Doc. 653. Both sides agree that *Blake* did not meet the criteria for Case Pool selection. *See* Motion To Strike, Doc. 694, *passim*; Pl.'s Memorandum, pp. 2, 8, 16. Consequently, the Court should enforce Paragraph 2 of the Trial Plan and strike *Blake*.

Second, while conceding that *Blake* did not meet the criteria in Paragraph 2 of the Trial Plan, the PSC seemingly suggests that Ms. Blake complied with the Trial Plan in substance, pointing to things other than the required medical authorizations that Ms. Blake allegedly disclosed. Pl.'s Memorandum, p. 2. However, the PSC's suggestion misses the mark and omits key facts, including:

a. The Trial Plan's deadline for consideration is October 29. There is no ambiguity about the deadline.

b. Ms. Blake identified **29** different medical providers and facilities at which she sought treatment during the 10 years before she received her Zimmer implants. However, Ms. Blake had failed to provide Zimmer with authorizations for **any** of those 29 providers by the Trial Plan's October 29 deadline.

c. Pursuant to Case Management Order 2, Ms. Blake was obligated to produce her medical authorizations with the PFS on July 22, 2012. *See* December 23, 2011, Case Management Order No. 2, Doc. 195, p. 4. She failed to do so until November 9, 2012 – **four months** after this Court's deadline. *See* November 9, 2012 Correspondence from PSC Paralegal Kim Aguilera to Zimmer Paralegal Nicole Brett, attached as Exhibit A.

d. As of the Trial Plan's October 29 deadline, Ms. Blake had produced to Zimmer only **two pages** of medical records.[2] *See* July 16, 2012, Correspondence from PSC Paralegal Kim Aguilera to Zimmer Paralegal Nicole Brett, attached as Exhibit B

e. For more than **a year and four months** before Ms. Blake finally provided a medical authorization to Zimmer*,* Ms. Blake's counsel possessed a signed medical authorization from Ms. Blake and has been collecting her medical records with it. *See* July 15, 2011, Authorizations Executed by Norma Blake, Exhibit B, p. 4.

---

[2] On July 16, 2012, Ms. Blake's counsel sent Zimmer's counsel one page of medical records from Dr. Kantor (one of the providers who examined her knee in September 2011) and one page of product identifying stickers from the hospital at which Ms. Blake's total knee arthroplasty took place.

3

To suggest that Ms. Blake complied with the Trial Plan's requirements in form or substance by the October 29 deadline is disingenuous at best.

Third, it would be fundamentally unfair to rewrite the Trial Plan to allow the PSC to choose *Blake*. To do so would increase the pool of cases eligible for selection by the PSC, while simultaneously restricting the pool eligible for consideration by Zimmer. Rewriting the Trial Plan further would permit the PSC to bend this Court's rules to suit the cases they prefer to select, after the parties negotiated and the Court approved the scope of the cases eligible for Case Pool selection, and after Zimmer disclosed its work product in the form of its Case Pool selections. The parties negotiated and agreed to the October 29 deadline to give some end point and definition to the cases from which both sides fairly could select. The PSC's Memorandum wrongly suggests that the pool of eligible cases should be larger for the PSC than Zimmer – a suggestion that is patently unfair.

In addition, the PSC's request to allow *Blake* to proceed as a Case Pool selection would unfairly prejudice Zimmer in multiple other ways. While Zimmer has been and will be unable to consider or investigate Ms. Blake's medical condition until her providers produce medical records – a process that she and/or her counsel have substantially delayed by failing to provide any medical authorizations until November 9 – Ms. Blake signed her counsel's medical authorizations on **July 15, 2011**, and her lawyers have been collecting records since that time. *See* Exhibit B, p. 4. Given that, it would be unfairly prejudicial to now extend the Trial Plan's deadline to suit Ms. Blake's belated production of medical authorizations to Zimmer. *See* Exhibit A.

Moreover, this Court's Case Management Order No. 2 and the PFS specifically required Ms. Blake to produce to Zimmer **all** medical records in her possession by July 22, 2012, and to

supplement that production as records were received by her counsel.[3]  Ms. Blake has failed to do either.  Noticeably absent from the affidavit of Ms. Blake's counsel is affirmation that:

    a.    Ms. Blake's medical authorizations were timely produced with the PFS on the July 22, 2012, due date;

    b.    All medical records in Ms. Blake's possession were timely produced with her PFS, as required by Requests B, C, and G attached to the PFS; and

    c.    Ms. Blake has properly supplemented her PFS by producing all medical records in Ms. Blake's possession.

