*ƒн*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: ZIMMER NEXGEN KNEE      )
IMPLANT PRODUCTS LIABILITY    )   **No. 11 C 5468**
LITIGATION                         )
                                   )   **Judge Rebecca R. Pallmeyer**

### MEMORANDUM ORDER

In these consolidated cases, Plaintiffs allege injury as a result of alleged defects in knee implants manufactured by the Zimmer Defendants[1] ("Zimmer"). Zimmer seeks a "Supplemental Confidentiality Order" related to documents that it is producing in discovery which originate from prior litigation and arbitrations between Defendants and Doctor W. Norman Scott. Plaintiffs' Steering Committee ("Plaintiffs") opposes this request and has moved to strike the declaration of Brian Earl, Zimmer's Director of Knee Development, from the record. As explained below, Defendants' motion [954] and Plaintiffs' motion [963] are both denied. Based on the parties' respective proposed orders, and consistent with the reasoning of this order, the court has drafted a proposed supplemental confidentiality order (appended below) for the parties' consideration.

### BACKGROUND

The Zimmer Defendants manufacture artificial joints, including the knee implants at the center of this pending MDL. Plaintiffs sought discovery of documents produced in any of several arbitrations and court actions between Defendants and Doctor W. Norman Scott ("Scott"), an orthopedic surgeon who claimed that he was entitled to royalties for work as a

---

[1] "Zimmer" includes the following defendants: Zimmer, Inc., Zimmer Holdings, Inc., Zimmer Surgical, Inc., f/k/a Zimmer Orthopaedic Surgical Products, Inc., Wilson/Phillips Holdings, Inc., d/b/a Zimmer Wilson/Phillips, Orthopaedic Technologies, LLC, d/b/a Zimmer Tri-State (incorrectly named as (1) Zimmer Tri-State d/b/a Tri-State Orthopaedic, (2) Zimmer Tri-State d/b/a Zimmer, Inc., and/or (3) Zimmer Tri-State d/b/a Tri-State Orthopedic), K. Michael Melia, d/b/a Zimmer Melia & Associates, Inc., Zimmer Orthobiologics, Inc., Zimmer US, Inc., and Zimmer Production, Inc.

consultant in the design of various Zimmer knee systems. (Def.'s Mot. for Supp. Conf. Order [954], hereinafter "Def.'s Mot.," at 2.) Defendants contend this request requires production of some 481,573 pages of documents and transcripts related to three Zimmer product lines: NexGen, NexGen Flex, and Persona, and have asked the court for a protective order ensuring compliance with it. (*Id.* at 2-3.) Following a discovery hearing on May 31, 2013 [877], the court granted Plaintiffs' motion to compel and denied Defendants' motion for a protective order. As part of its ruling, the court noted the existence of a broad protective order [165] and directed the parties to negotiate any additional confidentiality provisions they deemed necessary. In the interim, the parties have attempted to reach an agreement as to a supplemental protective order regarding the documents from the Scott proceedings ("Scott materials"), and have exchanged drafts, but negotiations have stalled as to two issues: (1) certain witnesses' access to the documents; and (2) restrictions on future employment by Defendants' competitors for any of Plaintiffs' experts who are granted access to the documents.[2] (Def.'s Mot. at 3.) Further, Defendants seek to prohibit current employees and consultants of Zimmer's competitors from accessing the Scott materials, while Plaintiffs' proposed order would not impose such a prohibition. (Ex. C. to Def.'s Mot., ¶ 3.) While the parties differ on this score, neither Defendants' motion nor Plaintiffs' response addresses this aspect of Defendants' proposal.