*See* Pl.'s Memorandum, Exhibit B, Affidavit Of Joseph A. Osborne, *passim*.  And, while Ms. Blake's PFS identifies **29 medical providers** who treated her in the ten years prior to her implant surgery, and her May 15, 2012, Initial Disclosure identifies the medical records of **7 medical providers** that she intended to use to support her claims pursuant to Rule 26(a)(1)(A)(ii) of the Federal Rules Of Civil Procedure, at no time prior to October 29 did Ms. Blake produce more than **two pages** of their records.  *See*, *supra*, p. 3 and n.2.  As of today, Ms. Blake still has not produced records for the vast majority of providers identified in her PFS or Initial Disclosure.  To permit *Blake* to be considered as a Case Pool selection under those facts would be unfairly prejudicial to Zimmer.

    Finally, the PSC knew that *Blake* was ineligible for Case Pool consideration when they disclosed their Case Pool selections on November 28, and sanctioning their disregard of the terms of the Trial Plan as the PSC requests would be patently unfair.  After multiple conversations regarding missing authorizations and medical records, on November 1, 2012, Zimmer's Co-Lead Counsel Jay Yeager provided Co-Lead Plaintiffs' Counsel Timothy Becker

---

[3]     *See* Plaintiff Fact Sheet attached to CMO 2, Doc. 195, Exh. A, at p. 1 ("You are obligated to supplement your responses if you learn that they are incomplete or incorrect in any material respect."); p. 26 ("**Authorizations**: Please sign and attach to this Fact Sheet the authorizations for release of records appended hereto for all healthcare providers listed in Section VII"); Requests B, C, and G.

with a list of the nearly 300 cases in which medical authorizations, PFS, and/or medical records had not been produced. *See* November 1, 2012, Correspondence attached as Exhibit C. *Blake* is clearly listed as a matter in which medical authorizations were due in July 2012 and had not been received as of October 29, 2012. *Id.* Likewise, the undersigned counsel contacted numerous Plaintiffs' counsel and PSC members (including Ms. Blake's counsel) regarding hundreds of cases in which authorizations, PFS, and medical records were missing from November 1 to the present date. In response to one such communication, Ms. Blake's counsel's paralegal finally emailed a medical authorization and partial medical records from three of her 29 providers on November 1 and 9, 2012. *See* November 1 Correspondence forwarding medical records, Exhibit D; November 9 Correspondence forwarding Medical Authorization, Exhibit A; Medical Authorization, Exhibit E. The PSC knew well that *Blake* was not eligible for Case Pool selection and, nevertheless, picked it. As such, *Blake* should be stricken.

The issue before this Court is whether *Blake* was eligible for Case Pool selection under the terms of Paragraph 2 of the Trial Plan. It was not, and modifying the Trial Plan to suit Ms. Blake's more than five month delay in producing medical authorizations – particularly given that her counsel has been collecting Ms. Blake's medical records for more than a year – would be patently unfair.

**II.     ZIMMER PROPERLY SELECTED *ALEXANDER* AS A REVISED CASE**

    **A.     Ms. Alexander's Complaint Confirms That She Fits Category C of the Trial Plan Because She Seeks Damages For Injuries Caused by a 5950 MIS Tibial Component**

The PSC argues that *Alexander* does not fall within Category C of the Trial Plan, because they allege that *Alexander* is not a 5950 MIS Tibial Component case. Instead, the PSC claims that *Alexander* involves only "Articular surface claims," and that Zimmer's selection of

6

*Alexander* has "create[d] an entirely new Fourth Category of claims." Pl.'s Memorandum, pp. 2, 5. However, the PSC's assertion that *Alexander* involves "Articular surface claims" contradicts Ms. Alexander's own Short Form Complaint, which unequivocally states that she seeks damages for injuries stemming from a 5950 MIS Tibial Component. *See generally Alexander* Short Form Complaint, Exhibit F.

The Court requires all plaintiffs to file Short Form Complaints identifying the components at issue in their lawsuits. Stip. Order Re: Short Form Compl., Doc. 277. Ms. Alexander's Short Form Complaint alleges that "[o]n or about October 23, 2006, Plaintiffs suffered personal and economic injuries as a result of the implantation of… [a] Zimmer NexGen LPS-Flex…[and a] Zimmer NexGen MIS Tibia." *Alexander* Short Form Complaint, Exhibit F, ¶ 8. Ms. Alexander's Short Form Complaint also provides the catalog numbers for the components at issue in her lawsuit, including her 5950 MIS Tibial Component and her LPS-Flex Femoral Component. *Id.* at ¶ 16. Thus, the unequivocal language of Ms. Alexander's Short Form Complaint confirms that she seeks damages from injuries allegedly caused by a 5950 MIS Tibial Component.