## DISCUSSION

### I. Supplemental Protective Order

The court may, "for good cause, issue an order to protect a party . . . from . . . undue burden or expense" such as "requiring that a trade secret or other confidential . . . information

---

[2]     Plaintiffs also object to Zimmer's refusal to create electronic versions of the Scott materials. Thus far, Defendants have only allowed Plaintiffs' counsel to view paper copies. (Pl.'s Resp. at 1 n.1, 10-11.) In their reply, however, Defendants acknowledge that electronic production is appropriate and assures the court that it "intends to provide the PSC [(Plaintiffs' Steering Committee)] with copies of the SAEO [(Special Attorney's Eyes Only)] documents in electronic format once the issues raised in the present motion are resolved." (Def.'s Rep. [965] at 2 n.3.)

not be revealed or be revealed only in a specific way." FED. R. CIV. P. 26(c); *see also Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 356 (1979). Defendants urge that producing the Scott materials, under either the standing protective order or Plaintiffs' proposed supplemental order, would impose an undue burden; specifically, Defendants argue that the Scott materials contain proprietary trade secrets related to Zimmer's Persona product line, which Defendants are in the process of bringing to market. (Def.'s Mot. at 5.) Though some Persona products have been available since November 2012, the full line will not come out until "2016 at the earliest." (*Id.* at 8.) Defendants assert that, once exposed to these materials, Plaintiffs' experts "cannot avoid being influenced by [them]" (Def.'s Rep. at 5), such that, even acting in good faith, the experts will be unable to prevent themselves from "improperly using their review of that information—even unconsciously—to assist Zimmer's competitors and to hurt Zimmer's Persona sales." (Def.'s Mot. at 8.) Should a competitor gain access to the Scott materials, Brian Earl, Zimmer's Director of Knee Development, estimates that Defendants would lose "between $50 million and $100 million per year for the next several years." (Earl Decl., Ex. 2 to Def.'s Mot., hereinafter "Earl Decl.," ¶ 12.) "The only apparent solution to this danger," Defendants insist, "is for the court to bar Plaintiffs' experts who have access to the Persona design documents from working for Zimmer's competitors for [three years] until the Persona line is fully on the market . . . ."[3] (Def.'s Mot. at 7.)

---

[3]     To substantiate its argument that the standing protective order currently covering all experts in the case is insufficient, Defendants cite to several cases for the proposition that "a human being cannot be compelled by simple fiat to unilaterally forget important or interesting information, particularly where that information is central to the intellectual task the person is performing." (Def.'s Rep. at 5.) None of the cases cited, however, deal with protective orders. Rather, all three focus on instructions and procedures designed to prevent juries from being influenced by inadmissible evidence: *United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999) (affirming the trial court's refusal to permit defendant to testify after the jury had reached its verdict, because the verdict would be "too big a bell to unring"); *Brodit v. Cambra*, 350 F.3d 985, 1005 (9th Cir. 2003) (citing value of motions *in limine* in avoiding "the obviously futile attempt to 'unring the bell'"); *Maestas v. United States*, 341 F.2d 493, 496 (10th Cir.1965) (noting futility of cautionary instruction "where the character of the testimony is such that it will
(continued...)

In addition to this mandatory non-competition agreement, Defendants' proposed order would also (1) create a two-tier designation for discovery materials, adding the designation of "Special Attorney's Eyes Only" ("SAEO") for the Scott materials to the existing "confidential" label in the standing protective order [165]; (2) require Plaintiffs to seek advance approval from Zimmer before disseminating any SAEO information to any of Plaintiffs' experts who are Zimmer's own former employees, current consultants, or former consultants; and (3) bar current employees and consultants of Zimmer's competitors any access to the SAEO material.[4] (Def.'s Proposed Supplemental Confidentiality Order, hereinafter "Def.'s Proposed Order," Ex. 1 to Def.'s Mot., at 3-4.) Zimmer argues that it needs "both advance notice of Plaintiffs' intention to show these extraordinarily sensitive documents to witnesses who are not Zimmer employees and a means of objecting to such disclosure before it occurs." (Def.'s Mot. at 6.) Nonetheless, Defendants do not anticipate that disclosure will be a frequent issue of contention; rather, Zimmer "expects that it will have no objection to Plaintiffs' attorneys showing SAEO documents to most consultant or former employee witnesses to whom they have a reason to show them." (*Id.* at 5-6.)