For Category C, the Trial Plan required the parties to select two lawsuits alleging that a 5950 MIS Tibial Component caused the plaintiff to suffer injuries. Ms. Alexander's Short Form Complaint unequivocally establishes that she belongs in Category C of the Trial Plan.

**B. Ms. Alexander Has Undergone Revision Surgery and Cannot be Considered "Unrevised"**

As the PSC acknowledges, in July 2011 Ms. Alexander underwent revision surgery. Pl.'s Memorandum, p. 8. Despite this acknowledgment, the PSC argues that the Court should instead consider her "unrevised," since her surgeon elected to replace only her articular surface. *See id.*

The PSC also admits that during the parties' negotiations Zimmer defined precisely what "unrevised case" means in the Trial Plan: plaintiffs who have had "'no subsequent surgery'" or who have "'not had their implants replaced.'" *Id.* at pp. 5, 13. Zimmer did this in a direct written answer to a direct written question posed by the PSC.[4] The PSC never objected to that definition Zimmer provided in its written answer. Under the definition supplied by Zimmer, *Alexander* cannot be classified as an "unrevised case," because Ms. Alexander had an "implant[] replaced" in a "subsequent surgery."

However, now that the Trial Plan has been entered, the PSC wants to change the definition of "unrevised case." Changing the definition after the parties' agreed Trial Plan has been entered would upset the balance achieved by the parties' hard-fought negotiations. For example, in calculating the census of revised and unrevised cases that the parties provided to the Court and used to negotiate the ratio of unrevised to revised cases to include in the case pool, Zimmer only considered a case "unrevised" if the plaintiff had not had *any* of his or her implants replaced. Using the definition that the PSC belatedly has asked the Court to impose, one that counts a case as revised only if a Flex Femoral Component or a 5950 MIS Tibial Component has been replaced, **the percentage of unrevised cases balloons to 53%.**[5] *See* Pie Graphs, attached as Exhibit H. If the PSC had timely objected to Zimmer's definition instead of choosing to remain silent until after the Trial Plan was negotiated and entered, Zimmer would have

---

[4] Via email, PSC Attorney Tim Becker asked Zimmer counsel Jay Yeager to "please provide the basis for your calculation" of revised and unrevised case counts because "[h]ow one calculates revised versus unrevised is important." *See* Email Chain between T. Becker and J. Yeager, attached as Exhibit G. Mr. Yeager responded "[t]o answer your question, by unrevised we mean no subsequent surgery." *Id.* In a reply email, Mr. Becker responded to the remainder of Mr. Yeager's email, but he made no objection to Mr. Yeager's definition of an "unrevised case," one that favored the plaintiffs, since it strictly limited the number of cases that Zimmer could classify as unrevised. *See id.*

[5] Calculated based on cases where Zimmer has records confirming whether a revision has occurred.

demanded that half of the parties' twelve case selections involve unrevised plaintiffs, rather than only one third. Zimmer also would have had substantially more cases to choose from in selecting its unrevised case picks. But the PSC accepted Zimmer's definition, which unquestionably favored the plaintiffs at the time.

The parties negotiated the Trial Plan over the course of several months. Ms. Alexander underwent revision surgery. As such, Zimmer's selection of *Alexander* as a "revised" case was proper.

## CONCLUSION

Zimmer complied with the letter of the Trial Plan in making its Case Pool selections. The PSC, with its selection of *Blake*, did not. The Court should uphold Zimmer's selection of *Alexander* and strike *Blake*, thereby requiring the PSC to select a different unrevised, cemented case.

          Respectfully submitted,

Dated: December 12, 2012        FAEGRE BAKER DANIELS LLP


/s/ Andrea Roberts Pierson
Joseph H. Yeager, Jr. (Ind. State Bar #2083-49)
Andrea Roberts Pierson (Ind. State Bar #18435-49-A)
April E. Sellers (Ind. State Bar #21081-49)
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone:   (317) 237-0300
Fax:   (317) 237-1000
Email:   jay.yeager@faegrebd.com
        apierson@faegrebd.com

J. Stephen Bennett (Ill. State Bar #6226615)
111 East Wayne Street, Suite 800
Fort Wayne, IN 46802-2600
Telephone:   (260) 424-8000
Fax:   (260) 460-1700
Email:   stephen.bennett@faegrebd.com

*Attorneys for Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/ Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc. (incorrectly named as Zimmer Melia & Associates, Inc.), Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.*

10

## **CERTIFICATE OF SERVICE**

I certify that on December 12, 2012 a copy of the foregoing Zimmer's Response To Plaintiffs' Memorandum Regarding Trial Case Selection Issues was filed electronically. Parties may access this filing through the Court's electronic records system.

/s/ Andrea Roberts Pierson