Prior to the filing of Defendants' motion, the parties had been engaged in negotiations to develop a mutually agreed upon supplemental protection order. Plaintiffs' position is that "there is no need for a supplemental order," as the existing protective order and Zimmer's patent applications for the Persona Knee System are sufficient to protect Defendants' interests. (Pl.'s Opp. to Def.'s Mot. for Supp. Confidentiality Order [963], hereinafter "Pl.'s Resp.," at 4 n.3.) If, however, the court determines a supplemental order is warranted, Plaintiffs have directed the court to a version of the proposed order "reflecting Plaintiffs' view of the state of negotiations."

---

create so strong an impression on the minds of the jurors that they will be unable to disregard it in their consideration of the case").

[4] Zimmer's proposed order is modeled after a confidentiality order imposed in the arbitrations involving Dr. Scott and the Persona product line in 2011, before the Persona knee system was public knowledge. (Def. Mot. at 2.)

(Pl.'s Resp. at 4 n.3.; E-mail from Becker to Fiterman of 8/28/13, Ex. A to Pl.'s Resp.)  This version, which includes numerous suggested deletions, additions, and modifications, was e-mailed to Defendants by Plaintiffs on August 28, 2013.  Notably, Plaintiffs' version is consistent with Defendants' in that it would establish dual-tier protection for sensitive documents produced by Zimmer (i.e., "confidential" and "special attorneys eyes only").  Plaintiffs' order differs from Defendant's, however, in three major respects: (1) it would not require prior notice to Zimmer before disclosure of SAEO documents to former Zimmer employees, current Zimmer consultants, and former Zimmer consultants; (2) it would not require Plaintiffs' experts who review the SAEO documents to sign any form of non-competition agreement; and (3) it would not prohibit current employees and consultants of Zimmer competitors from accessing the SAEO documents.

In favor of their proposed order, Plaintiffs point out that the existing protective order already limits disclosure of documents stamped "confidential" to the parties, their law firms, and "any person(s) noticed for deposition or designation as trial witnesses, who has knowledge of the subject matter to which the documents relate[.]"  (Pl.'s Resp. at 5; Protective Order [165], ¶¶ 3-4.)  Disclosure of confidential documents and their contents to any other person is prohibited "except with the prior written consent of the party . . . designating a document as a Stamped Confidential Document."  (Protective Order ¶ 3.)  And any individual who reviews a Stamped Confidential Document must sign a confidentiality agreement that prohibits the use of said document "for any purpose other than this litigation."  (Protective Order ¶ 4; Confidentiality Agreement, Ex. A to Protective Order, ¶ 3.)  Further, Plaintiffs suspect that Defendants' requested three-year non-competition agreement for all experts who review the Scott materials is designed to impede Plaintiffs' pursuit of their claims rather than to protect Zimmer's trade secrets.  (Pl.'s Resp. at 6.)  For support, Plaintiffs cite to the deposition of Brian Earl, who acknowledged that the proposed order would impose harsher restrictions than those that

Zimmer includes in contracts with its own employees and consultants. (Earl Dep., Ex. C to Pl.'s Notice of Supp. Authority [973], at 44:19-45:1.) For instance, Zimmer requires its own consultants to sign ten-year non-compete agreements (Earl Decl. ¶ 7), but those restrictions apply only to future work on knee arthroplasty. (Earl Dep. at 24:4-20.) Earl himself, and other Zimmer employees, sign eighteen month non-compete agreements limited to the products they worked on. (*Id.* at 10:16-12:17.) The restrictions proposed by Defendants here, in contrast, would prohibit Plaintiffs' experts from working with any Zimmer competitor on any product for three years. (Def.'s Proposed Order at 3-4.)

Multi-tier protective orders are relatively common in cases between direct competitors. *See, e.g., Santella v. Grizzly Indus.*, 286 F.R.D. 478, 482 (D. Or. 2012) ("Because SawStop and Grizzly compete in the manufacture and sale of table saws, this court entered a two-tier protective order."); *Apple Inc. v. Samsung Elecs. Co.*, No. 11 C 1846, 2012 U.S. Dist. LEXIS 49201 (N.D. Cal. Jan. 30, 2012) (creating three levels of confidentiality designation for documents produced in discovery in intellectual property litigation between market rivals). Where, as here, the parties are not competitors, the need for extreme protective measures is less obvious.

Moreover, even in highly contentious litigation between business rivals, Defendants' requested level of protection appears to be unprecedented. Zimmer relies on the confidentiality order imposed in its earlier arbitration with Scott, but cites to no instance in which a court has been willing to impose a mandatory non-compete agreement on an opposing party's experts. This court has been similarly unable to find any such precedent in the Seventh Circuit (or elsewhere) either approving or disapproving of such an agreement.[5] To the extent that such a

---

[5]     Plaintiffs' response cites to several cases for the proposition that the non-compete requirement included in Defendants' proposed order is unreasonable and should be denied. (Pl.'s Resp. at 6-7.) Each of these cases, however, involves the reasonableness of a contractual non-compete clause voluntarily entered into by parties outside of the litigation

(continued...)

non-competition provision was appropriate in the Scott arbitration, where Zimmer was opposed by a doctor who also designs knee replacements, it is less compelling in the instant products liability litigation. Further, the need for aggressive protection of Defendants' intellectual property has diminished in the intervening years, as the life cycle of the Persona product line has progressed. (Pl.'s Resp. at 7-8.) Zimmer has not satisfied the court that such a drastic measure—a non-competition agreement for all experts—is necessary to protect Zimmer's competitive advantage with regards to products that are already on the market or will be in the near future. Similarly, requiring Plaintiffs to seek Zimmer's advanced approval before sharing the Scott materials with any expert who is or was a Zimmer employee or consultant would be excessive in light of the broad protective order already in place. If this creates genuine risk, because of the possibility that Plaintiffs' experts might violate the court's existing protective order by disclosing Zimmer's trade secrets to competitors, the court notes that Defendants themselves admit that it would take at least two years for a competitor to bring products utilizing that knowledge to market. By that time, the Persona products would be established in the market, presumably with appropriate patent protection. (Earl Dep. at 134:12-14.)

As the court has observed, the threat posed to Zimmer by sharing proprietary information with Plaintiffs' experts in this instance is generally diminished by the fact that the instant case is not one between competitors. That distinction is less significant, of course, where Plaintiffs' experts are currently employed by Zimmer's direct competitors (either as employees or consultants). While the standing protective order would impose restrictions on such individuals, the court recognizes that disclosure of confidential trade secrets to experts who work for Zimmer's peers may well present a threat analogous to disclosure in litigation between market rivals. And in that context, courts have frequently employed protective orders barring the employees of parties' competitors from accessing highly sensitive information. *See,*

context. As such, these cases have little bearing on the instant issue.

*e.g., Apple Inc.*, No. 11 CV 1846, 2012 U.S. Dist. LEXIS 49201, *19 (barring the disclosure of confidential information to any person that is "a current officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit"). Accordingly, the court finds good cause for Defendants' proposed prohibition of disclosure of the Scott materials and other SAEO information to its competitors' employees and consultants.

Defendants have not demonstrated, however, that it would be subjected to an undue burden if (1) Plaintiffs' experts who are also current or former consultants and employees of Zimmer are granted access to the Scott materials without Zimmer's advanced approval; or (2) experts who review the Scott materials are not required to agree to a non-competition agreement. Defendants' motion for a supplemental confidentiality order is, therefore, denied. Given the apparent progress between the parties regarding a supplemental order, the court declines to rely exclusively on the existing protective order. Instead, the court has drafted a proposed supplemental confidentiality order (attached below) consistent with the parties' negotiations and the reasoning above.

## II.    Declaration of Brian Earl

In addition to opposing Defendants' proposed supplemental confidentiality order, Plaintiffs have moved to strike the declaration of Brian Earl ("Earl"), Zimmer's Director of Knee Development, on the grounds that it is "based entirely on inadmissible hearsay and speculation." (Pl.'s Resp. at 11.) Specifically, Plaintiffs object to the lack of "proof, evidence, or documentation to support [Earl's] contentions" regarding the mental states of Plaintiffs' experts (*Id.* at 11-12; Earl Decl. ¶¶ 9-11) and the impact of SAEO documents in a competitor's hands. (Pl.'s Resp. at 12-13; Earl Decl. ¶ 12.)

In light of the court's proposed resolution of the protective order dispute, it is not necessary to address this objection at length, but the court does not find it compelling. First, there is no basis to suggest that the Earl declaration is based on hearsay: it does not quote any

other source nor does it purport to base its conclusions on any other source, and Plaintiffs have not provided any evidence to suggest otherwise. Second, Earl, as a long-time, high-ranking employee of Zimmer's knee division, has sufficient first-hand knowledge to substantiate his declaration. Under the Federal Rules of Evidence, a witness must have personal knowledge of the matter about which he or she testifies, FED. R. EVID. 602, but nothing in the Federal Rules requires a witness, or declarant, with personal knowledge to cite to additional evidentiary support. While Earl admitted in his deposition testimony that his prospective loss calculations were based on his "best hunch" (Earl Dep. at 146:7-21), this fact goes to weight and does not provide a sufficient basis for striking Earl's declaration.

Plaintiffs' motion to strike the Earl declaration is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order [954] and Plaintiffs' motion to strike the Earl declaration [963] are both denied. The court's proposed supplemental confidentiality order is appended below. The court welcomes any modifications or objections to this proposal from the parties.

ENTER:

Dated: November 14, 2013

_____
REBECCA R. PALLMEYER
United States District Judge

9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ZIMMER NEXGEN KNEE | ) | |
| IMPLANT PRODUCTS LIABILITY | ) | No. 11 C 5468 |
| LITIGATION | ) | |
| | ) | Judge Rebecca R. Pallmeyer |

### (PROPOSED) SUPPLEMENTAL CONFIDENTIALITY ORDER

This Confidentiality Order supplements the court's May 31, 2013 Order addressing the production of documents from certain arbitrations and litigation between Defendants and W. Norman Scott [877], specifically:

Scott v. Zimmer, Inc., AAA Case No. 51 133 Y 01123 04;

Scott and Scuderi v. Zimmer, Inc., Case No. 10-772 (GMS) (D. Del.);

Scott v. Zimmer Holdings, Inc., AAA Case No. 51 193 Y 00439 08;

Scott v. Zimmer, Inc., AAA Case No. 51 122 00721 10; and

Scott v. Zimmer, Inc., AAA Case No. 51 122 Y 1151 10.

This Order supplements and does not supersede the Protective Order this court entered on November 17, 2011 [165] (hereinafter "Protective Order"), and all provisions of that existing Protective Order remain in full force, except as specifically provided in this Supplemental confidentiality Order.

1.　　In separate Confidentiality Agreements and Orders entered in the arbitrations and litigation listed above, the parties used different terms to designate documents that contain information entitled to protection under Federal Rule of Civil Procedure 26(c)(7) or equivalent federal or state statutes or regulations. The terms used included:

- "CONFIDENTIAL"

- "CONFIDENTIAL—SUBJECT TO CONFIDENTIALITY ORDER"

- "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL ONLY"

- "HIGHLY CONFIDENTIAL"

- "ATTORNEYS EYES ONLY"

- "ATTORNEYS EYES ONLY—SUBJECT TO CONFIDENTIALITY AGREEMENT"

- "SPECIAL ATTORNEYS EYES ONLY"

2.      All documents, depositions, and other materials produced from the five matters listed above that bear any of the designations "CONFIDENTIAL," "CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER," "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL ONLY," "HIGHLY CONFIDENTIAL," "ATTORNEYS EYES ONLY," or "ATTORNEYS EYES ONLY— SUBJECT TO CONFIDENTIALITY AGREEMENT" will be treated in all respects as "Stamped Confidential Documents" as that term is used in the existing Protective Order, Docket 165. Such documents will enjoy the same protections and be subject to the same procedures as all other documents designated "CONFIDENTIAL" or "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" pursuant to paragraph 1(a) of the existing Protective Order.

3.      The following procedures shall apply only to documents and materials designated "SPECIAL ATTORNEYS EYES ONLY."

**A.      Scope Of Designation**

The designation "SPECIAL ATTORNEYS EYES ONLY" shall be reserved solely for highly sensitive information regarding unreleased or recently released orthopaedic systems or components, such as specifications, drawings, manufacturing processes, and other medically, scientifically, or commercially sensitive documents or information, or other things containing substance, summaries, abstracts or indices thereof (collectively "Special AEO Information").

**B.      Supplemental Procedures For Handling Of Special AEO Information.**

1.      Access to Special AEO Information is limited to (a) attorneys on the Plaintiffs Steering Committee (including partners, associates, paralegals, and secretaries of such attorneys to the extent reasonably necessary to render professional services in this Litigation) and (b) outside

consultants or experts retained by the Plaintiffs Steering Committee (collectively, "Authorized Persons"), in accordance with Paragraph 4 of the Protective Order [165]. Such access may be granted only to Authorized persons who have subscribed to the Confidentiality Agreement attached as Exhibit B to this Supplemental Confidentiality Order and who have agreed to comply with all the provisions set forth for the handling of confidential materials in the Protective Order and in this Supplemental Confidentiality Order.

Prior to disclosing any Special AEO Information to an outside consultant or expert, in addition to the requirements of Paragraph 4 of the Protective Order, Plaintiffs' counsel shall secure from the outside consultant or expert, in writing in the form attached as Exhibit C, a commitment that the expert or consultant is not presently (a) an employee of, or (b) a paid or unpaid consultant to, any other company that designs or manufactures knee implant products of any kind.

In the case of any expert or consultant that Plaintiffs designate as a testifying expert, Plaintiffs' counsel shall provide a copy of the executed Form C for that expert to Zimmer's attorneys at the time they provide the other expert disclosures required by Federal Rule of Civil Procedure 26(b).

In addition, subject to all of the other requirements in the Protective Order and this Supplemental Confidentiality Order, Special AEO Information may be disclosed to (1) the court, (2) persons designated by the court in the interest of justice, upon such terms as the court deems proper, (3) a witness who is or was a Zimmer employee; (4) a person who is or was a Zimmer consultant; (5) court reporters, and (6) persons operating video recording equipment at depositions. With regard to any other witnesses not covered by this paragraph, the Parties will meet and confer regarding the use of the document(s). If no agreement can be reached, the parties shall seek relief from the court as appropriate.

2.      Any pleading, memorandum, or expert report that includes Special AEO Information shall be labeled "SPECIAL ATTORNEYS EYES ONLY INFORMATION" and treated in accordance with the terms of the "Special Attorneys Eyes Only" provisions of this Supplemental Confidentiality Order.

**C.      Submissions To The Court**

Plaintiffs' Counsel of Record in this Litigation and experts may use Special AEO Information as exhibits in support of briefs or other filings for submission to the court. If Plaintiffs' counsel wishes to submit to the court any Special AEO Information, that counsel shall file the submission containing the Special AEO information with the court under seal, utilizing the court's ECF system. All submissions containing such information must bear the Special AEO protective markings specified in this Supplemental Confidentiality Order. If Zimmer objects to the filing of any Special AEO information in any other party's submission, Zimmer may move the court to strike the submission or for such other relief as may be appropriate. A party filing a submission containing Special AEO information under seal need not bring a separate motion for leave to file under seal as otherwise contemplated by Local Rule 26.2.

**D.      Patent Restrictions**

Any person reviewing for Plaintiffs any "CONFIDENTIAL," "CONFIDENTIAL—SUBJECT TO CONFIDENTIALITY ORDER," "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL ONLY," "HIGHLY CONFIDENTIAL," "ATTORNEYS EYES ONLY," "ATTORNEYS EYES ONLY— SUBJECT TO CONFIDENTIALITY AGREEMENT," or "SPECIAL ATTORNEYS EYES ONLY" documents shall not, for a period commencing upon the receipt of such information and ending two years following such receipt, engage in any Patent Prosecution Activities on behalf of any individual or entity with respect to knee replacement. "Patent Prosecution Activities" means the direct or indirect involvement in drafting or amending of patent claim(s) on behalf of a patentee or assignee of a patentee's rights. Nothing in this paragraph shall prevent any attorney from

sending Prior Art to an attorney involved in patent prosecution for purposes of ensuring that such Prior Art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor.

APPROVED THIS ____ DAY OF _____, 2013

By the court:

_____
REBECCA R. PALLMEYER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: ZIMMER NEXGEN KNEE )
IMPLANT PRODUCTS LIABILITY ) No. 11 C 5468
LITIGATION )
) Judge Rebecca R. Pallmeyer

## EXHIBIT B TO SUPPLEMENTAL CONFIDENTIALITY ORDER

I.    I hereby acknowledge that I am about to receive highly confidential information produced in the above captioned litigation.

2.    I have read the Court's Protective Order and Supplemental Confidentiality Order governing the restricted use of confidential information in this litigation, copies of which has been provided to me. I hereby agree to be bound by the terms of the Protective Order and the Supplemental Confidentiality Order.

3.    I further agree that I will not utilize any stamped confidential document or other information subject to the Protective Order and the Supplemental Confidentiality Order for any purpose other than as permitted by those Orders. I further affirm that I will not reveal the confidential information to, nor discuss the confidential information with, anyone, except in accordance with the terms of the Protective Order and the Supplemental Confidentiality Order.

4.    At the termination of this Litigation, I will return all documents marked with the legend "Confidential," "Confidential-Subject to Confidentiality Agreement," "Highly Confidential— Outside Counsel Only," "Highly Confidential," "Attorneys Eyes Only," "Attorneys Eyes Only— Subject To Confidentiality Agreement," or "Special Attorneys Eyes Only Information," as well as any copies, summaries or abstracts of same, and documents related  thereto, to the attorney providing confidential materials to me.

5.    I further acknowledge that by signing this Confidentiality Agreement I submit to the jurisdiction of the United States District Court for the Northern District of Illinois or any other

15

court of competent jurisdiction, as necessary to enforce the provisions of the Protective Order and the Supplemental Confidentiality Order.

Dated: _____, 20___

_____
Signature

_____
Printed Name

_____
Address

_____
City, State, Zip

_____
Telephone Number

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ZIMMER NEXGEN KNEE IMPLANT PRODUCTS LIABILITY LITIGATION | )<br>)   **No. 11 C 5468**<br>)<br>)   **Judge Rebecca R. Pallmeyer** |

**EXHIBIT C TO SUPPLEMENTAL CONFIDENTIALITY ORDER**

I.      I hereby acknowledge that I am about to receive highly confidential information produced in the above captioned litigation.

2.      I have read the court's Protective Order and Supplemental Confidentiality Order governing the restricted use of confidential information in this litigation, copies of which has been provided to me. I hereby agree to be bound by the terms of the Protective Order and the Supplemental Confidentiality Order.

3.      I understand that as a condition of receiving Special Attorneys Eye Only documents, I must represent that I am not presently an employee of or a paid or unpaid consultant to any company that designs or manufactures knee implant products of any kind. I hereby make that representation.

4.      I further acknowledge that by signing this Confidentiality Agreement I submit to the jurisdiction of the United States District Court for the Northern District of Illinois or any other court of competent jurisdiction, as necessary to enforce the provisions of the Protective Order and the Supplemental Confidentiality Order.

Dated: _____, 20___

_____
Signature

_____
Printed Name

_____
Address

_____
City, State, Zip

_____
Telephone Number